MINTZ LEVIN
COHN FERRIS
GLOVSKY AND
POPEO PC

Boston
Washington
Reston
New York
Stamford
Los Angeles
London

One Financial Center
Boston, Massachusetts 02111
617 542 6000
617 542 2241 fax
www.mintz.com

**Dora Kripapuri**

Direct dial  617/348-1763
dkripapuri@mintz.com

March 31, 2005

Judge Nathaniel Gorton
United States District Court
One Courthouse Way
Boston, MA 02210
**ATTN:  Mr. Philip Lyons, Clerk**

Re:   *Kwaak v. Pfizer, Inc.*, Civil Action No. 05-10591-NMG (Class Action)

Dear Mr. Lyons:

Pursuant to Local Rule 81.1(a), I enclose certified copies of all records and proceedings in the State Court action related to the above-captioned case.  If you have any questions, please feel free to call me.

Sincerely,

Dora Kripapuri

Dora Kripapuri

/Enclosure
cc:   William Cowan, Esq. (w/out enc.)
      Thomas Smart, Esq. (w/out enc.)
      Richard DeSevo, Esq. (w/out enc.)
      Kenneth D. Quat, Esq. (w/out enc.)
      Lance A. Harke, Esq. (w/out enc.)
      Ben Barnow, Esq. (w/out enc.)

MICV2005-00122

SHERRY KWAAK

V.

PFIZER, INC

****REMOVED TO US DISTRICT COURT****

**Commonwealth of Massachusetts**
**SUPERIOR COURT DEPARTMENT**
**THE TRIAL COURT**
**CAMBRIDGE**

MICV2005-00122

I, Anne M. Cherubino, Deputy Assistant Clerk of the Superior Court, within and for said County of Middlesex, do certify that the annexed papers are true copies made by photographic process of pleadings entered in the Superior Court on the 13th of January, in the year of our Lord, Two Thousand Five



In testimony whereof, I hereunto set my hand and affix the seal of said Superior Court, at Cambridge, in said County, this 29th of March, in the year of our Lord, Two Thousand Five

*Anne M. Cherubino*
Deputy Assistant Clerk

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT
CIVIL ACTION NO. 05-0122-D

|  |  |
|---|---|
| SHERRY KWAAK, an individual, on behalf of herself and all others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| PFIZER, INC, a Delaware Corporation, | ) ) ) |
| Defendant. | ) ) ) |

### NOTICE OF FILING OF NOTICE OF REMOVAL

Defendant Pfizer, Inc. hereby gives notice that it has filed in the United States District

Court for the District of Massachusetts a Notice of Removal of the above-entitled action, a

certified copy of which is attached hereto as Exhibit A.

Respectfully submitted,

PFIZER, INC.

By its attorneys,

William M. Cowan, Esq. BBO # 566940
Dora Kripapuri, Esq. BBO # 654236
Mintz, Levin, Cohn, Ferris,
  Glovsky and Popeo, P.C.
One Financial Center
Boston, MA  02111
(617) 542-6000

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE COUNTY OF MIDDLESEX

MAR 2 8 2005

Edward J. Sullivan
CLERK

Dated:  March 25, 2005

I hereby certify that a true copy of the
above document was served upon the
attorney of record for each party by
mail/by hand on March 25, 2005

Dora Kripapuri

LIT 1512103v1

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS



2005 MAR 25 P 2: 48

U.S. DISTRICT COURT
DISTRICT OF MASS.

|  |  |
|---|---|
| SHERRY KWAAK, an individual, on behalf of herself and all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) |
| PFIZER INC., a Delaware Corporation | ) ) ) |
| Defendant. | ) ) ) |

Civil No.: _____

I hereby certify on _____ that the foregoing document is true and correct copy of the

☐ electronic docket in the captioned case
☐ electronically filed original filed on _____
☒ original filed in my office on _3/25/2005_

Sarah A. Thornton
Clerk, U.S. District Court
District of Massachusetts

By: _____
Deputy Clerk

## NOTICE OF REMOVAL

TO: United States District Court for the District of Massachusetts

Pursuant to 28 U.S.C. §1441, et seq., Defendant Pfizer Inc. ("Pfizer") hereby removes the state court action, *Sherry Kwaak v. Pfizer, Inc.*, Civil Action No. 05-0122-D, from the Superior Court of Massachusetts, Middlesex County, to the United States District Court for the District of Massachusetts, and alleges as follows:

1.      This action is brought by plaintiff seeking certification of a class of Massachusetts consumers consisting of "[a]ll individuals who purchased Listerine for consumption and not resale in the Commonwealth of Massachusetts after June 1, 2004." First Amended Complaint ("Compl.") ¶ 7. Plaintiff filed her original complaint on January 13, 2005. (Upon information and belief, plaintiff never served the original complaint.) In her amended complaint, filed on March 2, 2005, plaintiff for the first time asserts a claim under the Massachusetts Consumer Protection Act (G.L. c. 93A). Plaintiff, on behalf of herself and the proposed class members,

seeks, *inter alia*: (1) monetary damages, including "disgorgement of the amount by which Pfizer

has been unjustly enriched," and "the greater of: (i) all monies paid to purchase Listerine...; (ii)

all monies paid to purchase Listerine during the class period less the amount which would have

paid [sic] had Listerine been advertised and represented accurately and completely; or (iii)

$25.00 for each unit of Listerine purchased during the class period; plus interest"; (2) doubling or

trebling damages; and (3) attorneys' fees, costs and expenses. *See* Compl. ¶ 73, Ad Damnum

Clause.

       2.      There are two separate and independent bases for federal diversity jurisdiction.

First, there is federal diversity jurisdiction over this putative nationwide class action pursuant to

the provisions of P.L. 109-2 (the "Class Action Fairness Act" or the "Act"), codified at 28 U.S.C.

§§ 1332(d), 1453, because: (1) the putative class action consists of at least 100 proposed class

members; (2) the citizenship of at least one proposed class member is different from that of

Pfizer, the only defendant; and (3) the matter in controversy, after aggregating the claims of the

proposed class members, exceeds $5 million, exclusive of interest and costs. *See* Point I, *infra*. A

second, independent ground for removal is that this Court has federal diversity jurisdiction over

this action pursuant to 28 U.S.C. § 1332 because: (1) there is complete diversity of citizenship

between the named plaintiff and Pfizer, the only defendant; and (2) plaintiff's request for relief in

the form of disgorgement among all class members is a "common and undivided interest" in

excess of $75,000, exclusive of interest and costs. *See* Point II, *infra*.

**I.     JURISDICTIONAL BASIS FOR REMOVAL UNDER THE CLASS ACTION
       FAIRNESS ACT**

       3.      In the Class Action Fairness Act, Congress granted the federal courts diversity

jurisdiction over putative class actions where: (1) the putative class action consists of at least 100

proposed class members; (2) the citizenship of at least one proposed class member is different

from that of the defendant; and (3) the matter in controversy, after aggregating the claims of the proposed class members, exceeds $5 million, exclusive of interest and costs. P.L. 109-2 § 4(a). Each of these requirements is satisfied here.

## A.  **Number of Class Members**

4.    Plaintiff brings this action on behalf of "[a]ll individuals who purchased Listerine for consumption and not resale in the Commonwealth of Massachusetts after June 1, 2004." Compl. ¶ 7. Plaintiff alleges that the putative class "numbers in the thousands, and likely tens of thousands." *Id*. ¶ 8. Accordingly, the requirement that the number of members in the putative class be 100 or more is satisfied. P.L. 109-2 § 4(a)(5).

## B.  **Diversity of Citizenship**

5. The complaint alleges that the named plaintiff (Sherry Kwaak) is a resident of the State of Massachusetts. Compl. ¶ 5. Upon information and belief, at all relevant times, the named plaintiff is, and was, a citizen of the State of Massachusetts. Plaintiff seeks certification of a proposed statewide class consisting of "[a]ll individuals who purchased Listerine for consumption and not resale in the Commonwealth of Massachusetts after June 1, 2004." *Id*. ¶ 7. Therefore, at all relevant times, the proposed class members include persons who are not citizens of either Delaware or New York.

6.    At all relevant times, defendant Pfizer is, and was, a corporation existing under the laws of the State of Delaware, having its principal place of business in the State of New York, and, accordingly, is a citizen of Delaware and New York.

7.    Under 28 U.S.C. § 1332(d)(2) (as amended by P.L. 109-2), because there is diversity of citizenship between at least one proposed class member and Pfizer, the requisite diversity of citizenship is satisfied.

**C.    Amount in Controversy**

      8.      Plaintiff, on behalf of herself and the proposed class members, seeks, *inter alia*: (1) monetary damages, including "disgorgement of the amount by which Pfizer has been unjustly enriched," and "the greater of: (i) all monies paid to purchase Listerine . . .; (ii) all monies paid to purchase Listerine during the class period less the amount which would have paid [*sic*] had Listerine been advertised and represented accurately and completely; or (iii) $25.00 for each unit of Listerine purchased during the class period; plus interest"; (2) doubling or trebling damages; and (3) attorneys' fees, costs and expenses. *See* Compl. ¶ 73, Ad Damnum Clause. Plaintiff asserts that "[a]s a result of [the allegedly] unfair and deceptive practice, Pfizer has sold millions of dollars in Listerine which it would not have otherwise sold . . . and it has been unjustly enriched at the expense of Plaintiff and the class members." *Id.* ¶ 3. Given that plaintiff seeks monetary damages of "millions of dollars" – and given that plaintiff seeks a doubling or trebling of such damages – it is clear that the aggregate claims of all class members exceed $5 million, exclusive of interest and costs. Accordingly, the requisite amount in controversy for federal diversity jurisdiction, pursuant to 28 U.S.C. §§ 1332(d)(2) & (6) (as amended by P.L. 109-2), is satisfied.[1]

**D.    The Class Action Fairness Act Applies to this Action**

      9.      Section 9 of the Class Action Fairness Act provides that "[t]he amendments made by this Act shall apply to any civil action commenced on or after the date of enactment of this Act [February 18, 2005]." *See* P.L. 109-2 § 9. Under the Class Action Fairness Act, an action is "commenced" when it is commenced in federal court. Because this action is being commenced

---

[1] Pfizer does not concede that the named plaintiff or any proposed class member would be entitled to such relief or any of the relief sought in the complaint. However, the plaintiff's "claim, whether well or ill founded in fact, fixes the right of the defendant to remove." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938).

in federal court "on or after the date of enactment" of the Class Action Fairness Act, the Act applies to this action.

