UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SHERRY KWAAK, an individual, on behalf of herself and all others similarly situated,

Plaintiffs,

v.

PFIZER, INC, a Delaware Corporation,

Defendant.

Civil Action No. 05-CV-10591-NMG

**DEFENDANT PFIZER'S NOTICE OF**
**ADDITIONAL AUTHORITY REGARDING REMOVAL**

On March 25, 2005, defendant Pfizer Inc. ("Pfizer") removed the instant case ("*Kwaak*") and *Natale v. Pfizer Inc*., Civil Action No. 05-CV-10590-WGY, a related case, to this Court from Middlesex County Superior Court under the Class Action Fairness Act, P.L. 109-2 ("CAFA"). *Kwaak* was also removed on the ground that plaintiff's demand for disgorgement of Pfizer's profits satisfies the minimum amount in controversy requirement of 28 U.S.C. § 1332. Simultaneously with the filing of this Notice, Pfizer is filing a motion to reassign *Kwaak* to Chief Judge Young, before whom *Natale* is pending.

In this Notice (which assumes familiarity with Pfizer's notices of removal in *Kwaak* and *Natale*), Pfizer brings to the Court's attention (1) two recent court rulings from other circuits that remanded actions that Pfizer had removed from state courts under CAFA, *Hankins v. Pfizer Inc*., CV 05-1797 ABC (C. D. Cal. March 25, 2005) (Exhibit A); *Smith v. Pfizer Inc*., 05-cv-0112-MJR (S.D. Ill. March 24, 2005) (Exhibit B); (2) the decision in *Lott v. Pfizer Inc*., 05-cv-0230-MJR (S.D. Ill. Apr. 7, 2005) (Exhibit C), in which the court held, relying on his own

decision in *Smith*, that CAFA did not support Pfizer's removal; and (3) the now published opinion of the Tenth Circuit in *Pritchett v. Office Depot, Inc.*, 2005 WL 827158 (10th Cir. Apr. 11, 2005) (Exhibit D), which Pfizer referred to in its notices of removal (*Kwaak* Notice of Removal ¶¶ 21-23; *Natale* Notice of Removal ¶¶ 22-24). The decisions are distinguishable and, we submit, incorrectly decided.

In *Hankins*, as the court emphasized, the putative class action was filed "well *before* the enactment of CAFA." (Ex. A p. 2). In remanding the case, the court opined that CAFA applied only to actions that were commenced in state court before the date of enactment of CAFA. Without addressing any of the other cases Pfizer cited in its notices of removal in *Natale* and *Kwaak*,[1] the court in *Hankins* distinguished *Hunt v. Transport Indem. Ins. Co.*, 1990 WL 192483 (D. Hawaii July 30, 1990), "because of the Ninth Circuit's clear preference for construction of removal statutes against removal." (Ex. A p. 2). The court went on to say that it "would construe CAFA against removal such that the date of filing in state court controls, given the strong presumption against removal." (*Id*. at 2). This was clear error since Congress' intent in enacting CAFA was "to *encourage* the exercise of federal jurisdiction over class actions." S. Rep. 108-123 at 45 (emphasis added). Thus, Congress' intent here is directly contrary to its intent in enacting the statute in *Hunt*, which *restricted* federal jurisdiction by increasing the minimum amount in controversy necessary for federal jurisdiction.

The court's decision in *Smith* (and *Lott* and *Pritchett*) suffers from similar defects. As in *Hankins*, the court, in concluding – correctly – that CAFA was "never intended to apply

---

1 *Cedillo v. Valcar Enters. & Darling Del. Co.*, 773 F. Supp. 932 (N.D. Tex. 1991); *Abernathy v. Consol. Cab Co.*, 169 F. Supp. 831 (D. Kan. 1959); *Casteel v. Great Southern Trucking Co.*, 167 F. Supp. 435 (E.D. Tenn. 1958); *Lorraine Motors, Inc. v. Aetna Cas. & Sur. Co.*, 166 F. Supp. 319 (E.D.N.Y. 1958). *Accord*, *Gasper v. Nat'l Tea Co.*, 1990 U.S. Dist. LEXIS 639, *2-3 (E.D. La. Jan.25, 1990).

retroactively" (Ex. B p. 10), confused retroactivity with CAFA's provision that CAFA applies to actions "commenced on or after the date of enactment of this Act." (CAFA § 9). CAFA has two separate requirements for timely removal: (1) that the action was filed in federal court – *i.e.*, "commenced" – "on or after the date of enactment" of CAFA and (2) that the action was removed within thirty days of service of the complaint, as required by 28 U.S.C. § 1446(b). In conflating the meaning of "commenced" with the thirty day requirement of § 1446(b), the court in *Smith* (and *Lott* and *Pritchett*) committed clear legal error. Removal of actions after enactment of CAFA, but within thirty days of service of the complaint, is a *prospective* application of CAFA to actions whose time for removal had not yet expired as of the effective date of CAFA.

Moreover, the courts in *Hankins, Smith, Lott* and *Pritchett* ignored the fact that "a clear majority of courts held that a court must look to the date of removal, not the date that the plaintiff filed his original petition, to determine the requisite jurisdictional amount." *Lindsey v. Meisenheimer*, 1997 U.S. Dist. LEXIS 17784, *3 (D. Kan. Sept. 24, 1997). In addition, each of the courts ignored the Commentary in the United States Code Annotated to the 1988 amendment to 28 U.S.C. § 1332, which raised the jurisdictional minimum to $50,000. The Commentary explicitly states – citing *Lorraine Motors, Inc. v. Aetna Cas. & Sur. Co.,* 166 F. Supp. 319 (E.D.N.Y. 1958) – that the "sounder" view is that "the moment that counts in removal situations is the moment of removal to federal court, not commencement in state court." It is a black letter rule of statutory construction that "Congress is presumed to be aware of . . . judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Lorillard v. Pons*, 434 U.S. 575, 580 (1978). By a parity of reasoning, it must be presumed that Congress was aware of the fact that a clear majority of courts had interpreted "commenced" with respect to several amendments of jurisdictional statutes to mean the date the action was com-

menced in federal court upon the filing of the notice of removal. If Congress had meant for "commenced" to mean something different in CAFA, it would have said so.

That the majority of courts have correctly interpreted Congress' intent that the term "commenced" in jurisdictional statutes means the date the action is commenced in federal court rather than in state court is confirmed by the fact that this interpretation effectuates Congress' intent regardless of whether Congress is amending the Judicial Code to narrow or expand jurisdiction – a point ignored by the courts in *Hankins, Smith, Lott* and *Pritchett*. Thus, when – as in *Lorraine Motors, Abernathy*, *Casteel*, *Hunt* and *Gasper* – Congress enacts a statute *narrowing* federal jurisdiction, determining the right to remove as of the time the action is commenced in federal court through removal would result in *fewer* cases being eligible for removal to federal court, just as Congress intended. Similarly, when – as in *Cedillo* (interpreting "commencement" as applied to the expansion of jurisdiction under 28 U.S.C. § 1367) and CAFA – Congress enacts a statute *expanding* federal jurisdiction, determining the right to remove as of the time the action is commenced in federal court through removal would result in *more* cases being eligible for removal to federal court, just as Congress intended. By contrast, construing the term "commenced" for removed cases to refer to the date of filing in state court would result in *more* cases being eligible for removal when Congress *limits* federal jurisdiction, and *fewer* cases being eligible for removal when Congress *expands* federal jurisdiction. Congress could not have intended such a paradoxical result.[2]

---

[2] For example, if "commenced" were interpreted to mean the date of filing in state court, then a case that was filed in state court before enactment of a statute increasing the amount in controversy could be removed after enactment because, when it was filed in state court, it satisfied the then-existing amount-in-controversy requirement, even though on the date of removal the action did not satisfy the newly increased amount in controversy. This would be directly contrary to Congress' intent to narrow federal jurisdiction.