10.    A wealth of authority holds that a jurisdictional statute, applicable only to actions "commenced on or after" the effective date, applies to actions removed to federal court after the effective date, even though the action was filed in state court before the effective date. *Cedillo v. Valcar Enters.*, 773 F. Supp. 932 (N.D. Tex. 1991); *Hunt v. Transport Indem. Ins. Co.*, 1990 WL 192483 (D. Hawaii July 30, 1990); *Abernathy v. Consol. Cab Co.*, 169 F. Supp. 831 (D. Kan. 1959); *Casteel v. Great Southern Trucking Co.*, 167 F. Supp. 435 (E.D. Tenn. 1958); *Lorraine Motors, Inc. v. Aetna Cas. & Sur.* Co., 166 F. Supp. 319 (E.D.N.Y.1958).

11.    In *Cedillo*, the court held that the term "commenced" should be read as commenced in federal court – rather than state court – "because the pertinent time for determining federal jurisdiction is the date on which such jurisdiction is invoked." *Cedillo*, 773 F. Supp. at 939. The court there expressly addressed an issue virtually identical to the one presented by this removal; namely, whether a statute expanding federal jurisdiction – the Supplemental Jurisdiction statute (28 U.S.C. § 1367) – applied to an action filed in state court before the statute's effective date, but removed after the effective date. As here, Section 1367 provided that it applied only to "actions *commenced* on or after" the effective date. P.L. 101-650, title III, §310(c) (emphasis added). In denying remand, the court in *Cedillo* held that the new statute was "fully applicable" to the removed action because the date federal jurisdiction was first "invoked" was after the effective date of the statute, and thus the action was "commenced" after the effective date. 773 F. Supp. at 939.

12.    Similarly, in *Lorraine Motors*, the court expressly considered whether an amendment to the federal jurisdiction statute (increasing the minimum jurisdictional amount

from $3,000 to $10,000) – which, as here, applied only to "actions *commenced* on or after the date of the enactment" (P.L. 85-554, § 3; emphasis added) – applied to an action filed in state court before the effective date and removed to federal court after the effective date. The court held that the term "commenced" means "actions commenced in the [federal] District Court, whether by original jurisdiction or removal" on or after the effective date, and thus the new jurisdictional provision applied to the action. 166 F. Supp. at 323.

13.    In Abernathy, the court considered the identical question presented by *Lorraine Motors*. Citing *Lorraine Motors* with approval, the court in *Abernathy* held that it "must rule" that the action removed to federal court after the date of enactment was "'commenced' after the date of the enactment" and the new jurisdictional provisions applied to the removed action. 169 F. Supp. at 834.

14.    The court in *Casteel* also considered the same question. Holding that the term "commenced" "means 'commenced in the federal court,'" the court held, relying on the principle set forth in a leading treatise, that "the law in effect at the time of the application to remove controls." 167 F. Supp. at 436 (citing 76 C.J.S. Removal of Causes § 2). *Accord, Hunt v. Transport Indem. Ins. Co.*, 1990 WL 192483, at *6 (D. Hawaii July 30, 1990) (action "commenced" when removed to federal court and new minimum amount in controversy requirement applied to action).

15.    As in *Cedillo, Lorraine Motors, Abernathy, Casteel* and *Hunt*, in determining when this removed action was "commenced" for purposes of the applicability of the Class Action Fairness Act (expanding the scope of federal jurisdiction), the relevant date is the first time federal "jurisdiction is invoked." *Cedillo*, 773 F. Supp. at 939. The Class Action Fairness Act is "fully applicable," *id.*, to this removed action because federal jurisdiction is first invoked

6

on March 25, 2005, and thus the action is "commenced" in federal court after the effective date

of the Act, February 18, 2005. In addition, plaintiff's extant pleading at the time of removal is

her first amended complaint – the *only* complaint served on Pfizer – which was filed in state

court on March 2, 2005, well *after* the February 18th date of enactment of the Class Action

Fairness Act.

16.    Moreover, when Congress has intended that a removal statute apply only to cases

"commenced" in state court after the statute's effective date, Congress has explicitly so stated.

Thus, in 1986, when Congress amended the removal statute to permit removal of an entire action

that contains state law claims and a separate and independent federal law claim, Congress

provided that the amendment would "apply with respect to claims in civil actions commenced *in

State courts* on or after the date of the enactment." P.L. 99-336, § 3(b), 100 Stat. 633 (June 19,

1986) (emphasis added). Because Congress did not expressly include the limiting language "in

State courts" in the Class Action Fairness Act, the Act applies to actions filed in state court prior

to the effective date, but removed (and thus "commenced" in federal court) on or after the

effective date.

17.    Applying the Class Action Fairness Act to cases in which federal jurisdiction is

invoked on or after the Act's date of enactment is consistent with the express "purpose" of the

Act: to "restore the intent of the framers of the United States Constitution by providing for

Federal court consideration of interstate cases of national importance under diversity

jurisdiction." P.L. 109-2, § 2(b)(2).

18.    The Act's legislative history reflects that the purpose of the Act was to

"*encourage* the exercise of federal jurisdiction over class actions." S. Rep. 108-123 at 45

(emphasis added).

19.    Consistent with the Congressional intent to expand federal jurisdiction, the term "commenced" should be interpreted as "commenced in federal court" and thus authorizes federal courts to exercise jurisdiction over any case removed on or after the effective date.

20.    This putative class action seeking recovery from an out-of-state defendant is precisely the type of "abuse" that Congress sought to remedy in enacting the Class Action Fairness Act. *See* P.L. 109-2, § 2(a)(4)(B) (finding that state court judges were "sometimes acting in ways that demonstrate bias against out-of-State defendants"). To construe the term "commenced" as anything other than "commenced in federal court" and preclude federal jurisdiction over this action would be contrary to Congress' intent to expand the number of cases (and, in particular, class actions) subject to federal jurisdiction.

21.    Plaintiff may seek to rely on a recent district court decision in another Circuit holding that the Class Action Fairness Act did not apply to an action filed in state court prior to the effective date, but removed after the effective date. *Pritchett v. Office Depot, Inc.*, 2005 WL 563979 (D. Col. Mar. 9, 2005), *petition for permission to appeal denied* (10th Cir. Mar. 18, 2005). *Pritchett* is not controlling here.

22.    First, in contravention of the requirement in 28 U.S.C. § 1446(b) that an action be removed within 30 days of service of the complaint, the defendant in *Pritchett* removed the action almost two years after service, and, indeed, after the June 2004 certification of a class in the state court. 2005 WL 563979, at *1. That is, the defendant attempted to apply the Class Action Fairness Act retroactively to revive a right to remove that had expired years earlier. By contrast, here Pfizer timely removed this action from state court within 30 days of service of the amended complaint – filed *after* the enactment of the Class Action Fairness Act and the only complaint ever served on Pfizer in this action. Accordingly, the *Pritchett* court's concern that

8

permitting removal of that action "would permit the removal of nearly every presently-pending

class action in every state court, resulting in a sudden tidal wave of filings on an already

burdened federal judiciary, rather than the gradual, incremental flow of newly-filed class

actions" (*id*. at *4), is not present here. Moreover, here, unlike in *Pritchett*, where the class has

already been certified, applying the Act would not "deem certain substantive provisions of the

Act [where a class had already been certified] to apply to presently pending cases, potentially

frustrating the expectations of current litigants." *Id*. at *4. Because the Act is only being applied

prospectively to actions commenced in federal court after the effective date – and because of the

requirement that the action be removed within 30 days of service – there is no risk of the Act

disrupting cases where a class has already been certified.

23.    Second, as in *Cedillo* – a decision that *Pritchett* did not address – Congress

intended in the Class Action Fairness Act to *expand* federal jurisdiction. Holding that the Act

applies to actions filed in federal court, provided that the 30-day rule of § 1446(b) is satisfied,

will effectuate Congress' intent to expand federal jurisdiction. In concluding that the Class

Action Fairness Act did "not purport to abrogate [the] long-standing rule" that "statutes

conferring jurisdiction on federal courts are to be strictly construed and all doubts must be

resolved against federal jurisdiction" (*id*. at *4), the court in *Pritchett* acted directly contrary to

Congress' stated intent to expand federal jurisdiction in order to "restore the intent of the framers

of the United States Constitution by providing for Federal court consideration of interstate cases

of national importance under diversity jurisdiction." P.L. 109-2, § 2(b)(2).[2]

---

[2] In the context of statutes increasing the requisite jurisdictional minimum, a few courts – contrary to the holdings in *Cedillo, Abernathy, Casteel, Lorraine Motors* and *Hunt* – held that "commenced" means "commenced in state court" and declined to apply the new jurisdictional provisions to cases removed to federal court after the statutes' respective effective dates. *Rhinehart v. Cincinnati, Inc.*, 716 F. Supp. 7 (E.D. Mich. 1989); *Kieffer v. Travelers Fire Ins. Co.*, 167 F. Supp. 398 (D. Md. 1958); *Lomax v. Duchow*, 163 F. Supp. 873 (D. Neb. 1958). But for the reasons set forth in Paragraphs 9-20, supra, "commenced" means "commenced in federal court," which is consistent with the express legislative purpose of expanding federal jurisdiction over class actions.

24.     Accordingly, for the reasons stated above, the provisions of the Class Action

Fairness Act – which permit removal of class actions where the putative class consists of 100 or

more persons, the citizenship of any proposed class member is diverse from that of any

defendant, and the matter in controversy after aggregating the class members' claims exceeds $5

million (exclusive of interest and costs) – applies to this action. As shown in Points I.A-B, *supra*,

those requirements are met.

## II.    FOR A SEPARATE AND INDEPENDENT REASON, THIS COURT HAS FEDERAL DIVERSITY JURISDICTION OVER THIS ACTION.

25.     Regardless of whether the Class Action Fairness Act applies to this action, this

action is removable because this Court has federal diversity jurisdiction over this action pursuant

to 28 U.S.C. § 1332 in that: (1) there is complete diversity of citizenship between the named

plaintiff and Pfizer, the only defendant; and (2) plaintiff's request for relief in the form of

disgorgement among all class members is a "common and undivided interest" in excess of

$75,000, exclusive of interest and costs.

## A.    Diversity of Citizenship

26.     In cases not governed by the Class Action Fairness Act, in determining whether

diversity is satisfied in a putative class action, only the citizenship of the named plaintiff is

considered. *Supreme Tribe of Ben-Hur v. Cauble*, 255 U.S. 356, 365-66 (1921).

27.     At all relevant times, the named plaintiff is, and was, a citizen of the State of

Massachusetts. At all relevant times, defendant Pfizer is, and was, a corporation existing under

the laws of the State of Delaware, having its principal place of business in the State of New

York, and, therefore, is a citizen of Delaware and New York. *See* ¶¶ 3-4, *supra*.