(continued...)

Here, Pfizer *timely* removed this action from state court within 30 days of service of the complaint, as required by 28 U.S.C. § 1446(b), and it did so after enactment of CAFA, as required by Section 9 of the Act. Accordingly, this Court has subject matter jurisdiction over *Kwaak* and *Natale* under CAFA.[3]

Finally, regardless of whether the Class Action Fairness Act applies to *Kwaak*, we note that, as explained in Pfizer's Notice of Removal (¶¶ 25-32), *Kwaak* is removable on the separate and independent ground that this Court has jurisdiction pursuant to 28 U.S.C. § 1332 in that: (1) there is complete diversity of citizenship between the named plaintiff and Pfizer, the

---

By the same token, when Congress expanded federal jurisdiction by lowering jurisdictional requirements in the Supplemental Jurisdiction statute (28 U.S.C. § 1367), if "commenced" were interpreted to mean the date of filing in state court, then the action could not be removed then even though the case satisfied the newly enacted lower jurisdictional requirements. As the court in *Cedillo* held, interpreting "commenced" in this manner would be contrary to Congress' intent to expand federal jurisdiction. 773 F. Supp. at 939.

3 The Court's concern in *Pritchett* that "[d]efendant's argument, if accepted, could have serious consequences for both the federal judiciary and our colleagues on the state bench" is inapplicable here because in *Pritchett* the defendant argued that, regardless of when the complaint was served, a defendant could remove a class action under CAFA – even where, as in *Pritchett*, the case had been pending for over *two years* and *a class had been certified over a half year earlier*. 2005 WL 827158, at *4. Here, Pfizer is arguing – consistent with the requirement of 28 U.S.C. § 1446(b) and the majority of courts that have addressed the issue in connection with prior statutory amendments permitting removal of actions "commenced" after the effective date of the amendment – that CAFA permits the removal of *only* those actions that are removed to (and hence commenced in) federal court (i) after the effective date of CAFA *and* (ii) within thirty days of service of the complaint. This is a very narrow group of cases whose removal will not have the dire consequences that the *Pritchett* court predicted if all actions, regardless of when the complaint was served, were permitted to be removed under CAFA.

only defendant; and (2) plaintiff's request for relief in the form of disgorgement among all class members is a "common and undivided interest" in excess of $75,000, exclusive of interest and costs.

Respectfully submitted,

PFIZER INC.
By its attorneys,

/s/ William M. Cowan
William M. Cowan, Esq., BBO # 566940
Dora Kripapuri, Esq., BBO # 654236
Mintz, Levin, Cohn, Ferris,
Glovsky and Popeo, P.C.
One Financial Center
Boston, MA 02111
(617) 542-6000

Of counsel:

Thomas A. Smart
Richard A. De Sevo
Kaye Scholer LLP
425 Park Avenue
New York, NY 10022
(212) 836-8000

Dated: April 12, 2005

LIT 1515111v1

Priority ✓
Send ✓
Enter ✓
Closed ✓
JS-5/JS-6 ✓
JS-2/JS-3 ——
Scan Only ——

ENTERED
CLERK, U.S. DISTRICT COURT
MAR 29 2005
CENTRAL DISTRICT OF CALIFORNIA
BY BG DEPUTY




UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MONICA HANKINS, Plaintiff | CV 05-1797 ABC (RZx) |
| v. | ORDER REMANDING CASE TO STATE COURT |
| PFIZER, INC., et al., Defendants. | BC 327641 |

On January 24, 2005, Plaintiff filed a complaint in Los Angeles County Superior Court against Pfizer, Inc., Pharmacia & Upjohn, Inc. (a/k/a Pharamacia & Upjohn Co.), and McKesson Corp. Plaintiff's complaint alleges a single cause of action, namely, state law unfair competition. On March 11, 2005, Pfizer, Inc., Pharmacia & Upjohn, Inc. (a/k/a Pharamacia & Upjohn Co.) (together, "Removing Defendants") removed the action to this Court on the basis of diversity jurisdiction.[1]

[1] Removing Defendants do not assert that the Court has federal question jurisdiction, as Plaintiff's complaint involves a single state law claim.

7

Federal courts have jurisdiction under 28 U.S.C. § 1332(a) where an action is between citizens of different states and the amount in controversy exceeds $75,000. The removal statutes are to be strictly construed; there is an inherent "'strong presumption' against removaljurisdiction." Gaus v. Miles, 980 F.2d 564, 566 (9th Cir. 1992)(quoting St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938)). On February 18, 2005, the Class Action Fairness Act ("CAFA") was passed creating federal diversity jurisdiction where "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which . . . (A) any member of a class of plaintiffs is a citizen of a State different from any defendant . . . ." 28 U.S.C. § 1332(d)(2).

Although Plaintiff initiated this action on January 24, 2005, well before the enactment of CAFA on February 18, 2005, Removing Defendants assert that CAFA governs. In support of this argument, Removing Defendants cite Hunt v. Transport Indemnity Ins., Co., 1990 U.S. Dist. LEXIS 16555 (D. Haw. July 30, 1990) as authority that the date of commencement of an action is determined by the date an action is removed to federal court. See Notice of Removal ¶ 2.

Hunt involved the 1988 amendment to 28 U.S.C. § 1332, which raised the jurisdictional amount in controversy required for diversity from $10,000 to $50,000. The Hunt court remanded a state action seeking an amount in controversy more than $10,000, but less than $50,000. The state action was commenced before, but removed after, the effective date of the jurisdictional increase. In remanding, the Hunt court construed the date of removal as controlling because of the Ninth Circuit's clear preference for construction of removal statutes against removal.

Hunt is not controlling authority. In any event, if this Court were to adopt similar reasoning, this Court would construe CAFA against removal such that the date of filing in state court controls, given the strong presumption against removal. See Gaus, 980 F.2d at 566 (quoting St. Paul Mercury Indem. Co., 303 U.S. at 288-89).[2]

Because the Removing Defendants cannot rely on diversity conferred by CAFA, which was not enacted at the time the state action was filed, Removing Defendants must demonstrate diversity jurisdiction according to 28 U.S.C. § 1332(a). However, Removing Defendants cannot show that the amount in controversy exceeds $75,000, as Plaintiff specifically alleges that the amount in controversy is less than $75,000. See Complaint at 12-13.

Therefore, on the Court's own motion, on the basis of the lack of either federal question or diversity jurisdiction, the case is REMANDED to state court.[3]

**SO ORDERED.**

**DATED:** March 25, 2005

Audrey B. Collins

**AUDREY B. COLLINS**

**UNITED STATES DISTRICT JUDGE**

---

[2] The Court notes that CAFA specifically provides that the citizenship of class members shall be determined as of the date of filing of the complaint. See 28 U.S.C. 1332(d)(7).