28.     Accordingly, there is complete diversity between the named plaintiff and Pfizer,

the only defendant in this action.

10

**B.**   **Amount in Controversy**

29.   It is well settled that "'when several plaintiffs unite to enforce a single title or
right, in which they have a common and undivided interest, it is enough if their interests
collectively equal the jurisdictional amount.'" *Zahn v. Int'l Paper Co.*, 414 U.S. 291, 294 (1973).
*Accord, Snyder v. Harris*, 394 U.S. 332, 335 (1969) (where "two or more plaintiffs unite to
enforce a single title or right in which they have a common and undivided interest," their claims
for relief are aggregated to satisfy the requisite jurisdictional amount); *Berman v. Narragansett
Racing Assoc.*, 414 F.2d 311, 315 (1st Cir. 1969) (holding that entire amount of the "common
and undivided" interest is considered in determining whether the jurisdictional minimum is
satisfied).

30.   Here, plaintiff alleges that she and the proposed class are entitled to
"disgorgement of the amount by which Pfizer has been unjustly enriched," and that Pfizer "sold
millions of dollars" of Listerine (*see* Compl. ¶ 3), which is in excess of $75,000, exclusive of
interest and costs. The request for relief in the form of disgorgement is a "common and
undivided" interest among all class members. In *Berman*, the First Circuit held that class
members have a "common and undivided interest" in the relief sought when they assert an
"integrated right against the defendant" such that by "any formula that is finally adopted,
defendant['s] liability is the same." *Berman*, 414 F.2d at 315-16. In denying remand in an action
seeking disgorgement, a federal court held that relief in the form of disgorgement is
characteristic of a "common and undivided" interest because "if one plaintiff were to fail to
collect his share, the remaining plaintiffs would collect a larger share." *Durant v. Servicemaster
Co.*, 147 F. Supp. 2d 744, 750 (E.D. Mich 2001). Thus, under "any formula . . . defendant['s]
liability is the same," which is the test set forth by the First Circuit in *Berman* for a "common
and undivided interest." 414 F. 2d at 316.

11

31.     Other precedents from around the country establish that a claim for disgorgement

of profits in excess of the jurisdictional amount in a putative class action satisfies the requisite

amount in controversy for federal diversity jurisdiction. *In re Microsoft Corp. Antitrust Litig.*,

127 F. Supp. 2d 702, 720-21 (D. Md. 2001) ("cases that include a claim for disgorgement have

been properly removed"); *In re Cardizem CD Antitrust Litig.*, 90 F. Supp. 2d 819, 828-29 (E.D.

Mich. 1999) (denying remand in actions seeking disgorgement); *Aetna U.S. Healthcare, Inc. v.

Hoechst Aktiengesellschaft*, 48 F. Supp. 2d 37, 41-43 (D.D.C. 1999) (same); *Hughes Constr. Co.

v. Rheem Mfg. Co.*, 487 F. Supp. 345, 350-351 (S.D. Miss. 1980) (same); *Everett v. Verizon

Wireless, Inc.*, 2001 U.S. Dist. LEXIS 25426, at *9-11 (N.D. Ohio Feb. 26, 2001) (same).[3]

32.     Accordingly, plaintiff's request for relief in the form of disgorgement, which

exceeds $75,000 (exclusive of interest and costs) satisfies the requisite amount in controversy for

federal diversity jurisdiction.

## III.    PROCEDURAL REQUIREMENTS FOR REMOVAL

33.     On January 23, 2005, plaintiff filed her Complaint in the Superior Court of

Massachusetts, Middlesex County, but failed to serve a copy of the Complaint on Pfizer. On

March 2, 2005, plaintiff filed its First Amended Complaint in the Superior Court of

Massachusetts, Middlesex County. On March 4, 2005, Pfizer was served with a copy of the First

Amended Complaint. Because this Notice of Removal is being filed within 30 days of the service

of that Complaint, it is timely under 28 U.S.C. § 1446(b). Certified copies of all process and

pleadings of the state court action will be provided to this Court pursuant to Rule 81.1 of the

Local Rules of the United States District Court for the District of Massachusetts.

---

[3] Pfizer does not concede that the named plaintiff or any putative class member is in fact entitled to recover beyond
his or her individual expenditures, that any plaintiff or class member can obtain disgorgement of the full amount
sought here, or that plaintiff has stated a valid claim for relief for disgorgement. *See St. Paul., supra* n.1, 303 U.S. at
294. Accepting plaintiff's allegations solely for purposes of removal, as shown in the text above, the relief requested
is particularly reflective of a "common and undivided interest", where by "any formula that is finally adopted,
defendant['s] liability is the same." *Berman*, 414 F.2d at 316.

12

34.     The United States District Court for the District of Massachusetts embraces the

county in which the state court action is now pending, and thus, this Court is a proper venue for

this action pursuant to 28 U.S.C. § 101.

35.     Pfizer is filing written notice of this removal with the Clerk of the State Court in

which the action is currently pending, pursuant to 28 U.S.C. § 1446(d). Copies of the Notice of

Filing Notice of Removal, together with this Notice of Removal, are being served upon

plaintiffs' counsel pursuant to 28 U.S.C. § 1446(d).

WHEREFORE, Defendant Pfizer respectfully removes this action from the Superior

Court of Massachusetts, Middlesex County, bearing Cause No. 2005-0122-D, to this Court,

pursuant to 28 U.S.C. § 1441, *et seq.*

DATED this 25th day of March, 2005.

Respectfully submitted,
PFIZER, INC.
By its attorneys,

William M. Cowan, Esquire,  BBO #566940
Dora Kripapuri, Esquire, BBO #654236
Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.
One Financial Center
Boston, MA  02111
617-542-6000

OF COUNSEL:

Thomas Smart, Esquire
Richard DeSevo, Esquire
Kaye Scholer LLP
425 Park Avenue
New York, NY  10022
212-836-8000

13

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing *Notice of Removal* was served

on this 25th day of March, 2005 via first class mail upon counsel of record:


Kenneth D. Quat, Esquire
9 Demonmill Square
Suite 4A-4
Concord, MA  01742
978-369-0848


Of Counsel:

Lance A. Harke, Esquire
Harke & Clasby LLP
155 South Miami Ave.
Suite 600
Miami, FL  33130
305-536-8220

Ben Barnow, Esquire
Barnow and Associates, P.C.
One North LaSalle Street
Suite 4600
Chicago, IL  60602
312-621-2000

_____
William M. Cowan

| CIVIL ACTION COVER SHEET | DOCKET NO.(S) 05-0122 | Trial Court of Massachusetts Superior Court Department County: _Middlesex_ |
|---|---|---|

| PLAINTIFF(S) STERRY KWAAK | DEFENDANT(S) PFIZER, INC |
|---|---|

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE<br>Kenneth Quat, 9 Damonmill Sq., Suite 4A-4<br>Concord MA 01742   978-369-0848<br>Board of Bar Overseers number: 408640 | ATTORNEY (if known) |
|---|---|

## Origin code and track designation

Place an x in one box only:

- [X] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

## TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B99 | Unjust Enrichment | (F) | (X) Yes   ( ) No |

**The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.**

### TORT CLAIMS
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . .
2. Total Doctor expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . .
3. Total chiropractic expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . .
4. Total physical therapy expenses . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . .
5. Total other expenses (describe) . . . . . . . . . . . . . . . . . . . . . . . . Subtotal $ . . . . . . . . . . .

FILED IN THE OFFICE OF THE CLERK OF THE COURTS FOR THE ... JAN 13 2005 ... CLERK

B. Documented lost wages and compensation to date . . . . . . . . . . . . $ . . . . . . . . . . .
C. Documented property damages to date . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . .
D. Reasonably anticipated future medical and hospital expenses . . . . . $ . . . . . . . . . . .
E. Reasonably anticipated lost wages . . . . . . . . . . . . . . . . . . . . . . . $ . . . . . . . . . . .
F. Other documented items of damages (describe)
$ . . . . . . . . . . .

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

Class Action. Claim for unjust enrichment based on false & misleading advertising & marketing practices.

$ 1 million +
**TOTAL $ . . . . . . (est.)**

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

**TOTAL $ . . . . . . . . . . . .**

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT   None known.

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____   DATE: 1/13/05

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.

Superior Court
Civil No.

**05-0122**

SHERRY KWAAK, an individual, )
on behalf of herself and all others similarly )
situated, )
)
     Plaintiffs, )
)
v. )
)
PFIZER, INC., )
a Delaware Corporation. )
)
     Defendant. )

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR ... MIDDLESEX

JAN 13 2005

_Edward J. Sullivan_
CLERK

## COMPLAINT AND JURY CLAIM

Plaintiff, Sherry Kwaak, individually and on behalf of all others similarly situated,

| | | |
|---|---|---|
| 3689E000001/13/05CIVIL | 240.00 |
| 3689E000001/13/05SUR CHARGE | 15.00 |
| 3689E000001/13/05SUMMONS | 5.00 |
| 3689E000001/13/05SECC | 20.00 |

alleges as follows:

    1.    This case is brought against Defendant Pfizer, Inc. ("Pfizer") by Plaintiff,

individually and on behalf of all others similarly situated, each of whom purchase Pfizer's

Listerine® Antiseptic Mouthrinse ("Listerine"), an essential oil-containing antiseptic mouthwash

from June 2004 to the present.

    2.    As alleged herein, Pfizer, through a standardized advertising, promotional, and

marketing campaign hatched, incubated, facilitated, and consummated by Pfizer in a uniform

manner, has engaged in unfair and deceptive marketing by purposefully misrepresenting that

Listerine is "As Effective As [dental] Floss." As explained more specifically below, Pfizer's

misrepresentations are belied by its own clinical studies. Pfizer uniformly promotes this false

1

statement through the Listerine packaging, both as a stickered label and a "bottle hanger," as well as television, print, the Internet, and other media.

3.     As a result of this unfair and deceptive practice, Pfizer has sold millions of dollars in Listerine which it would not have otherwise sold had it made the proper disclosures, and it has been unjustly enriched at the expense of Plaintiff and the class members.

4.     Plaintiff brings this case on behalf of herself and a class of Massachusetts consumers ("Class").

## PARTIES

5.     Plaintiff is a resident of Somerville, Middlesex County, Massachusetts. During the proposed class period, Plaintiff purchased Listerine for her personal consumption within the Commonwealth of Massachusetts.

6.     Pfizer is a Delaware corporation with its principal place of business at 235 East 42nd Street, New York 10017. Pfizer manufactures consumer and pharmaceutical products. Pfizer advertises, distributes and sells its products throughout the United States, including in Massachusetts.