[3] The Notice of Removal contained several procedural defects, including the failure of all defendants to join in the removal and Removing Defendants' failure to establish that the case was removed thirty (30) days from when the first defendant was served. However, given that the Court bases its remand on the lack of jurisdiction, these procedural defects are moot.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **MARY SMITH, individually and on behalf of similarly situated individuals,** | ) | |
| **Plaintiffs,** | ) | |
| **vs.** | ) | **Case No. 05-cv-0112-MJR** |
| **PFIZER, INC.,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM and ORDER**

**REAGAN, District Judge**:

In the Circuit Court of Madison County, Illinois, Mary Smith filed a putative class action against Pfizer, Inc., manufacturer of a prescription pain relief medication "Bextra." Pfizer timely removed the case on February 18, 2005, invoking this Court's subject matter jurisdiction under the federal diversity statute, **28 U.S.C. § 1332**. Ten days later, Judge Herndon recused, and the case randomly was reassigned to the undersigned District Judge.

Before the Court is Plaintiff Smith's fully-briefed remand motion. For the reasons described below, the Court finds that it lacks subject matter jurisdiction and grants the motion.

Smith's state court complaint, based on an Illinois consumer fraud statute, alleges that Pfizer negligently marketed Bextra, despite the fact Pfizer knew of dangerous side effects and symptoms of the drug.

Of significance is what Smith's complaint does *not* seek. She does not sue for any personal injury she or others may have sustained as a result of ingesting Bextra. Nor does she pray for injunctive relief. Rather, she seeks compensatory damages to cover the costs of medical monitoring and testing which would facilitate early detection of any injuries.

Specifically, the complaint asks for damages "sufficient to cover the costs of periodic medical examinations which are reasonably necessary to detect and enable early treatment of injuries and/or diseases caused by Bextra" (Doc. 2, p. 6). As explained further below, this aspect of the complaint plays a key role in determining the amount in controversy.

**28 U.S.C. § 1332** confers original jurisdiction over suits between citizens of different states if (a) complete diversity exists between the parties, and (b) the amount in controversy exceeds $75,000, excluding interest and costs. The party invoking federal jurisdiction bears the burden of demonstrating that all jurisdictional requirements have been satisfied. ***Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997).**

Here, complete diversity exists between the parties. The question is whether Pfizer has shown that the amount in controversy exceeds $75,000, excluding interest and costs.

For a defendant to successfully remove a class action based on diversity, at least one of the named plaintiffs must have a claim that surpasses the $75,000 jurisdictional bar. ***In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599, 607 (7th Cir. 1997), *cert. denied*, 522 U.S. 1153 (1998); *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 409 (7th Cir. 2000).** If one named plaintiff meets the jurisdictional minimum, the other named plaintiffs and class members can "piggyback" on that plaintiff's claim, via supplemental jurisdiction under **28 U.S.C. § 1367**. ***Brand Name*, 123 F.3d at 607.**

Pfizer's removal notice alleges: "it is Pfizer's good faith belief" that the amount in controversy exceeds $75,000 (Doc. 1, p. 2). Plainly, that allegation does not meet Pfizer's burden of proof as to the amount in controversy. ***See, e.g., Chase*, 110 F.3d at 427 (removing defendant must support allegations of diversity jurisdiction with "competent proof"); *America's Best***

***Inns, Inc. v. Best Inns of Abilene, L.P.*, 980 F.2d 1072, 1074 (7th Cir. 1992)(allegations based upon information and belief are insufficient to support diversity jurisdiction).**

Pfizer does offer proof to support its contention that the amount in controversy exceeds $75,000. With the removal notice, Pfizer submitted the declaration of Dennis R. Connolly, who has experience in tort-related medical monitoring programs. Connolly suggests that the medical monitoring requested by Smith in this case actually will be much more extensive than Smith anticipates and, despite the fact the class is defined to include only consumers who purchased Bextra in Illinois, the consumers to be tested – and the doctors doing the testing – would be located "throughout the country" (Doc. 1, Exh. C, p. 2).

Furthermore, Connolly predicts that the monitoring will require the establishment of a claims-handling facility. According to Connolly, the cost of "siting" that facility will include expenditures to rent space, store records, manage operations, install hardware and communication lines, purchase furnishings, staff the operations center, train the staffers, and compile and analyze the results of all medical monitoring (*Id.*, p. 3). Relying on the Connolly declaration, Pfizer maintains that the cost to set up this facility and provide medical monitoring for "hundreds of thousands" of class members easily exceeds $75,000, justifying the exercise of jurisdiction in this case.

The Court disagrees. This Circuit does recognize that, in determining the amount in controversy, the Court may consider the cost to defendant of enforcing the requested relief, as well as the value to plaintiff of obtaining that relief. ***McCarty v. Amoco Pipeline Co.*, 595 F.2d 389, 395 (7th Cir. 1989)(adopting "either viewpoint" rule under which the Court may consider the "pecuniary result to either party which the judgment would directly produce").**

But it is far from clear that the either viewpoint rule applies in a case, such as this, in which the plaintiff requests no injunctive relief and instead seeks only compensatory damages. For instance, in ***Uhl v. Thoroughbred Technology and Telecommunications, Inc*****., 309 F.3d 978, 983-84 (7th Cir. 2002)**, the United States Court of Appeals for the Seventh Circuit sharply distinguished cases in which only money damages were sought (such as Smith's case against Pfizer) from cases in which injunctive relief was sought.

The Court emphasized:

> In a case that seeks only money damages, the amount the defendant will lose is more or less the same. But in a case like this one, for injunctive relief, there may be an asymmetry. The question has thus arisen whether it is proper in determining amount in controversy to look in the alternative to the cost the defendant will incur in complying with the injunction the plaintiff seeks. In this circuit, the answer to the latter question has been yes: it is established that the jurisdictional amount should be assessed looking at either the benefit to the plaintiff or the cost to the defendant of the requested relief – the so-called "either viewpoint" rule. *See, e.g., In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599, 609 (7th Cir.1997); *McCarty v. Amoco Pipeline Co.*, 595 F.2d 389, 391- 95 (7th Cir.1979). Those cases specifically establish that the cost to a defendant of complying with an injunction sought by the plaintiff may properly be considered in determining the amount in controversy

***Uhl*** indicates that the either viewpoint assessment should be used only in cases in which the complaint includes a request for injunctive relief. ***See also Gould v. Artisoft, Inc*****., 1 F.3d 544, 548 n.4 (7th Cir. 1993)(applying either viewpoint rule to case in which the pecuniary harm to the defendant from the injunctive relief requested by the plaintiff exceeded the amount in controversy).** The instant case contains no such request.[1]

---

[1] *See also* this Court's 10-20-2003 Order in *Flynn, et al. v. General Motors Corp., et al.,* Case No. 03-cv-0486-MJR, Doc. 34, p. 4 ("Defendants cite no cases extending the 'either viewpoint' rule to complaints seeking only monetary relief.").