## THE CLASS

7.     Plaintiff brings this case as a class action pursuant to Mass. R. Civ. P. 23. Plaintiff seeks certification of a class of Massachusetts purchasers of Listerine defined as: All individuals who purchased Listerine for consumption and not resale in the Commonwealth of Massachusetts after June 1, 2004, up to and including the present. Excluded from this Class are employees, officers, and directors of Pfizer. Plaintiff is a member of the class in that she purchased Listerine for her personal consumption within the class period.

8.     This action is proper for class treatment under Rule 23of the Massachusetts Rules

2

of Civil Procedure. The proposed class is so numerous that individual joinder of all members is

impracticable. While the exact number and identities of the class members are unknown to

Plaintiff at this time, Plaintiff is informed and believes that the class numbers in the thousands,

and likely tens of thousands.

      9.     Questions of law and fact arise from Pfizer's conduct in misrepresenting Listerine

as a substitute for flossing. Such questions are common to all Class members and predominate

over any questions affecting only individual Class members. The myriad questions of law and

fact common to the Class include:

        (a)     whether Listerine is "As Effective As [dental] Floss";

        (b)     whether Pfizer markets and misrepresents Listerine as being "As Effective
                As Floss";

        (c)     whether Pfizer failed to disclose to consumers that Listerine was not an
                adequate substitute for flossing with dental floss;

        (d)     whether Pfizer engaged in a marketing practice intended to deceive
                consumers regarding the benefits of Listerine;

        (e)     whether Pfizer has been unjustly enriched at the expense of Plaintiff and
                the class members by its misconduct;

        (f)     whether Pfizer must disgorge any and all profits it has made as a result of
                its misconduct; and

        (g)     whether Pfizer should be barred from marketing Listerine in an inaccurate,
                misleading, and/or deceptive manner.

      10.    Plaintiff will fairly and adequately represent and pursue the interests of Class

members. Plaintiff's counsel has substantial experience in consumer class action cases, and has

3

no conflict with the interests of the plaintiff, the plaintiff class, or the claims asserted. Plaintiff understands the nature of her claims herein, has no disqualifying conditions, and will vigorously represent the interests of the Class.

### FACTUAL ALLEGATIONS

11.    Defendant Pfizer markets over-the-counter antiseptic essential oil containing mouthrinses under the brand name Listerine. As opposed to a mechanical device like floss, Listerine is a chemotherapeutic mouthwash used in oral hygiene. Although Listerine may have certain adjunctive benefits when used in combination with regular flossing, Listerine has never been proven to be, and is not, a substitute for flossing, as Pfizer itself has repeatedly acknowledged.

12.    Many consumers do not floss or rarely floss because it is a difficult and time-consuming process.

13.    As a consequence, a large consumer market exists to be tapped. If the 87% of consumers that never or rarely floss can be persuaded to floss more regularly, sales of floss would increase dramatically.

14.    At the same time, Pfizer has recognized that there is enormous potential here for greater sales of Listerine as well. Pfizer has come to realize that if it could convince consumers who were reluctant flossers that they could obtain the benefits of flossing by rinsing with Listerine, it would be in a position to see its sales of Listerine increase dramatically.

15.    Pfizer sponsored two clinical studies involving Listerine and floss: the "Sharma Study" and the "Bauroth Study."

4

16.   The authors concluded that the studies provided "additional support for the use of the essential oil mouthrinse as an adjunct to mechanical oral hygiene regimens." They cautioned that "[p]rofessional recommendations to floss daily should continue to be reinforced."

17.   The Bauroth authors concluded: "[w]e do not with to suggest that the mouthrinse should be used instead of dental floss or any other interproximal cleaning device."

18.   Neither the Bauroth Study nor the Sharma Study purported to examine whether Listerine could replace floss, and neither study examined the efficacy of Listerine with respect to severe gingivitis or periodontitis or tooth decay or the removal of food debris. In addition, neither study considered the adjunctive effects of Listerine when used in addition to brushing and flossing.

19.   Pfizer acknowledged to the American Dental Association ("ADA") that "[w]e recognize that any comparison vs. flossing may send an unintended message to dental professionals that Listerine can replace flossing," and Pfizer assured the ADA that its advertising was "constructed" to "ensure that this does not happen."

20.   The ADA also approved the claim "New clinical studies prove that the antimicrobial action of Listerine is as effective as flossing." The claims were approved for use only with professionals "because of the potential to mislead consumers that they no longer need to floss."

21.   The ADA noted that Pfizer had agreed that it "does not wish to promote the message that consumers can stop daily flossing if they rinse twice a day with Listerine."

22.   In January 2004, Pfizer sought approval from the ADA to expand its "as effective as flossing" advertising campaign to consumers.

23.   Again Pfizer sought to assure the ADA that:

5

> We are taking appropriate, responsible and ethical measures to
> convey an unambiguous, yet creative and provocative, message
> to consumers that Listerine is not a replacement for flossing and
> that it is an adjunct to their usual mechanical oral care routine,
> which would include flossing daily.

24.     Pfizer went on to tell the ADA that, "Pfizer has no intention of telling people to stop flossing. We never have. We never will." In its supporting materials, Pfizer acknowledged the standard for maintaining optimal interproximal gingival health, but it contended that "chemotherapeutic agents may also serve a useful role especially in those patients whose brushing and flossing are inadequate to prevent and control gingivitis."

25.     Prior to the launch of the consumer campaign, the ADA expressed concern about "the concept" that "if consumers don't have the time to floss, they can use Listerine instead."

26.     Despite the universal recognition and substantial clinical data proving that flossing is necessary for good oral health care, Pfizer began disseminating and continues to run Listerine advertising that effectively communicates that Listerine is a complete replacement for and provides all the benefits of flossing.

27.     On or about June 2004, Pfizer launched an advertising campaign in the United States effectively telling consumers that Listerine can be used as a replacement for flossing – a claim that Pfizer itself has acknowledged is not true. The centerpiece of that campaign was a splashy comparative television commercial referred to as the "Big Bang" spot containing false and misleading claims about the efficacy of Listerine as compared to dental floss.

28.     The Big Bang commercial began with a screen filled with a swirl of Listerine, designed presumably to look like a string of floss, and a full-screen declaration, along with a voiceover, stating that "Listerine's as effective as floss." The only qualifier to this statement was a tiny disclaimer on the bottom reading, "Against plaque and gingivitis between teeth." The

6

voiceover then stated, "Clinical studies prove it" while the screen showed both floss and a stream of Listerine.

29.    The commercial then cut to a person using the Listerine mouthwash with a voiceover stating "So even if you don't floss like you should, now you can get its healthy benefits from simply rinsing." The commercial did not qualify in any way this broad and misleading statement that simply rinsing with Listerine can give you all of the healthy benefits of flossing.

30.    Showing Listerine weaving in between teeth like a piece of floss, the commercial continued by again stating that Listerine is as effective as floss, while in tiny print at the bottom of the screen appeared the contradictory statement, "Floss daily." The commercial then closed with an appeal to consumers to rinse rather than floss because of rinsing's ease and efficacy.

31.    Pfizer's Listerine advertising contained false and misleading claims because it conveyed to consumers that rinsing is comparable to flossing in every respect and, further, that flossing is not necessary.  Further, Pfizer's advertising claims were not supported by the clinical studies upon which Pfizer relies.

32.    The launch generated immediate concern among dental professionals.

33.    In part because of the concerns raised by the dental community, Pfizer made changes to the advertisements, but Pfizer continued to send the message that Listerine was "as effective as floss."

34.    On August 13, 2004, Pfizer aired a new Big Bang spot comparing Listerine to flossing.  This commercial communicated the same false and misleading messages that were conveyed in Pfizer's earlier commercial.

7

35.     Again, the commercial began with a swirl of Listerine and the full-screen declaration that "Listerine's as effective as floss" with the same tiny print disclaimer at the bottom of the screen stating, "Against plaque and gingivitis between teeth." This was followed by a voiceover to the same effect, also stating that "Clinical studies prove it."

36.     While showing a container of dental floss and then a swirl of Listerine designed to look like a string of floss, the voiceover continued on to say, "Of course, you should floss but if you don't floss like you should, you can get flosses' [sic] plaque-fighting benefits by rinsing." The commercial then showed Listerine weaving in between teeth like a piece of floss accompanied by a voiceover, "Listerine kills the germs that cause plaque, even between teeth."

37.     In tiny print at the bottom of the screen, Pfizer added a contradictory statement which read, "Not a replacement for floss. Ask your dentist."

38.     Finally, the commercial concluded, like its predecessor, with an appeal to consumers to rinse rather than floss because of rinsing's ease and supposed efficacy. Emblazoned across the screen yet again was the phrase "Listerine's as effective as floss" with the qualifier in tiny print at the bottom of the screen, "Against plaque and gingivitis between teeth." Finally, in large print, the screen read "As easy as rinsing. As effective as flossing," accompanied by a voiceover with the same words.

39.     Pfizer's revised commercial continued to communicate that consumers do not need to floss to obtain flossing benefits because Listerine is just as effective as floss.

40.     Pfizer also published print ads, used a hang tag and shoulder labels on its bottles of Listerine, and has also featured the "as effective as flossing" claim on its website for Listerine.

8

41.    On or about September 15, 2004, Pfizer began airing another new Big Bang television commercial.  This commercial continued to communicate a message to consumers that Listerine is a substitute for floss in all respects.

42.    The new commercial opens the same way as the prior ones, with a swirl of Listerine and the full-screen declaration that "Listerine's as effective as floss." Again, Pfizer attaches a tiny print disclaimer at the bottom of the screen stating, "Against plaque and gingivitis between teeth" followed by a voiceover to the same effect and the statement that "Clinical studies prove it."

43.    The commercial then shows a container of dental floss and a swirl of Listerine designed to look like a string of floss, accompanied by the revised voiceover, "There's no replacement for flossing but if you don't floss like you should, you can get its plaque-fighting benefits by rinsing." The commercial next shows Listerine weaving in between teeth like a piece of floss with a voiceover stating, "Listerine kills the germs that cause plaque, even between teeth, so it's as effective as floss against plaque and gingivitis" and a small-print super, "Ask your dental professional."

44.    Finally, the commercial concludes, like its predecessors, by encouraging consumers to rinse rather than floss because of rinsing's ease and supposed efficacy. Again, the phrase "Listerine's as effective as floss" is prominently displayed in the screen with a small-print disclaimer at the bottom of the screen, "Against plaque and gingivitis between teeth." Finally, in large print the screen reads "As easy as rinsing. As effective as flossing, against plaque and gingivitis," accompanied by a voiceover with the same words.