Additionally, even if the either viewpoint rule *does* apply (if the Court accepts Pfizer's argument that Smith's prayer for compensatory damages is really a request for injunctive relief in disguise), the Court is not persuaded that the entire cost envisioned by Pfizer is chargeable to the single named plaintiff (Smith) from whose standpoint the Court evaluates the amount in controversy. As the Seventh Circuit explained in ***Brand Name*, 123 F.3d at 609-10**:

> Whatever the form of relief sought, each plaintiff's claim must be held separate from each other plaintiff's claim from both the plaintiff's and the defendant's standpoint. The defendant in such a case is deemed to face multiple claims for injunctive relief, each of which must be separately evaluated.[2]

***Accord Del Vecchio v. Conseco, Inc.*, 230 F.3d 974, 977 -78 (7th Cir. 2000)(Even under the either viewpoint rule, each plaintiff's claim for relief must be separately evaluated. "That means, for Del Vecchio, that the amount in controversy from the defendants' point of view is the amount they risk paying him, not the amount they might have to pay the entire class.").**

The Court *does* find appeal in Pfizer's argument as to the effect of Smith's purported disclaimer of damages, but that does not support this Court's exercise of diversity jurisdiction.

Plaintiffs' counsel mistakenly believes that remand is warranted based solely on the allegations of the complaint and an accompanying affidavit of counsel. The complaint states:

> Plaintiff stipulates that she will not seek and will neither demand nor accept on behalf of any Class Member any recovery in excess of $75,000 exclusive of interest and costs.

Doc. 2, p. 2.

---

[2] Nor does this case fit into the narrow exceptions to the anti-aggregation rule recognized in ***Snyder v. Harris*, 394 U.S. 332 (1969)** and its progeny – the "common fund exception" which covers situations in which there is a single *res* at issue (like an estate), and the recovery is a "unitary whole." ***See Del Vecchio*, 230 F.3d at 977-78.**

Simultaneously filed in state court with the complaint is an affidavit of Plaintiffs' counsel that "the total damages sought by the Plaintiff in this cause of action exceeds Fifty Thousand Dollars ($50,000), but is less than Seventy-Five Thousand Dollars ($75,000) per Plaintiff or class member [sic]."

This "stipulation" in Smith's complaint does not prevent removal. Allegations that a plaintiff seeks no more than $75,000 or will not accept damages over $75,000 do not, standing alone, preclude removal. Such allegations properly are *considered* by the Court (and have been considered by this Court in prior cases) but are not determinative of the amount in controversy.

In ***American Bankers Life Assur. Co. of Florida v. Evans*, 319 F.3d 907, 908 (7th Cir. 2000),** the Seventh Circuit (a) affirmed the determination by Judge William D. Stiehl of this Court that subject matter jurisdiction did not lie and (b) found insufficient an allegation which stated that the damages were "in no event to exceed $75,000."

> The district court properly ignored this detail – **it was neither a limit on recovery**, *see* 735 ILCS 5/2-604; *BEM I, L.L.C. v. Anthropologie, Inc.*, 301 F.3d 548, 552 (7th Cir.2002) ... **nor a demand for $75,000**, *see De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir.1995)--and looked instead to the claim's actual value, *see In re Brand Name Prescription Drugs Antitrust Litigation*, 248 F.3d 668, 671 (7th Cir.2001),

***American Bankers*, 319 F.3d at 908 (emphasis added).**

So, the language of the complaint, by itself, does not defeat removal here. Next, the Court examines to the affidavit filed with Plaintiffs' state court complaint in compliance with **ILLINOIS SUPREME COURT RULE 222 ("Any civil action seeking money damages shall have attached to the initial pleading the party's affidavit that the total of money damages sought does or does not exceed $50,000.")**.

The law of this Circuit clearly holds: "Litigants who want to prevent removal must file a binding stipulation or affidavit with their complaints." ***Chase*****, 110 F.3d at 430*****, citing In re Shell Oil Co.*****, 970 F.2d 355, 356 (7th Cir. 1992).** ***See also*** **CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE, Jurisdiction 3d § 3725 at 87 (a plaintiff's waiver of over $75,000 "must be truly binding on the plaintiff in state court before it will prevent removal").** The question is whether attorney Armstrong's Rule 222 affidavit (filed with Smith's state court complaint) is *binding* as to Smith's damages.

No Seventh Circuit case located by the undersigned Judge or cited by counsel squarely delineates what constitutes a legally binding stipulation/affidavit under ***Shell Oil***. A number of federal district courts have held that, to prevent removal, a pre-removal affidavit or stipulation must be signed by the plaintiff, not just plaintiff's counsel. ***See, e.g., Asbury-Castro v. GlaxoSmithKline, Inc.*****, 352 F. Supp. 2d 729, 733 (N.D. W.Va. 2005)("to be operative, a disclaimer must be 'a formal, truly binding, pre-removal stipulation signed by counsel and his client explicitly limiting recovery'");** ***Virden v. Altria Group, Inc*****., 304 F. Supp. 2d 832, 847 (N.D. W.Va. 2004) ("Therefore, absent a binding stipulation signed by Virden that he will neither seek nor accept damages in excess of $75,000, the Court must independently assess whether the defendants have proven by a preponderance of the evidence that Virden's complaint seeks damages in excess of $75,000.");** ***McCoy v. Erie Ins. Co.,*** **147 F. Supp. 2d 481, 485-86 (S.D. W.Va. 2001)("The better rule requires a formal, truly binding, pre-removal stipulation signed by counsel and his client explicitly limiting recovery.").**

Other courts have interpreted an attorney's stipulation as binding on the plaintiff (even when not signed by the plaintiff), *if* the plaintiff confirmed in writing the attorney's authority

to bind the plaintiff. ***See Dozier v. Kentucky Finance Co., Inc.*, 319 F. Supp. 2d 716, 719 (S.D. Miss. 2003)(complaint demand for less than $75,000 "coupled with the stipulation of plaintiff's counsel," whose authority to stipulate on behalf of plaintiff has been confirmed by plaintiff himself, established that amount in controversy did not exceed $75,000).** ***See also Dora v. Citifinancial, Inc*., 2003 WL 22243996, *4 (N.D. Miss. 2003)(removal thwarted where plaintiffs affirmed that they were legally bound by stipulation which stated "Neither the individual Plaintiffs nor their lawyers will accept an amount that exceeds the federal jurisdictional minimum ...; Neither the individual Plaintiffs nor their lawyers will amend the complaint after one year to plead an amount in controversy in excess of the $74,900, per Plaintiff, nor will they authorize anyone on their behalf or their future heirs and assigns, to make such an amendment").**

In the case at bar, the Court already has found the "stipulation" in the complaint that Plaintiff Smith will not seek or accept over $75,000 insufficient to block removal. (For one thing, Plaintiff could amend her complaint at any time and delete that language.) The separate affidavit tendered by lawyer Armstrong was not signed by Smith. Nor did Smith, in any pre-removal document, affirm that stipulation as binding her. The Court is not convinced that the affidavit is "binding" under ***Shell Oil,*** so as to effectively block removal. Thus, the undersigned Judge must look "instead to the claim's actual value." ***American Bankers*, 319 F.3d at 908.**

Smith seeks compensatory damages to cover the cost of periodic doctor visits – and presumably tests – to detect any injury or disease caused by ingesting Bextra (Doc. 2, p. 6). She seeks no injunctive relief or punitive damages. She does not ask for a comprehensive system of court-supervised medical monitoring.