45.    Like the prior incarnations of the Big Bang spot, Pfizer's latest commercial communicates that consumers do not need to floss to obtain flossing benefits because Listerine is just as effective as floss. This message of overall efficacy is patently false.

46.    In addition to the Big Bang television commercial, Pfizer began running print advertisements touting the same false and misleading message - namely, that Listerine is a complete replacement for flossing.  For example, it has run a full page coupon insert that shows a scale - equally balanced- with floss on one side and Listerine on the other.  Printed above the scale is the statement, "Only Listerine Antiseptic is clinically proven to be As Effective as Floss" with the remainder of the sentence – "at Reducing Plaque and Gingivitis between the Teeth" – in smaller print.  Similarly, Pfizer has attached bottle hangers with this advertisement on Listerine bottles.

47.    Pfizer has also placed prominent red stickers on the Listerine bottles that say "Now Clinically Proven, As Effective As Floss" with a small print disclaimer "Against Plaque and Gingivitis Between the Teeth."

48.    Listerine also advertised in a CVS drug store circular with a picture of Listerine bottles and the unqualified and prominent statement "As Good As Flossing."

49.    Pfizer's Listerine website repeatedly makes the same claims regarding Listerine's efficacy as compared to floss that are made in the Big Bang television commercial and even contains the commercial itself in case consumers "haven't seen in on the air." *See* http://www.listerine.com.

50.    In December 2004, Pfizer began running a fourth version of the Big Bang.  It is substantially similar to the third version, with the exception that it makes reference to Pfizer's new Advanced Listerine.

51.    In September and October 2004, a consumer research firm, Bruno and Ridgway Research Associates, conducted three consumer surveys in mall and shopping centers in ten different locations throughout the United States. The first was intended to determine the message that consumers took away from the Big Bang commercial. The second sought to determine the message that consumers took away from the first of the three shoulder labels. The third sought to measure the pre-existing beliefs of consumers regarding the use of Listerine and floss.

52.    The first survey found that 50% of the respondents took away the message that "you can replace floss with Listerine."

53.    The second survey found that 45% of the consumers took away the message that Listerine could be used instead of floss.

54.    The third survey, a control survey, consumers were asked their "pre-existing beliefs" regarding Listerine and floss; the intent was to determine the number of people who did not recall seeing the commercial but who still believed that Listerine could be used instead of floss. A minority of those surveyed did not recall seeing Big Bang, and of those 19% stated the opinion that Listerine could be used in place of floss.

55.    The surveyors then took the three surveys together, subtracted the 19% figure from the 50% and 45% figures, respectively, and concluded that 31% of those who saw the commercial and 26% of those who viewed the shoulder label took away a replacement message.

56.    Pfizer commissioned its own survey, which was conducted by Dr. Seymour Lieberman.

57.    Dr. Lieberman concluded that the Big Bang had "no negative impact" on consumers' expectations with respect to the purchase or use of floss.

58.    Dr. Lieberman also sought to determine whether the commercial "created the idea that Listerine provides all of the benefits of floss without reservation." He did so by showing half the respondents the Big Bang commercial and half another Pfizer commercial for Listerine called "Simple Solution." The respondents were then asked a series of questions, and the stated intent was to use Simple Solution as a control to determine the number of people who took a replacement message away from Big Bang. According to Dr. Lieberman, Simple Solution was a "perfect control" because it did not "either implicitly or explicitly [make] the claim that Listerine is as effective as floss."

59.    Dr. Lieberman concluded that for both Big Bang and Simple Solution, the percentage of respondents expecting to buy mouthwash increased significantly after seeing the respective commercial. Dr. Lieberman also found that for both commercials, there were significant increases - - 23% for Big Bang and 19% for Simple Solutions - - in the number of people who believed that Listerine provides all the benefits of flossing.

60.    Dr. Lieberman also found that after they saw the commercials, 49% of those who saw Big Bang and 45% of those who saw Simple Solution believed that "Listerine provides all of the benefits of flossing."

61.    In response to an earlier version of Big Bang, 27% of the respondents took away the message that Listerine "can substitute brushing/flossing."

62.    In sum, Pfizer's Listerine advertising is based upon data from two studies, sponsored by Pfizer, purportedly designed to compare the efficacy of essential oil antiseptic mouthrinse versus dental floss in controlling plaque and mild to moderate interproximal (between the teeth) gingivitis. These six-month unsupervised studies followed subjects with mild to moderate gingivitis and purportedly found that rinsing twice daily as directed with an essential

12

oil antiseptic mouthrinse was at least as effective as flossing daily, but solely in reducing interproximal gingivitis and plaque. Pfizer's clinical studies were limited and did not examine the mouthrinse's efficacy with respect to tooth decay, periodontitis, removal of food debris, severe gingivitis, or any oral conditions other than interproximal gingivitis and plaque.

63.    Recognizing the studies' limitations and the undisputed fact that rinsing could not replace flossing, Pfizer's clinical studies concluded only that rinsing was an effective "adjunct" to a brushing and flossing regimen. In reports of the studies, Pfizer appropriately recognized that "[p]rofessional recommendations to floss daily should continue to be reinforced" and that Pfizer does "not wish to suggest that the mouthrinse should be used instead of dental floss or any other interproximal cleaning device."

64.    Indeed, in a report to dental professionals announcing that Pfizer was commencing a consumer advertising campaign based upon these studies, Pfizer acknowledged that the studies "were not designed to suggest that Listerine is a replacement for floss." Pfizer further promised dental professionals, "[r]est assured, as with the professional campaign, we will promote responsibly and emphasize to patients that rinsing with Listerine cannot take the place of flossing." Pfizer failed to adhere to this pledge.

65.    Thus Pfizer, by engaging in the deceptive and misleading marketing campaign described above, continued to sell millions of dollars worth of Listerine which it would not have sold had it disclosed the truth about Listerine to consumers.

66.    Sales of automatic and power flossers are down.

67.    It is not surprising that sales of string floss have not dropped while sales of automatic and power flossers have. The string floss category is comprised predominantly of "people who are more loyal flossers," who would be less likely to replace floss with Listerine.

13

Consumers who use automatic and power flossers, in contrast, are predominantly "folks who don't like to floss," "who would love to have a replacement for flossing." These consumers "would be more susceptible to a message like the Listerine advertising campaign."

Plaintiff and class members have been substantially damaged by, and Pfizer has substantially profited from, Pfizer's unlawful conduct.

COUNT I- UNJUST ENRICHMENT

68.    Plaintiffs re-allege paragraphs 1 though 67 as if fully set forth herein.

69.    Pfizer received certain monies in response to its inaccurate, misleading, and deceptive marketing of Listerine which are excessive and unreasonable.

70.    As a result, Plaintiff and the Class members have conferred a benefit on Pfizer, and Pfizer has knowledge of this benefit and has voluntarily accepted and retained the benefit conferred on it.

71.    Sales of Listerine have increased at least 10% since Pfizer started its "as effective as floss" campaign.

72.    Pfizer will be unjustly enriched if it is allowed to retain such funds, and the Class is entitled to disgorgement of the amount by which Pfizer has been unjustly enriched.

**WHEREFORE**, Plaintiff and class members demand an award against Pfizer for the amount equal to the amount by which Pfizer has been unjustly enriched, and such other relief as this Court deems just and proper.


Plaintiff and the Class members demand a trial by jury.

Respectfully submitted,

Kenneth D. Quat
BBO 408640
9 Damonmill Square, Suite 4A-4
Concord MA 01742
978-369-0848

Lance A. Harke, P.A.
HARKE & CLASBY LLP
155 South Miami Ave., Suite 600
Miami, Florida 33130
 (305) 536-8220

Ben Barnow
BARNOW AND ASSOCIATES, P.C.
One North LaSalle Street, Suite 4600
Chicago, Illinois  60602
312-621-2000

15

COMMONWEALTH OF MASSACHUSETTS

Middlesex, ss.

Superior Court
Civil No. 2005-0122-D

| | |
|---|---|
| SHERRY KWAAK, an individual, on behalf of herself and all others similarly situated, | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| PFIZER, INC., a Delaware Corporation. | ) ) |
| | ) |
| Defendant. | ) |

FILED
IN THE OFFICE OF THE
CLERK OF THE COURTS
FOR THE COUNTY OF MIDDLESEX

MAR 0 2 2005

_Edward J. Sullivan_
CLERK

## FIRST AMENDED COMPLAINT AND JURY CLAIM

Plaintiff, Sherry Kwaak, individually and on behalf of all others similarly situated, alleges as follows:

1.    This case is brought against Defendant Pfizer, Inc. ("Pfizer") by Plaintiff, individually and on behalf of all others similarly situated, each of whom purchase Pfizer's Listerine® Antiseptic Mouthrinse ("Listerine"), an essential oil-containing antiseptic mouthwash from June 2004 to the present.

2.    As alleged herein, Pfizer, through a standardized advertising, promotional, and marketing campaign hatched, incubated, facilitated, and consummated by Pfizer in a uniform manner, has engaged in unfair and deceptive marketing by purposefully misrepresenting that Listerine is "As Effective As [dental] Floss." As explained more specifically below, Pfizer's misrepresentations are belied by its own clinical studies. Pfizer uniformly promotes this false

statement through the Listerine packaging, both as a stickered label and a "bottle hanger," as well as television, print, the Internet, and other media.

3.      As a result of this unfair and deceptive practice, Pfizer has sold millions of dollars in Listerine which it would not have otherwise sold had it made the proper disclosures, and it has been unjustly enriched at the expense of Plaintiff and the class members.

4.      Plaintiff brings this case on behalf of herself and a class of Massachusetts consumers ("Class").

## PARTIES

5.      Plaintiff is a resident of Somerville, Middlesex County, Massachusetts. During the proposed class period, Plaintiff purchased Listerine for her personal consumption within the Commonwealth of Massachusetts.

6.      Pfizer is a Delaware corporation with its principal place of business at 235 East 42nd Street, New York 10017. Pfizer manufactures consumer and pharmaceutical products. Pfizer advertises, distributes and sells its products throughout the United States, including in Massachusetts.

## THE CLASS

7.      Plaintiff brings this case as a class action pursuant to Mass. R. Civ. P. 23. Plaintiff seeks certification of a class of Massachusetts purchasers of Listerine defined as: All individuals who purchased Listerine for consumption and not resale in the Commonwealth of Massachusetts after June 1, 2004, up to and including the present. Excluded from this Class are employees, officers, and directors of Pfizer. Plaintiff is a member of the class in that she purchased Listerine for her personal consumption within the class period.