Although the estimate of the amount in controversy contained in the complaint is not *dispositive* of the amount in controversy, the Court may consider it. Indeed, accepted wisdom provides " when deciding whether a claim meets the minimum amount in controversy, the plaintiff's evaluation of the stakes must be respected." ***Barbers*, 132 F.3d at 1205.** The Court cannot conceive how (and Pfizer has not demonstrated that) Smith's claim surpasses the $75,000 jurisdictional bar.

Nor does the Court find persuasive Pfizer's argument that subject matter jurisdiction lies here under the recently-enacted amendments to the federal jurisdictional statutes known as the "Class Action Fairness Act of 2005." **Pub. L. 109-2, Feb. 18, 2005, 119 Stat. 14.**

**28 U.S.C. § 1332(d)(2)(A)** now confers original subject matter jurisdiction on federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and is a class action in which any member of a class of plaintiffs is a citizen of a state different from any defendant. The statute explicitly permits aggregation of claims in class actions to reach the $5,000,000 hurdle. ***See* 28 U.S.C. § 1332(d)(6)("In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.").** Pfizer argues that the aggregated claims in the instant case easily exceed $5,000,000 (Doc. 11, p. 9).

The Court, however, concludes that the amendments in question do not apply, because this case was not "commenced on or after the date of enactment" (February 18, 2005). Plaintiff commenced this case by filing her complaint in Illinois state court on December 28, 2004.

The Court rejects Pfizer's argument that "commenced" means the date the case reached federal court (*i.e.*, the date a case was removed) rather than the date the complaint was filed.

Both a plain reading of the statute and the legislative history of the bill indicate that the jurisdictional amendments were never intended to apply retroactively. ***See* P.L. 102-9 ("The amendments made by this Act ... shall apply to any civil action commenced on or after the date of enactment of this Act."); 151 Cong. Rec. H741 (Feb. 17, 2005(remarks of Rep. Udall)("Unlike earlier versions, S. 5 would not have a retroactive effect, so it would not affect pending cases.").** ***See also* 151 Cong. Rec. H753 (Feb. 17, 2005)(remarks of Rep. Goodlatte); 151 Cong. Rec. S1080 (Feb. 8, 2005)(remarks of Sen. Dodd); 151 Cong. Rec. S1087 (Feb. 8, 2005)(remarks of Sen. Kennedy).**

Pfizer has not met its burden of establishing that the amount in controversy exceeds $75,000, exclusive of interest and costs. Jurisdiction does not lie under the federal diversity statute. Because this Court lacks subject matter jurisdiction, it **GRANTS** Smith's February 24, 2005 motion (Doc. 4) and **REMANDS** this case to the Circuit Court of Madison County, Illinois.

Smith did not request an award of costs and expenses of removal in her remand motion or supporting brief, and the Court **DECLINES** to award such costs under **28 U.S.C. § 1447(c).**

**IT IS SO ORDERED.**

**DATED this 24th day of March, 2005.**

**s/Michael J. Reagan**
**MICHAEL J. REAGAN**
**United States District Judge**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **RICKY LOTT, GERALD SUMNER, SANDY BECKER & MIKE BALDWIN, individually and on behalf of all other similarly situated individuals,** | ) | |
| **Plaintiffs,** | ) | |
| **vs.** | ) | **Case No. 05-cv-0230-MJR** |
| **PFIZER, INC.,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM and ORDER**

**REAGAN, District Judge**:

On February 17, 2005, four Illinois citizens who live in the St. Clair/Madison County area (Ricky Lott, Gerald Sumner, Sandy Becker, and Mike Baldwin) filed a putative class action suit against Pfizer, Inc., in the Circuit Court of Madison County, Illinois.

Plaintiffs allege that Pfizer, a Delaware corporation with its principal place of business in New York, actively concealed information regarding the risks and dangerous side effects of two medications – Celebrex and Bextra. Celebrex and Bextra are the brand names of two non-steroidal anti-inflammatory drugs manufactured by Pfizer and used to treat musculoskeletal problems.

More specifically, Plaintiffs allege that Pfizer (via misrepresentations and concealment) was able to charge a higher price for Celebrex and Bextra than the drugs' true fair market value, had the health hazards been known by the purchasers. *See* Complaint, Doc. 2, p. 8. Plaintiffs allege that Pfizer thereby violated the Illinois Consumer Fraud and Deceptive Business Practices Act, **815 ILCS § 505/2**, and similar consumer protection statutes in other states.

Served on March 4, 2005, Pfizer removed the action to this Court on April 1, 2005, invoking subject matter jurisdiction under **28 U.S.C. § 1332.** Pfizer maintains that diversity jurisdiction lies both under § 1332 *and* under recently-enacted amendments to § 1332, resulting from passage of the Class Action Fairness Act of 2005, **Pub. L. 109-2, Feb. 18, 2005, 119 Stat. 14.**

**28 U.S.C. § 1332** confers subject matter jurisdiction over suits between citizens of different states if (a) complete diversity exists between the parties, and (b) the amount in controversy exceeds $75,000, excluding interest and costs. The party invoking federal jurisdiction – here, Pfizer – bears the burden of demonstrating that all jurisdictional requirements have been satisfied. ***Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir. 1997).**

In this case, complete diversity exists, because "the citizenship requirement for purposes of diversity jurisdiction in a class action hinges entirely on the citizenship of the named plaintiffs," each of whom (as an Illinois citizen) is diverse from Pfizer (a citizen of Delaware and New York). ***See Tropp v. Western-Southern Life Ins. Co.*, 381 F.3d 591, 595 (7th Cir. 2004), *citing Payton v. County of Kane*, 308 F.3d 673, 681 (7th Cir. 2002).** The question is whether Pfizer has shown that the amount in controversy exceeds $75,000, excluding interest and costs.

For a defendant to successfully remove a class action based on diversity, one of the named plaintiffs must have a claim that surpasses the $75,000 jurisdictional bar. ***In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599, 607 (7th Cir. 1997), *cert. denied*, 522 U.S. 1153 (1998); *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 409 (7th Cir. 2000).** If one named plaintiff meets the jurisdictional minimum, the other named plaintiffs and class members can "piggyback" on that plaintiff's claim, via supplemental jurisdiction under **28 U.S.C. § 1367**. ***Brand Name*, 123 F.3d at 607.**

Here, Plaintiffs seek to recover damages "in an amount equal to the difference between the price charged for the drugs and the fair market value which the drugs would have had" but for Pfizer's misrepresentations and omissions. Doc. 2, p. 10. In their prayer for relief contained in the state court complaint, Plaintiffs request (*Id.*, p. 11):

> that this action be certified as a class action, that the acts and practices of the Defendant be adjudged in violation of the New Jersey Consumer Fraud Act, and that the Court award them compensatory damages, treble damages, attorneys' fees, their costs of suit, and pre- and post-judgment interest.

Pfizer contends that the amount in controversy suffices, because "Plaintiffs are seeking a 'common fund' on behalf of all class members that exceeds $75,000, exclusive of interest and costs." Removal Notice, Doc. 1, p. 2. The Court, below, solicits briefs on this issue.