8.      This action is proper for class treatment under Rule 23of the Massachusetts Rules

2

of Civil Procedure. The proposed class is so numerous that individual joinder of all members is

impracticable. While the exact number and identities of the class members are unknown to

Plaintiff at this time, Plaintiff is informed and believes that the class numbers in the thousands,

and likely tens of thousands.

9.    Questions of law and fact arise from Pfizer's conduct in misrepresenting Listerine

as a substitute for flossing. Such questions are common to all Class members and predominate

over any questions affecting only individual Class members. The myriad questions of law and

fact common to the Class include:

(a)    whether Listerine is "As Effective As [dental] Floss";

(b)    whether Pfizer markets and misrepresents Listerine as being "As Effective
As Floss";

(c)    whether Pfizer failed to disclose to consumers that Listerine was not an
adequate substitute for flossing with dental floss;

(d)    whether Pfizer engaged in a marketing practice intended to deceive
consumers regarding the benefits of Listerine;

(e)    whether Pfizer has been unjustly enriched at the expense of Plaintiff and
the class members by its misconduct;

(f)    whether Pfizer must disgorge any and all profits it has made as a result of
its misconduct; and

(g)    whether Pfizer should be barred from marketing Listerine in an inaccurate,
misleading, and/or deceptive manner.

10.    Plaintiff will fairly and adequately represent and pursue the interests of Class

members. Plaintiff's counsel has substantial experience in consumer class action cases, and has

no conflict with the interests of the plaintiff, the plaintiff class, or the claims asserted. Plaintiff understands the nature of her claims herein, has no disqualifying conditions, and will vigorously represent the interests of the Class.

## FACTUAL ALLEGATIONS

11.     Defendant Pfizer markets over-the-counter antiseptic essential oil containing mouthrinses under the brand name Listerine. As opposed to a mechanical device like floss, Listerine is a chemotherapeutic mouthwash used in oral hygiene. Although Listerine may have certain adjunctive benefits when used in combination with regular flossing, Listerine has never been proven to be, and is not, a substitute for flossing, as Pfizer itself has repeatedly acknowledged.

12.     Many consumers do not floss or rarely floss because it is a difficult and time-consuming process.

13.     As a consequence, a large consumer market exists to be tapped. If the 87% of consumers that never or rarely floss can be persuaded to floss more regularly, sales of floss would increase dramatically.

14.     At the same time, Pfizer has recognized that there is enormous potential here for greater sales of Listerine as well. Pfizer has come to realize that if it could convince consumers who were reluctant flossers that they could obtain the benefits of flossing by rinsing with Listerine, it would be in a position to see its sales of Listerine increase dramatically.

15.     Pfizer sponsored two clinical studies involving Listerine and floss: the "Sharma Study" and the "Bauroth Study."

16.    The authors concluded that the studies provided "additional support for the use of the essential oil mouthrinse as an adjunct to mechanical oral hygiene regimens." They cautioned that "[p]rofessional recommendations to floss daily should continue to be reinforced."

17.    The Bauroth authors concluded: "[w]e do not with to suggest that the mouthrinse should be used instead of dental floss or any other interproximal cleaning device."

18.    Neither the Bauroth Study nor the Sharma Study purported to examine whether Listerine could replace floss, and neither study examined the efficacy of Listerine with respect to severe gingivitis or periodontitis or tooth decay or the removal of food debris. In addition, neither study considered the adjunctive effects of Listerine when used in addition to brushing and flossing.

19.    Pfizer acknowledged to the American Dental Association ("ADA") that "[w]e recognize that any comparison vs. flossing may send an <u>unintended</u> message to dental professionals that Listerine can replace flossing," and Pfizer assured the ADA that its advertising was "constructed" to "ensure that this does not happen."

20.    The ADA also approved the claim "New clinical studies prove that the antimicrobial action of Listerine is as effective as flossing." The claims were approved for use only with professionals "because of the potential to mislead consumers that they no longer need to floss."

21.    The ADA noted that Pfizer had agreed that it "does not wish to promote the message that consumers can stop daily flossing if they rinse twice a day with Listerine."

22.    In January 2004, Pfizer sought approval from the ADA to expand its "as effective as flossing" advertising campaign to consumers.

23.    Again Pfizer sought to assure the ADA that:

5

> We are taking appropriate, responsible and ethical measures to
> convey an unambiguous, yet creative and provocative, message
> to consumers that Listerine is not a replacement for flossing and
> that it is an adjunct to their usual mechanical oral care routine,
> which would include flossing daily.

24.     Pfizer went on to tell the ADA that, "Pfizer has no intention of telling people to

stop flossing. We never have. We never will." In its supporting materials, Pfizer acknowledged

the standard for maintaining optimal interproximal gingival health, but it contended that

"chemotherapeutic agents may also serve a useful role especially in those patients whose

brushing and flossing are inadequate to prevent and control gingivitis."

25.     Prior to the launch of the consumer campaign, the ADA expressed concern about

"the concept" that "if consumers don't have the time to floss, they can use Listerine instead."

26.     Despite the universal recognition and substantial clinical data proving that

flossing is necessary for good oral health care, Pfizer began disseminating and continues to run

Listerine advertising that effectively communicates that Listerine is a complete replacement for

and provides all the benefits of flossing.

27.     On or about June 2004, Pfizer launched an advertising campaign in the United

States effectively telling consumers that Listerine can be used as a replacement for flossing _a

claim that Pfizer itself has acknowledged is not true. The centerpiece of that campaign was a

splashy comparative television commercial referred to as the "Big Bang" spot containing false

and misleading claims about the efficacy of Listerine as compared to dental floss.

28.     The Big Bang commercial began with a screen filled with a swirl of Listerine,

designed presumably to look like a string of floss, and a full-screen declaration, along with a

voiceover, stating that "Listerine's as effective as floss." The only qualifier to this statement was

a tiny disclaimer on the bottom reading, "Against plaque and gingivitis between teeth." The

voiceover then stated, "Clinical studies prove it" while the screen showed both floss and a stream of Listerine.

29.    The commercial then cut to a person using the Listerine mouthwash with a voiceover stating "So even if you don't floss like you should, now you can get its healthy benefits from simply rinsing." The commercial did not qualify in any way this broad and misleading statement that simply rinsing with Listerine can give you all of the healthy benefits of flossing.

30.    Showing Listerine weaving in between teeth like a piece of floss, the commercial continued by again stating that Listerine is as effective as floss, while in tiny print at the bottom of the screen appeared the contradictory statement, "Floss daily." The commercial then closed with an appeal to consumers to rinse rather than floss because of rinsing's ease and efficacy.

31.    Pfizer's Listerine advertising contained false and misleading claims because it conveyed to consumers that rinsing is comparable to flossing in every respect and, further, that flossing is not necessary. Further, Pfizer's advertising claims were not supported by the clinical studies upon which Pfizer relies.

32.    The launch generated immediate concern among dental professionals.

33.    In part because of the concerns raised by the dental community, Pfizer made changes to the advertisements, but Pfizer continued to send the message that Listerine was "as effective as floss."

34.    On August 13, 2004, Pfizer aired a new Big Bang spot comparing Listerine to flossing. This commercial communicated the same false and misleading messages that were conveyed in Pfizer's earlier commercial.

7

35.    Again, the commercial began with a swirl of Listerine and the full-screen

declaration that "Listerine's as effective as floss" with the same tiny print disclaimer at the

bottom of the screen stating, "Against plaque and gingivitis between teeth." This was followed

by a voiceover to the same effect, also stating that "Clinical studies prove it."

36.    While showing a container of dental floss and then a swirl of Listerine designed to

look like a string of floss, the voiceover continued on to say, "Of course, you should floss but if

you don't floss like you should, you can get flosses' [sic] plaque-fighting benefits by rinsing."

The commercial then showed Listerine weaving in between teeth like a piece of floss

accompanied by a voiceover, "Listerine kills the germs that cause plaque, even between teeth."

37.    In tiny print at the bottom of the screen, Pfizer added a contradictory statement

which read, "Not a replacement for floss. Ask your dentist."

38.    Finally, the commercial concluded, like its predecessor, with an appeal to

consumers to rinse rather than floss because of rinsing's ease and supposed efficacy.

Emblazoned across the screen yet again was the phrase "Listerine's as effective as floss" with

the qualifier in tiny print at the bottom of the screen, "Against plaque and gingivitis between

teeth." Finally, in large print, the screen read "As easy as rinsing. As effective as flossing,"

accompanied by a voiceover with the same words.

39.    Pfizer's revised commercial continued to communicate that consumers do not

need to floss to obtain flossing benefits because Listerine is just as effective as floss.

40.    Pfizer also published print ads, used a hang tag and shoulder labels on its bottles

of Listerine, and has also featured the "as effective as flossing" claim on its website for Listerine.

8

41.    On or about September 15, 2004, Pfizer began airing another new Big Bang television commercial. This commercial continued to communicate a message to consumers that Listerine is a substitute for floss in all respects.

42.    The new commercial opens the same way as the prior ones, with a swirl of Listerine and the full-screen declaration that "Listerine's as effective as floss." Again, Pfizer attaches a tiny print disclaimer at the bottom of the screen stating, "Against plaque and gingivitis between teeth" followed by a voiceover to the same effect and the statement that "Clinical studies prove it."

43.    The commercial then shows a container of dental floss and a swirl of Listerine designed to look like a string of floss, accompanied by the revised voiceover, "There's no replacement for flossing but if you don't floss like you should, you can get its plaque-fighting benefits by rinsing." The commercial next shows Listerine weaving in between teeth like a piece of floss with a voiceover stating, "Listerine kills the germs that cause plaque, even between teeth, so it's as effective as floss against plaque and gingivitis" and a small-print super, "Ask your dental professional."

44.    Finally, the commercial concludes, like its predecessors, by encouraging consumers to rinse rather than floss because of rinsing's ease and supposed efficacy. Again, the phrase "Listerine's as effective as floss" is prominently displayed in the screen with a small-print disclaimer at the bottom of the screen, "Against plaque and gingivitis between teeth." Finally, in large print the screen reads "As easy as rinsing. As effective as flossing, against plaque and gingivitis," accompanied by a voiceover with the same words.

45.     Like the prior incarnations of the Big Bang spot, Pfizer's latest commercial communicates that consumers do not need to floss to obtain flossing benefits because Listerine is just as effective as floss. This message of overall efficacy is patently false.