Alternatively, Pfizer relies on recent legislation, the Class Action Fairness Act (or "Act"), which amended the federal diversity statute. **28 U.S.C. § 1332(d)(2)(A)** now confers original subject matter jurisdiction on federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and is a class action in which any member of a class of plaintiffs is a citizen of a state different from any defendant. Moreover, the statute explicitly permits aggregation in class actions to reach the $5,000,000 hurdle. ***See*** **28 U.S.C. § 1332(d)(6)("In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.").**

Pfizer argues that the requisite minimal diversity exists, and "the amount in controversy, after aggregating the claims of the proposed class members, exceeds $5 million, exclusive of interest and costs." Doc. 2, p. 2.

The Court rejects Pfizer's argument based on the provisions of the Class Action Fairness Act. Those provisions apply only to civil actions commenced on or after the date the Act was enacted. Plaintiffs commenced this civil action by filing their complaint in Madison County Circuit Court on February 17, 2005. The Class Action Fairness Act was not "enacted" until the following day – February 18, 2005.

As it did in another case recently removed by Pfizer, this Court rejects Pfizer's argument that "commenced" means the date the case reached federal court (*i.e.*, the date a case was removed) rather than the date the complaint was filed. *See* 3/24/05 Order (Doc. 12) in *Smith, et al. v. Pfizer*, Case No. 05-cv-0112-MJR.

Both a plain reading of the statute and the legislative history of the bill indicate that the jurisdictional amendments were never intended to apply retroactively. ***See* P.L. 102-9 ("The amendments made by this Act ... shall apply to any civil action commenced on or after the date of enactment of this Act."); 151 Cong. Rec. H741 (Feb. 17, 2005(remarks of Rep. Udall)("Unlike earlier versions, S. 5 would not have a retroactive effect, so it would not affect pending cases."). *See also* 151 Cong. Rec. H753 (Feb. 17, 2005)(remarks of Rep. Goodlatte); 151 Cong. Rec. S1080 (Feb. 8, 2005)(remarks of Sen. Dodd); 151 Cong. Rec. S1087 (Feb. 8, 2005)(remarks of Sen. Kennedy).**

Having determined that jurisdiction does not lie under the Class Action Fairness Act, the Court returns to whether jurisdiction lies under the original (pre-Class Action Fairness Act) provisions of § 1332. The Court has found the parties diverse. The potential obstacle is the amount in controversy. After permitting counsel to brief whether one of the named plaintiffs has a claim that surpasses the $75,000 jurisdictional bar, the Court will assess the propriety of Pfizer's removal.

The Court instructs counsel to carefully review the undersigned Judge's 3/24/05 Order in *Smith v. Pfizer*, Case No. 05-cv-0112-MJR, with particular attention to the discussion of damage disclaimers and binding stipulations, before drafting their briefs regarding the amount in controversy herein.

The Court **DIRECTS** Plaintiffs' counsel to file a brief, no longer than 10 pages, addressing whether the amount in controversy suffices under **28 U.S.C. § 1332** (ignoring the recent amendments which this Court has declared inapplicable here). Plaintiffs' brief – captioned "Jurisdictional Memorandum" – must be filed on or before April 28, 2005.[1]

The Court **DIRECTS** Pfizer's counsel to file a brief in the nature of a reply (Pfizer already has presented its jurisdictional arguments in the removal notice) no longer than 5 pages. Pfizer's brief – also captioned "Jurisdictional Memorandum" – must be filed by May 5, 2005.

**IT IS SO ORDERED.**

**DATED this 7th day of April, 2005.**

**s/ Michael J. Reagan**
**MICHAEL J. REAGAN**
**United States District Judge**

---

1 This due-date does not toll or modify any otherwise applicable deadline for remand motions under **28 U.S.C. § 1447(c)**.

H
Only the Westlaw citation is currently available.

United States Court of Appeals,
Tenth Circuit.
Romia PRITCHETT, on behalf of himself and all other individuals similarly situated, Plaintiff-Appellee,
v.
OFFICE DEPOT, INC., Defendant-Appellant.
**No. 05-0501.**

April 11, 2005.

Appeal from the United States District Court for the District of Colorado, (D.C. No. 05-MK-392 (PAC)).

Darren E. Nadel, Joshua B. Kirkpatrick, John A. Ybarra, and Allan G. King, Littler Mendelson, P.C., Denver, CO, for Defendant-Appellant.

Joseph J. Zonies, Kritzer/Zonies LLC, Denver, CO, for Plaintiff-Appellee.

Before EBEL, O'BRIEN and McCONNELL, Circuit Judges.

EBEL, Circuit Judge.

***1** This case presents a question of first impression: Whether the removal provisions of the Class Action Fairness Act of 2005, Pub.L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.) (hereinafter "Class Action Fairness Act" or "the Act"), apply to pending state court cases that were removed after the effective date of the Act. On March 18, 2005, we entered an order in this case holding that the Act does not apply to pending state cases and denying Defendant's Petition for Leave to Appeal for lack of subject matter jurisdiction. We now issue this opinion explaining the reasoning for that order.

**I. Background**

On April 2, 2003, Plaintiff-Appellee Romia Pritchett, acting on behalf of himself and all others similarly situated, filed a class action complaint against Defendant-Appellant Office Depot, Inc. in the Colorado District Court for the County of Denver. Plaintiff, an assistant store manager at an Office Depot retail store, alleged that Defendant violated Colorado law by regularly requiring its employees to work extra hours without paying overtime. On June 21, 2004, the state court certified a class pursuant to Rule 23 of the Colorado Rules of Civil Procedure consisting of "[a]ll Assistant Store Managers employed by Office Depot, Inc. in the State of Colorado from April 2, 2000." Trial was set for March 14, 2005 and discovery commenced.

Approximately one month before the start of trial, on February 18, 2005, Congress enacted the Class Action Fairness Act. 119 Stat. at 4. One of the most significant features of the new law was that it expanded the subject matter jurisdiction of federal courts over class actions in which at least one plaintiff class member was diverse in citizenship from the defendant and where the amount in controversy exceeded $5 million. *See* § 4, 119 Stat. at 9-12 (codified at 28 U.S.C. § 1332(d)). If such an action arose in state court, Section 5 of the Act permitted removal to federal court in accordance with 28 U.S.C. § 1446. § 5, 119 Stat. at 12-13 (codified at 28 U.S.C. § 1453).

On March 1, 2005, just two weeks before trial was scheduled to begin, Defendant removed this action to the United States District Court for the District of Colorado, utilizing the newly-enacted provisions in 28 U.S.C. §§ 1332(d) and 1453 as a basis for jurisdiction. On March 7, 2005, Plaintiff moved to remand the proceedings to state court pursuant to 28 U.S.C. § 1447, arguing that the Class Action Fairness Act of 2005 did not apply to actions already pending in state courts. The district court agreed, and on March 9, 2005, remanded the case to the state court.

On March 10, 2005, with trial only four days away, Defendant requested a stay in proceedings from the state court so that it could appeal the district court's remand order. The state court denied the request and instead delayed the start date of the trial one week, to March 21, 2005.

On March 14, 2005, Defendant filed a petition for leave to appeal the district court's remand order with this court and also filed a motion for an emergency stay of the state court proceedings pending appeal. On March 18, 2005, we denied the petition for leave to appeal for lack of subject matter jurisdiction in a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

brief order and indicated that further elaboration would follow. [FN1] That order also dismissed the motion for an emergency stay as moot. We now issue this opinion to explain the court's reasoning in the aforementioned order.