46.     In addition to the Big Bang television commercial, Pfizer began running print advertisements touting the same false and misleading message -namely, that Listerine is a complete replacement for flossing.  For example, it has run a full page coupon insert that shows a scale -equally balanced- with floss on one side and Listerine on the other.  Printed above the scale is the statement, "Only Listerine Antiseptic is clinically proven to be As Effective as Floss" with the remainder of the sentence – "at Reducing Plaque and Gingivitis between the Teeth" – in smaller print.  Similarly, Pfizer has attached bottle hangers with this advertisement on Listerine bottles.

47.     Pfizer has also placed prominent red stickers on the Listerine bottles that say "Now Clinically Proven, As Effective As Floss" with a small print disclaimer "Against Plaque and Gingivitis Between the Teeth."

48.     Listerine also advertised in a CVS drug store circular with a picture of Listerine bottles and the unqualified and prominent statement "As Good As Flossing."

49.     Pfizer's Listerine website repeatedly makes the same claims regarding Listerine's efficacy as compared to floss that are made in the Big Bang television commercial and even contains the commercial itself in case consumers "haven't seen in on the air." *See* http://www.listerine.com.

50.     In December 2004, Pfizer began running a fourth version of the Big Bang.  It is substantially similar to the third version, with the exception that it makes reference to Pfizer's new Advanced Listerine.

51.     In September and October 2004, a consumer research firm, Bruno and Ridgway Research Associates, conducted three consumer surveys in mall and shopping centers in ten different locations throughout the United States. The first was intended to determine the message that consumers took away from the Big Bang commercial. The second sought to determine the message that consumers took away from the first of the three shoulder labels. The third sought to measure the pre-existing beliefs of consumers regarding the use of Listerine and floss.

52.     The first survey found that 50% of the respondents took away the message that "you can replace floss with Listerine."

53.     The second survey found that 45% of the consumers took away the message that Listerine could be used instead of floss.

54.     The third survey, a control survey, consumers were asked their "pre-existing beliefs" regarding Listerine and floss; the intent was to determine the number of people who did not recall seeing the commercial but who still believed that Listerine could be used instead of floss. A minority of those surveyed did not recall seeing Big Bang, and of those 19% stated the opinion that Listerine could be used in place of floss.

55.     The surveyors then took the three surveys together, subtracted the 19% figure from the 50% and 45% figures, respectively, and concluded that 31% of those who saw the commercial and 26% of those who viewed the shoulder label took away a replacement message.

56.     Pfizer commissioned its own survey, which was conducted by Dr. Seymour Lieberman.

57.     Dr. Lieberman concluded that the Big Bang had "no negative impact" on consumers' expectations with respect to the purchase or use of floss.

58.     Dr. Lieberman also sought to determine whether the commercial "created the idea that Listerine provides all of the benefits of floss without reservation." He did so by showing half the respondents the Big Bang commercial and half another Pfizer commercial for Listerine called "Simple Solution." The respondents were then asked a series of questions, and the stated intent was to use Simple Solution as a control to determine the number of people who took a replacement message away from Big Bang. According to Dr. Lieberman, Simple Solution was a "perfect control" because it did not "either implicitly or explicitly [make] the claim that Listerine is as effective as floss."

59.     Dr. Lieberman concluded that for both Big Bang and Simple Solution, the percentage of respondents expecting to buy mouthwash increased significantly after seeing the respective commercial. Dr. Lieberman also found that for both commercials, there were significant increases - - 23% for Big Bang and 19% for Simple Solutions - - in the number of people who believed that Listerine provides <u>all</u> the benefits of flossing.

60.     Dr. Lieberman also found that after they saw the commercials, 49% of those who saw Big Bang and 45% of those who saw Simple Solution believed that "Listerine provides <u>all</u> of the benefits of flossing.

61.     In response to an earlier version of Big Bang, 27% of the respondents took away the message that Listerine "can substitute brushing/flossing."

62.     In sum, Pfizer's Listerine advertising is based upon data from two studies, sponsored by Pfizer, purportedly designed to compare the efficacy of essential oil antiseptic mouthrinse versus dental floss in controlling plaque and mild to moderate interproximal (between the teeth) gingivitis. These six-month unsupervised studies followed subjects with mild to moderate gingivitis and purportedly found that rinsing twice daily as directed with an essential

12

oil antiseptic mouthrinse was at least as effective as flossing daily, but solely in reducing interproximal gingivitis and plaque. Pfizer's clinical studies were limited and did not examine the mouthrinse's efficacy with respect to tooth decay, periodontitis, removal of food debris, severe gingivitis, or any oral conditions other than interproximal gingivitis and plaque.

63.    Recognizing the studies' limitations and the undisputed fact that rinsing could not replace flossing, Pfizer's clinical studies concluded only that rinsing was an effective "adjunct" to a brushing and flossing regimen. In reports of the studies, Pfizer appropriately recognized that "[p]rofessional recommendations to floss daily should continue to be reinforced" and that Pfizer does "not wish to suggest that the mouthrinse should be used instead of dental floss or any other interproximal cleaning device."

64.    Indeed, in a report to dental professionals announcing that Pfizer was commencing a consumer advertising campaign based upon these studies, Pfizer acknowledged that the studies "were not designed to suggest that Listerine is a replacement for floss." Pfizer further promised dental professionals, "[r]est assured, as with the professional campaign, we will promote responsibly and emphasize to patients that rinsing with Listerine cannot take the place of flossing." Pfizer failed to adhere to this pledge.

65.    Thus Pfizer, by engaging in the deceptive and misleading marketing campaign described above, continued to sell millions of dollars worth of Listerine which it would not have sold had it disclosed the truth about Listerine to consumers.

66.    Sales of automatic and power flossers are down.

67.    It is not surprising that sales of string floss have not dropped while sales of automatic and power flossers have. The string floss category is comprised predominantly of "people who are more loyal flossers," who would be less likely to replace floss with Listerine.

13

Consumers who use automatic and power flossers, in contrast, are predominantly "folks who don't like to floss," "who would love to have a replacement for flossing." These consumers "would be more susceptible to a message like the Listerine advertising campaign."

68.    Plaintiff and class members have been substantially damaged by, and Pfizer has substantially profited from, Pfizer's unlawful conduct.

<u>COUNT I- UNJUST ENRICHMENT</u>

69.    Plaintiff re-alleges paragraphs 1 though 68 as if fully set forth herein.

70.    Pfizer received certain monies in response to its inaccurate, misleading, and deceptive marketing of Listerine which are excessive and unreasonable.

71.    As a result, Plaintiff and the Class members have conferred a benefit on Pfizer, and Pfizer has knowledge of this benefit and has voluntarily accepted and retained the benefit conferred on it.

72.    Sales of Listerine have increased at least 10% since Pfizer started its "as effective as floss" campaign.

73.    Pfizer will be unjustly enriched if it is allowed to retain such funds, and the Class is entitled to disgorgement of the amount by which Pfizer has been unjustly enriched.

**WHEREFORE**, Plaintiff and class members demand an award against Pfizer for the amount equal to the amount by which Pfizer has been unjustly enriched, and such other relief as this Court deems just and proper.

<u>COUNT II – VIOLATIONS OF G.L. Chapter 93A, Section 2</u>

74.    Plaintiff re-alleges paragraphs 1 – 73 as if fully set forth herein.

75.    At all times relevant to this complaint, section 2(a) of the Massachusetts Consumer Protection Act, G.L. c. 93A, provided: "Unfair methods of competition and unfair or deceptive

acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

76.    At all times relevant to this complaint the following regulations, promulgated by

the Attorney General pursuant to G.L. c. 93A, section 2(c), were in full force and effect:

> 940 CMR 6.04 (1): Misleading Representations. It is an unfair or
> deceptive act for a seller to make any material representation of
> fact in an advertisement if the seller knows or should know that
> the material representation is false or misleading or has the tendency
> or capacity to be misleading . . .

> 940 CMR 6.04(2):  Disclosure of Material Representations. It is an
> unfair or deceptive act for a seller to fail to clearly and conspicuously
> disclosure in any advertisement any material representation, the omission
> of which would have the tendency or capacity to mislead reasonable
> buyers or prospective buyers.

77.    Purchasers of Listerine, including Plaintiff, are consumers within the meaning of

the Act.  For purposes of this Count, the class consists of all Massachusetts residents who

purchased Listerine from June 1, 2004 – present.

78.    Defendant's false, deceptive, and misleading acts and omissions with respect to the

advertising and marketing of Listerine, as more specifically set forth herein, violated the Code of

Massachusetts Regulations and were unfair and deceptive in violation of G.L. c. 93A, section 2.

79.    Defendant knew that its advertisements and marketing scheme was deceptive,

misleading, and unfair and intended for its customers to be deceived and harmed thereby.

80.    Defendant intended to profit, and did actually profit, from said knowing and willful

misconduct.

81.    On January 13, 2005, Plaintiff – through counsel – forwarded a demand for relief to

Defendant pursuant to G.L. c. 93A, section 9, which demand described the unfair and deceptive

practices complained of and the terms of a proposed resolution of Plaintiff's claims. Said

demand for relief was sent via certified mail, return receipt requested, and was duly received by

Defendant. A true copy of said demand for relief is appended hereto as Exhibit A.

82. In a letter dated February 18, 2005, Defendant responded to Plaintiff's demand for relief. A true copy of said letter is appended hereto as Exhibit B.

83. Defendant's response to Plaintiff's demand for relief was not reasonable. Moreover, Defendant's failure to grant reasonable relief upon Plaintiff's demand was in bad faith with knowledge or reason to know that its conduct violated G.L. c. 93A, section 2, and damaged Plaintiff and class members as asserted by Plaintiff.

WHEREFORE, Plaintiff and the Class pray for the following relief:

A.  Judgment awarding monetary damages in favor of Plaintiff and the Class against Defendant, in the amount of the greater of: (i) all monies paid to purchase Listerine during the class period; (ii) all monies paid to purchase Listerine during the class period less the amount which would have paid had Listerine been advertised and represented accurately and completely; or (iii) $25.00 for each unit of Listerine purchased during the class period; plus interest;

B.  Judgment doubling or trebling said award pursuant to G.L. c. 93A, section 9;

C.  An award of reasonable attorneys' fees, costs and expenses; and

D.  Such further relief as this Court deems just and proper.

Plaintiff and the Class members demand a trial by jury.