FN1. In the order, we stated that Defendant's petition for leave to appeal arose under "28 U.S.C. 31453(c)." The statutory citation should have read "28 U.S.C. § 1453(c)."

**II. Jurisdiction**

***2** Defendant filed its petition for leave to appeal under 28 U.S.C. § 1453(c), which was recently enacted as part of the Class Action Fairness Act of 2005. § 5, 119 Stat. at 12. Section 1453(c) is a provision that expressly gives the United States courts of appeals discretionary jurisdiction to consider appeals of remand orders in certain class action cases specified in the Act, provided that the appeal is taken within seven days of the remand order. 28 U.S.C. § 1453(c)(1). If a court of appeals accepts an appeal under subsection (c)(1), the appellate court is given sixty additional days during which to render its judgment. 28 U.S.C. § 1453(c)(2).

Here, the petition for leave to appeal was filed well within the seven-day time limit, and jurisdiction vested in the Tenth Circuit Court of Appeals at that time. Although we ultimately conclude that we do not have jurisdiction over this appeal predicated on the Class Action Fairness Act because this action was commenced prior to the effective date of the Act, federal courts always have jurisdiction to consider their own jurisdiction. *Combs v. PriceWaterhouse Coopers LLP,* 382 F.3d 1196, 1204 (10th Cir.2004). Thus, we have jurisdiction to consider our jurisdiction to grant the requested relief in the instant case.

**III. Effective date of 28 U.S.C. § 1332(d)**

Section 9 of the Act provides that:

> The amendments made by this Act shall apply to any civil action commenced on or after the date of enactment of this Act.

119 Stat. at 14. The date of enactment of the Act is February 18, 2005. *Id.* at 4. This class action began on April 2, 2003 when Plaintiff filed his class action complaint with the Colorado District Court. Defendant removed the case to federal court on March 1, 2005. Thus, the applicability of the Act turns upon whether this civil action was "commenced" on April 2, 2003 (the state court filing date), or on March 1, 2005 (the federal court removal date).

Defendant claims that the case was commenced for purposes of the Act when it was removed to federal court. In essence, Defendant argues that when a preexisting state action is removed to federal court, it is "commenced" in federal court as of the date of removal. Plaintiff argues that the class action commenced just once, when it was initially filed in state court on April 2, 2003. Because that date precedes the effective date of the statute, according to Plaintiff, this case is not governed by the Act. We agree with Plaintiff's reading of the word "commenced."

Our analysis is governed by traditional rules of statutory construction and rules pertaining to federal jurisdiction. Therefore, we look first to the language of the statute, which reads as follows:

> The amendments made by this Act shall apply to any civil action commenced on or after the date of enactment of this Act.

§ 9, 119 Stat. at 14. Traditionally, a cause of action is commenced when it is first brought in an appropriate court, which here was when it was brought in state court. *See* Fed.R.Civ.P. 3 ("A civil action is commenced by filing a complaint with the court."). When a matter is removed to federal court, it is not traditionally viewed as recommenced, nor as a new cause of action. *See Kieffer v. Travelers Fire Ins. Co.,* 167 F.Supp. 398, 401 (D.Md.1958) ("[W]e do not usually think of an action as having been commenced in a district court by removal."); 14B Charles A. Wright, *et al., Federal Practice & Procedure* § 3721, at 302 (3d ed.1998) (noting that removal jurisdiction is unique because it allows a federal court to hear a claim over which it has no original subject matter jurisdiction and therefore to adjudicate a suit that could never have been "commenced" there). Although there exist some unique circumstances in which some action other than filing a complaint in court is deemed to "commence" a lawsuit, *see, e.g., Meisel v. Fed. Bureau of Investigation,* 204 F.Supp.2d 684, 687-88 (S.D.N.Y.2002) (holding that action under the Administrative Procedure Act may be commenced by filing a miscellaneous discovery motion), we view these situations as exceptions to the general federal rule that a lawsuit is commenced at a discrete moment in time: the filing of the original complaint in a court of competent jurisdiction. *See* Fed.R.Civ.P. 3. Of course, some states provide that service of process may commence a suit. *See, e.g.,* Conn.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Gen.Stat. § 52-45a (2003).

***3** We then look to presumptions that might aid our analysis. It is well-established that statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed in light of our constitutional role as limited tribunals. *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 108-109 (1941); *United States ex rel. King v. Hillcrest Health Ctr .,* 264 F.3d 1271, 1280 (10th Cir.2001). Thus, if there is ambiguity as to whether the instant statute confers federal jurisdiction over this case, we are compelled to adopt a reasonable, narrow construction. Here, we find Plaintiff's interpretation of the word "commenced" in the Act to be such a construction. [FN2]

FN2. We also note that courts apply a presumption against the retroactivity of a statute absent a clear congressional intent to the contrary. *Landgraf v. USI Film Prods., Inc.,* 511 U.S. 244, 280 (1994). However, here, Defendant is not arguing for retroactivity in the true sense of the word, where the events giving rise to liability occurred prior to the enactment of a statute. *See id.* Rather, Defendant argues that the operative act, removal, occurred after the effective date of the statute and therefore that the statute applies prospectively. Since Defendant is not raising a traditional retroactivity argument, we will not engage in a *Landgraf* analysis.

Finally, we turn to legislative history. Although legislative history is sometimes suspect as a persuasive interpretative tool, here the progression of language in the Act as it moved through Congress is instructive. When the Act was originally introduced in the House, the removal provision applied both to cases "commenced" on or after the enactment date and to cases in which a class certification order is entered on or after the enactment date. *See* H.R. 516, 109th Cong. § 7 (2005). In contrast, neither the Senate version of the bill nor the final statute passed by both houses of Congress provided for removal of actions certified on or after the enactment date. *See* S. 5, 109th Cong. § 9 (2005); § 9, 119 Stat. at 14. The Senate version and the final statute provided only for application of the Class Action Fairness Act to civil actions "commenced" on or after the date of the Act. S. 5; § 9, 110 Stat. at 14. It is thus clear that Congress initially started out with broader language that could have included a number of then-pending lawsuits in state courts. By excising the House provision, Congress signaled an intent to narrow the removal provisions of the Act to exclude currently pending suits. [FN3]

FN3. Both sides have tried to draw support for their positions by comparing the language in the Act to comparable language in earlier amendments to the federal diversity statutes where Congress pegged the effective date provision to commencement *or removal* of an action. However, we do not find those statutes particularly helpful here because the language in those earlier statutes cuts both ways. For example, when Congress increased the amount-in-controversy requirement for diversity jurisdiction from $500 to $2,000, it provided that the new law would not "affect the jurisdiction over or disposition of any suit *removed from* the court of any State, or suit *commenced in* any court of the United States, before the passage hereof...." Act of Aug. 13, 1888, ch. 866, 25 Stat. 433, 437 (emphasis added). Similarly, Sections 202(b) and 203(b) of the Judicial Improvements and Access to Justice Act, Pub.L. No. 100-702, 102 Stat. 4642 (1988), which deal with citizenship for diversity purposes of multinational corporations, representative parties, and resident aliens, each contain effective date provisions applying that act to any "civil action commenced in or removed to" to federal court.
One could argue that because Congress refers only to commencement of a suit in some effective date provisions and to commencement *or removal* in others, the two terms are not synonymous. On the other hand, the statutes that refer both to commencement and removal limit the "commencement" event to commencement of an action *in the federal court,* which could not be construed to include commencement in a state court. Hence, one could argue that Congress in those statutes needed to add another jurisdictionally triggering event--removal to federal court--that was not necessary here, where the triggering event is the more general language of commencement of "any civil action." This more general language is arguably broad enough to include actions commenced in state court. Because the language from analogous earlier statutes

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

could plausibly support both Plaintiff's and Defendant's positions, its relevance to our analysis is substantially marginalized.