Respectfully submitted,



Kenneth D. Quat
BBO 408640
9 Damonmill Square, Suite 4A-4
Concord MA 01742
978-369-0848

Of Counsel:

Lance A. Harke, P.A.
HARKE & CLASBY LLP
155 South Miami Ave., Suite 600
Miami, Florida 33130
 (305) 536-8220

Ben Barnow
BARNOW AND ASSOCIATES, P.C.
One North LaSalle Street, Suite 4600
Chicago, Illinois  60602
312-621-2000

# KENNETH D. QUAT
*Attorney at Law*
9 Damonmill Square, Suite 4A-4
Concord MA 01742

Phone: 978-369-0848                                                    ken@quatlaw.com
Fax: 978-371-2296

January 13, 2005

Via Certified Mail --
Return Receipt Requested

Pfizer, Inc.
235 East 42nd Street
New York NY 10017

RE:  Sherry Kwaak, Individually And On Behalf of All Similarly Situated
Individuals -- Demand for Relief Pursuant to M.G.L. c. 93A, Section 9

Dear Sir/Madam:

This office represents Sherry Kwaak, individually and on behalf of persons similarly situated, with respect to claims which she and other Massachusetts consumers have against Pfizer arising out of their purchases of Listerine® Antiseptic Mouthrinse ("Listerine"). This letter constitutes a demand for relief pursuant to Section 9 of Massachusetts General Laws Chapter 93A.

It is alleged that your company committed unfair and/or deceptive acts or practices in connection with the marketing, promoting, distributing, manufacturing, and selling of "Listerine." The specific acts and practices complained of are set forth in detail in the 15-page class action complaint enclosed herewith, which complaint is fully incorporated herein. Said complaint is being filed with the Middlesex County Superior Court concurrently with the mailing of this demand letter. Ms. Kwaak and similarly situated Massachusetts residents assert that the specific acts and omissions described in the complaint violate Section 2 of G.L. c. 93A, which prohibits unfair and deceptive trade practices, as well as applicable Massachusetts regulations (940 C.M.R. 3.01 *et seq;* 940 C.M.R. 6.01 *et seq.*).

It is alleged that your company engaged in said unfair and/or deceptive practices to avoid the lost sales and/or profits which would result if the public were made aware of the true facts surrounding "Listerine's" efficacy, and/or to avoid the expense associated with proper and full disclosure. It is believed that your company realized substantial profits, perhaps in the vicinity of tens of millions of dollars, as a result of deceiving and harming Massachusetts consumers as set forth in the complaint.

Pfizer, Inc.
January 13, 2005
Page 2

Practicing good dental hygiene is extremely important to Ms. Kwaak. From June 1, 2004 through the present she was aware of the claims made by Pfizer with regard to "Listerine." As a result, she believed that if she used "Listerine" she would not have to floss as regularly or as diligently as good dental hygiene would otherwise dictate, and acted accordingly. Having now learned that Pfizer's claims regarding "Listerine" were inaccurate, Ms. Kwaak realizes that she has been harmed and is determined to seek redress for herself and others who have been similarly harmed.

This demand for relief pursuant to Section 9 of G.L. c. 93A is made on behalf of Ms. Kwaak and the class of Massachusetts persons defined in the complaint.[1] The demand for relief is the greater of: (i) the return of all monies paid by consumers to purchase "Listerine" in the Commonwealth of Massachusetts since June 1, 2004; (ii) the difference between the actual value of "Listerine" at the time of said purchases and the value it would have had if advertised and represented accurately; and (iii) statutory damages in the amount of $25.00 per each unit of "Listerine" sold during said period. Under the statute, you have thirty (30) days from receipt of this letter to make a reasonable written tender of settlement. Such tender should include a reasonable time frame for arriving at a mutually acceptable settlement agreement, as well as for seeking court approval of the proposed settlement. Should you fail to make a reasonable written tender in a timely fashion, and Ms. Kwaak establishes in court that your conduct violated G.L. c. 93A, section 2, she and class members will be entitled to recover their actual damages or $25.00 for each violation, whichever is greater, plus their costs and reasonable attorney's fees. In the event that Ms. Kwaak establishes further that your conduct was willful or knowing in nature, or that your failure to make a reasonable tender of settlement was in bad faith with knowledge or reason to know that your conduct violated G.L. c. 93A, section 2, she and class members must be awarded at least two, but no more than three, times their actual damages or $25.00 per violation, whichever is greater, plus their costs and reasonable attorney's fees.

I look forward to hearing from you or your attorney within thirty (30) days.

Very Sincerely,

Kenneth D. Quat

Encl. (complaint)
Cc: S. Kwaak

---

[1] The class definition is: "All individuals who purchased Listerine for consumption and not resale in the Commonwealth of Massachusetts after June 1, 2004 up to and including the present. Excluded from this Class are employees, officers, and directors of Pfizer."

# KAYE SCHOLER LLP

Thomas A. Smart
212 836-8761
Fax 212 836-7154
tsmart@kayescholer.com

425 Park Avenue
New York, New York 10022-3598
212 836-8000
Fax 212 836-8689
www.kayescholer.com

February 18, 2005

***VIA FACSIMILE AND REGULAR MAIL***

Kenneth D. Quat, Esq.
9 Damonmill Square
Suite 4A-4
Concord, Massachusetts 01742          ***FOR SETTLEMENT PURPOSES ONLY***

Re:    Chapter 93A Demand for Relief

Dear Mr. Quat:

We represent Pfizer Inc. ("Pfizer"). I am writing in response to your demand for relief dated January 13, 2005, which alleges that Pfizer violated Section 2 of G.L. c. 93A ("Chapter 93A"), and purports to assert claims on behalf of Sherry Kwaak and a class of individuals. This letter serves as Pfizer's timely response to your demand in accordance with G.L. c. 93A § 9(3). For the reasons stated below, Pfizer rejects your demand for relief. Please be advised that none of the statements contained herein shall be construed as an admission of fact and that this response in no way limits Pfizer's right to raise additional defenses to any claims you may make under Chapter 93A or otherwise. In particular, by responding to your letter Pfizer does not waive its right to argue that your demand is inadequate as a matter of law.

Pfizer denies that its advertising for Listerine® Antiseptic mouthrinse ("Listerine") violated Chapter 93A or any other laws. Moreover, Pfizer denies that there is an identifiable class of allegedly dissatisfied Listerine purchasers or that class action treatment is appropriate. In addition, even assuming that your letter adequately alleged a violation of Chapter 93A – which, to repeat, it does not – your demand remains insufficient as a matter of law. That is because the letter does not permit Pfizer to ascertain whether plaintiff or the class members suffered actual injury or the amount of damages you seek on behalf of Ms. Kwaak and the alleged class. We have no way of knowing or determining, for example, how many bottles of Listerine Ms. Kwaak purchased during the relevant time period, let alone the number of bottles purchased by the alleged class members; what prices were paid for the purchases by plaintiff and the alleged members of the class (and the retail prices of Listerine vary from store to store); what benefits she or any alleged member of the class received from the Listerine purchases; whether the alleged members of the class saw the alleged false statement and were influenced by it; whether

31023130.WPD

KAYE SCHOLER LLP

Kenneth D. Quat, Esq.                    2                    February 18, 2005

the plaintiff or the alleged class members, if they saw the alleged false statement and were influenced by it, continued to floss or not; and whether they continued to purchase Listerine after Listerine stopped using the alleged false statement in its ads.  These are just some of the many facts that your letter does not address but which are pertinent to any analysis of any alleged injury and damages to plaintiff and any alleged member of the putative class.  *See Fredericks v. Rosenblatt*, 40 Mass. App. Ct. 713, 716 (1996) (amount of damages claimed in demand letter must be "reasonably ascertainable"); *Thorpe v. Mutual of Omaha Ins. Co.*, 984 F.2d 541, 544 (1st Cir. 1993) (Chapter 93A demand letter was insufficient when injuries were not specifically identified and no damage figure was provided).

Notwithstanding the legal insuffiency of plaintiff's claim, Pfizer, solely for purposes of settlement, would be willing to refund Ms. Kwaak, upon proof of purchase, the amount of money she paid to purchase Listerine after June 15, 2004 and through January 10, 2005.

Very truly yours,

Thomas A. Smart

cc:  Lisa K. Brenner, Esq.
     William Cowan, Esq.

31023130.WPD

**Commonwealth of Massachusetts**
**MIDDLESEX SUPERIOR COURT**
**Case Summary**
**Civil Docket**

# MICV2005-00122
## Kwaak, Indiv. & on behalf herself & all others similarly v Pfizer, Inc

| | | | | | |
|---|---|---|---|---|---|
| **File Date** | 01/13/2005 | **Status** | Disposed: transferred to other court (dtrans) | | |
| **Status Date** | 03/28/2005 | **Session** | D - Cv D (7A Cambridge) | | |
| **Origin** | 1 | **Case Type** | B99 - Misc tort | | |
| **Lead Case** | | **Track** | F | | |

| | | | | | |
|---|---|---|---|---|---|
| **Service** | 04/13/2005 | **Answer** | 06/12/2005 | **Rule12/19/20** | 06/12/2005 |
| **Rule 15** | 06/12/2005 | **Discovery** | 11/09/2005 | **Rule 56** | 12/09/2005 |
| **Final PTC** | 01/08/2006 | **Disposition** | 03/09/2006 | **Jury Trial** | Yes |

### PARTIES

**Plaintiff**
Sherry  Kwaak, Indiv. & on behalf herself & all
others similarly
Active 01/13/2005

**Private Counsel 408640**
Kenneth D Quat
9 Damonmill Square, Suite 4A-4
Concord, MA 01742
Phone: 978-369-0848
Fax: 978-371-2296
Active 01/13/2005 Notify

**Defendant**
Pfizer, Inc
235 East 42nd Street
New York, NY 10017
Service pending 01/13/2005

**Private Counsel 566940**
William M Cowan
Mintz Levin Cohn Ferris Glovsky & Popeo
PC
1 Financial Center
Boston, MA 02111
Phone: 617-348-3003
Fax: 617-542-2241
Active 03/25/2005 Notify

**Private Counsel 654236**
Dora Kripapuri
Mintz Levin Cohn Ferris Glovsky & Popeo
PC
1 Financial Center
Boston, MA 02111
Phone: 617-348-1763
Fax: 617-542-2241
Active 03/28/2005 Notify

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 01/13/2005 | 1.0 | Complaint & civil action cover sheet filed |
| 01/13/2005 | | Origin 1, Type B99, Track F. |
| 03/02/2005 | 2.0 | Amended complaint & Jury Claim |
| 03/25/2005 | 3.0 | Assented-to MOTION to Extend Time to Move, Answer or Otherwise Respond to First Amended Complaint and Jury Claim to and including April 29, 2005. |
| 03/28/2005 | 4.0 | Case REMOVED this date to US District Court of Massachusetts  by deft Pfizer, Inc |
| 03/28/2005 | | ABOVE ACTION THIS DAY REMOVED TO US DISTRICT COURT |