Further, we note that the Congressional Record contains two statements from sponsoring legislators indicating that the bill was not designed to apply to currently pending lawsuits. *See* 151 Cong. Rec. S1080 (daily ed. Feb. 8, 2005) (statement of Sen. Dodd) ("[The Act] does not apply retroactively, despite those who wanted it to. A case filed before the date of enactment will be unaffected by any provision of this legislation."); 151 Cong. Rec. H753 (daily ed. Feb. 17, 2005) (statement of Rep. Goodlatte) ("Since the legislation is not retroactive, it would have absolutely no effect on the 75 class actions already filed against Merck in the wake of the Vioxx withdrawal."). [FN4] Ordinarily, individual floor statements are entitled to little weight, but here, where they are consistent with and cast light upon the meaning of a specific change in the language between an earlier version of the bill and the final Act, the statements confirm our construction of the Act.

FN4. Plaintiff also points to similar statements made by Senator Kennedy and Representative Udall. *See* 151 Cong. Rec. S1087 (daily ed. Feb. 8, 2005) (statement of Sen. Kennedy); 151 Cong. Rec. H741 (daily ed. Feb. 17, 2005) (statement of Rep. Udall). However, since neither of these congressmen sponsored the legislation and both voted against it, we see little persuasive value in their comments.

**IV. Prior precedent**

Defendant argues that there are several district court opinions that adopt its broader view of commencement. *See* *Lorraine Motors, Inc. v. Aetna Cas. & Sur. Co.,* 166 F.Supp. 319, 323-24 (E.D.N.Y.1958) (holding that an action is "commenced" on the removal date for purposes of applying a higher amount-in-controversy requirement); *Hunt v. Transport Indem. Ins. Co.,* No. 90-00041, 1990 WL 192483, *5-6 (D.Haw. July 30, 1990) (unpublished) (same). [FN5]

FN5. In both *Hunt* and *Lorraine Motors,* the plaintiffs filed their state court suits prior to Congress' decision to raise the amount-in-controversy requirement of § 1332. *Lorraine Motors,* 166 F.Supp. at 320; *Hunt,* 1990 WL 192483, at *1. At the time of the initial state filing, each suit would have satisfied the lower federal amount-in-controversy requirement. *Id.* However, the defendants in these cases attempted to remove the actions only after Congress had amended the diversity statute, and neither suit satisfied the new amount in controversy requirement, which was applicable only to cases "commenced" after the effective date of the statute. *Id.* Both courts remanded the cases to state court, and held that the actions were "commenced" for purposes of applying the new amount-in-controversy requirement upon filing of the removal petition, not upon the filing of the initial complaint in state court. *Lorraine Motors,* 166 F.Supp. at 324; *Hunt,* 1990 WL 192483, at *6.

***4** Neither of these cases deal directly with the statute in question, which was passed only several weeks ago. Thus, the cases are relevant only by analogy. Even then, their persuasive value is diluted, as Plaintiff points out, by the presence of contemporaneous contrary authority from other federal district courts. *See* *Kieffer,* 167 F.Supp. at 402 (holding that action is "commenced" on initial filing date in state court and declining to impose higher amount-in-controversy requirement imposed prior to removal); *Rhinehart v. Cincinnati, Inc.,* 716 F.Supp. 7, 8 (E.D.Mich.1989) (same).

Moreover, the courts' reasoning in *Lorraine Motors* and *Hunt* actually supports Plaintiff's interpretation of the term "commenced." Although the courts were interpreting statutory language that is identical to the disputed provision in the instant case, there is a major difference between a statute that defines additional circumstances in which diversity of citizenship exists (such as the Class Action Fairness Act) and a statute that increases the amount-in-controversy requirement. The latter attempts to restrict federal court jurisdiction, while the former attempts to expand it. Both *Hunt* and *Lorraine Motors* rely heavily upon the principle that removal statutes are to be strictly construed, with all doubts resolved against removal. *Lorraine Motors,* 166 F.Supp. at 324; *Hunt,* 1990 WL 192483, at *6. Thus, in those cases, interpreting the term "commenced" as referring to the filing of the removal petition would serve that aim by restricting the number of preexisting state claims that could be removed. In contrast, such an interpretation here would actually permit broader federal court jurisdiction by increasing the number of removable actions. [FN6] Given this, we remain convinced that term "commenced" in the Act refers to the initial

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

filing, not the removal date.

FN6. We are mindful of the fact that Congress' goal in passing this legislation was to increase access to federal courts, and we also recognize that the Senate report instructs us to construe the bill's terms broadly. S.Rep. No. 109-14, at 43 (Feb. 28, 2005). But these general sentiments do not provide *carte blanche* for federal jurisdiction over a state class action any time the statute is ambiguous. While it is clear the Congress wished to expand federal jurisdiction, when that expansion is made effective is what is at issue in this case, and that is an issue we approach cautiously. *See Shamrock Oil & Gas Corp., 313 U.S. at 108-109*.

**V. Public Policy**

Where the language of a statute is arguably ambiguous, courts also look to public policy considerations to cast further elucidation on Congress' likely intent. *United States v. LaHue,* 170 F.3d 1026, 1028 (10th Cir.1999). Here, we are mindful of the fact that Defendant's argument, if accepted, could have serious consequences for both the federal judiciary and our colleagues on the state bench. Permitting the Act to apply to currently pending state suits would, in the words of the chairman of the Senate Judiciary Committee, "be extraordinarily disruptive of many State court proceedings." 151 Cong. Rec. S1225 (daily ed. Feb. 10, 2005) (statement of Sen. Specter).

As the facts of this case demonstrate, Defendant's interpretation of the Act would allow cases to be plucked from state court on the eve of trial. Such practices are disruptive to federal-state comity and the settled expectations of the litigants. Permitting removal of this case would effectively apply new rules to a game in the final minutes of the last quarter, and we find it ironic that Defendant seeks countenance for its position from a statute that was designed, in the first place, to curtail jurisdictional gaming and forum-shopping. S.Rep. No. 109-14, at 4-5. The consequences of Defendant's argument are sufficiently dramatic that we are not eager to ascribe those motivations to Congress without a clearer expression than we find here.

**VI. Conclusion**

***5** Because we conclude that removal to federal court does not "commence" an action for the purposes of the Class Action Fairness Act of 2005, the district court's remand order is AFFIRMED. [FN7]

FN7. Defendant's motion for emergency stay pending appeal is DISMISSED as moot.

2006442360

2006442360

2005 WL 827158 (10th Cir.(Colo.))

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.