## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SHERRY KWAAK, on behalf of herself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No.: 05-10591-NMG |
| PFIZER INC., | ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO REMAND

### Introduction

Plaintiff Sherry Kwaak ("Plaintiff") is moving to remand this action to the Middlesex Superior Court, where she initially filed her complaint on January 13, 2005. Plaintiff's motion is necessitated by the improper removal of this action by Defendant Pfizer, Inc. ("Pfizer" or "Defendant"). In its Notice of Removal, Pfizer asserts two grounds for removal: (i) federal diversity jurisdiction exists pursuant to provisions of the Class Action Fairness Act, 28 U.S.C. §§1332(d), 1453 ("CAFA"), and (ii) federal diversity jurisdiction exists pursuant to 28 U.S.C. §1332(a) because plaintiff and Pfizer are residents of different districts, and one of plaintiff's claims seeks disgorgement of profits from defendant, which defendant contends would result in the recovery of a "common and undivided interest" exceeding $75,000. Both of defendant's asserted grounds for removal are utterly without foundation and must be rejected:

(i) Because CAFA is only applicable to actions commenced on or after February 18, 2005,

the date of its enactment,[1] and because this action was commenced on January 13, 2005, the date the original complaint was filed in Middlesex Superior Court, a court of proper jurisdiction, CAFA does not provide a basis for federal jurisdiction. Pfizer's position to the contrary has been rejected by every district court and court of appeal to consider it thus far, including three cases in which Pfizer was the removing defendant. *Pritchett v. Office Depot, Inc.*, __ F. Supp. 2d __, 2005 WL 563979 (D. Col. Mar. 9, 2005),[2] *affirmed*, __ F. 3d __, 2005 WL 827158 *5 (10th Cir. April 11, 2005)("removal to federal court does not 'commence' an action for the purposes of the Class Action Fairness Act of 2005");[3] *Hankins v. Pfizer, Inc.*, CV 05-1797 ABC (RZX), at 3 (C.D. Cal. March 25, 2005) ("[r]emoving defendants cannot rely on diversity conferred by CAFA, which was not enacted at the time the state action was filed"); *Smith v. Pfizer*, *Inc.*, Case No. 05-CV-0112-MJR at 9 (S.D. Ill. March 24, 2005) ("[t]his Court rejects Pfizer's argument that 'commenced' means the date the case reached federal court (*i.e.*, the date a case was removed) rather than the date the complaint was filed."); *Lott v. Pfizer, Inc.*, Case No. 05-cv-0230-MJR at 4 (S.D. Ill. April 7, 2005) (same). Each of these decisions addressed the **exact issue raised by Pfizer's Notice of Removal here,** i.e., the nature of the act which under CAFA constitutes "commencement" of a case.

(ii)  Because plaintiff's claim for disgorgement arises from, and is based on, the individual purchases of Listerine® mouthrinse made by class members, there is no basis for "aggregating" the separate claims of class members. Aggregation is only proper where the named plaintiff in a class action asserts "a single title or right, in which [class members] have a common

---

[1]  *See* P.L. 109-2, Sec. 9.

[2]  Referred to herein as *Pritchett* DC.

[3]  Referred to herein as *Pritchett* DC.

and undivided interest." *Zahn v. International Paper Co.,* 414 U.S. 291, 294 (1973). The clear weight of authority, in this jurisdiction and elsewhere, is that such a "title or right" is one which class members "hold in group status," *Morrison v. Allstate Indemnity Co.,* 228 F.3d 1255, 1262 (11th Cir. 2000), which is obviously not the case here. *Compare Berman v. Narragansett Racing Association,* 414 F.2d 311, 313-315 (1st Cir. 1969)(aggregation inappropriate in suit seeking to enforce contractual obligation owed to group of horse owners).

In view of the above, the Court should grant plaintiff's Motion to Remand. Moreover, given the clear weight of authority against Pfizer's positions, this Court should also order Pfizer to pay plaintiff's costs and attorneys fees pursuant to 28 U.S.C. §1447(c).

### Summary of Plaintiff's Claims and Relevant Facts

Plaintiff filed her original complaint in Middlesex Superior Court on January 13, 2005, and filed a First Amended Complaint ("FAC") on March 2, 2005. In the FAC, Plaintiff seeks certification of a statewide class consisting of all Massachusetts consumers who purchased Listerine® Antiseptic Mouthrinse ("Listerine") from June 1, 2004 through the present. FAC ¶¶ 7. Plaintiff alleges that Pfizer's advertising campaign, which touted Listerine as a substitute for flossing -- "Listerine® as effective as Floss-Clinical studies prove it" -- knowingly contained materially false and misleading misrepresentations, statements and omissions. Plaintiff seeks to recover damages for herself and members of the class, asserting claims for unjust enrichment and violations of the Massachusetts Consumer Protection Act, G.L. c. 93A, §2. FAC ¶¶ 69-83.

The Middlesex Superior Court has jurisdiction over Pfizer pursuant to the Massachusetts Long-Arm Statute, G.L. c. 223A, §3, because Pfizer transacts significant commerce within the Commonwealth of Massachusetts through its promotion and sale of Listerine® and other products

(FAC ¶ 6).  Venue is proper within Middlesex County because plaintiff is a resident of Middlesex County, acts complained of occurred within that county, purchases of Listerine® by consumer class members occurred within that county, and injury occurred there.

On  March 25, 2005, Pfizer filed its NOR with this Court.  Pfizer asserts that there is federal diversity jurisdiction over this putative class action pursuant to CAFA, codified at 28 U.S.C. §§ 1332(d), 1453 (NOR ¶2), even though section 9 of CAFA provides that it applies only to civil actions "commenced on or after the date of enactment of this Act [February 18, 2005]."  NOR ¶ 9. However, ignoring the plain meaning of the statutory language and unanimous case law to the contrary, Pfizer urges that the term *"commenced"* in section 9 means not the filing of the complaint, but rather the commencement of proceedings in federal court following a timely removal of the action from state court, which occurred here on March 25, 2005.  Pfizer also argues that federal diversity jurisdiction exists because "plaintiff's request for relief in the form of disgorgement among all class members is a 'common and undivided interest' in excess of $75,000, exclusive of interest and costs."  NOR, ¶2.

The action should be remanded to Middlesex Superior Court because: (i) federal diversity jurisdiction does not exist under CAFA, since the term *"commenced"* in Section 9 of CAFA refers to the date the action was first filed in state court.  *Pritchett* DC at *5; *Pritchett* App. at *2, *5; and (ii) federal diversity jurisdiction does not exist under 28 U.S.C. §1332(a) because, in seeking damages resulting from individual purchases of class members, plaintiff is not asserting a "single title or right in which [she has] a common and undivided interest," *Zahn,* 414 U.S. at 294, and none

4

of the individual damage claims exceed $75,000.

## Argument

## I.    THERE IS NO SUBJECT MATTER JURISDICTION OVER THE CLAIMS ASSERTED HERE.

A civil action is removable only if the plaintiff could have originally brought the action in federal court. *See* 28 U.S.C. §1441(a). Absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim. *Beneficial National Bank v. Anderson*, 539 U.S. 1, 6 (2003). It is axiomatic that the removal statute is to be strictly construed and that any doubts about the propriety of removal are to be resolved against the removal of an action. *See*, *e.g., Danca v. Private Health Care Systems, Inc.*, 185 F. 3d 1, 4 (1st Cir. 1999); *BIW Deceived v. Local S6*, 132 F. 3d 824, 831 (1st Cir. 1997); *Alshrafi v. American Airlines, Inc.*, 321 F.Supp. 2d 150, 153 (D. Mass. 2004, Young, C.J.); *American Buildings Company v. Varicon, Inc.*, 616 F.Supp. 641, 643 (D. Mass. 1985, Young, J.). Furthermore, a party seeking to remove a case to federal court has the burden of demonstrating the existence of federal jurisdiction. *BIW Deceived*, 132 F. 3d at 831; *Alshrafi*, 321 F.Supp. 2d at 153; *Gattegno v. Sprint Corporation*, 297 F. Supp. 2d 372, 374 (D. Mass. 2003). Moreover, "[I]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. §1447(c).

Pfizer does not allege any federal subject matter jurisdiction over the claims asserted by plaintiff. Its only purported grounds for removal are that this Court has federal diversity jurisdiction over this action on the basis of CAFA and 28 U.S.C. §1332(a). NOR ¶2.

## II.    THERE IS NO DIVERSITY JURISDICTION ON THE BASIS OF CAFA.

5

CAFA was passed by Congress on February 18, 2005.  P.L. 109-2.  CAFA amended 28 U.S.C. §1332 to establish jurisdiction in federal court over class actions where (1) the putative class action consists of at least 100 proposed class members; (2) the citizenship of at least one proposed class member is different from that of the defendant, and (3) the matter in controversy, after aggregating the claims of the proposed class members, exceeds five million dollars, exclusive of interest and costs.   P.L. 109-2, Section 4; 28 U.S.C. §1332(d).   Section 5 of CAFA allows for the removal of such class actions to federal court.   P.L. 109-2, Section 5; 28 U.S.C. §1453.   However, the Act is crystal-clear that it only applies to civil actions "*commenced on or after* the date of enactment of this Act."  P.L. 109-2, Section 9; NOR ¶9.

Thus far, the only courts to consider the issue of when "commencement" occurs have determined that CAFA does not apply to actions that were filed in state court *prior* to February 18, 2005.  Because of this clear precedent and the sound reasoning on which it is based, this Court should conclude that CAFA is not applicable to this action and does not provide a basis for removal.

In *Pritchett*, the Court of Appeals started with the "well-established" principle that "statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed."  *Pritchett* App. at *3; *see also Pritchett* DC at *4 (noting that all doubts are to be "resolved against federal jurisdiction").  The Court then considered the plain meaning of the term "commenced," concluding that "a cause of action is commenced when it is first brought in an appropriate court, which here [and in this case] was when it was brought in state court."  *Pritchett* App. at *2: *Pritchett* DC at *3 (noting that the construction urged by plaintiff "gives the most

natural reading to the plain meaning of the term 'commenced,'" and that "the most common

definition" of the word "refers to the beginning of an undertaking").   The Court then proceeded to

review the legislative history of CAFA, finding it significant that the final bill eliminated a

provision which would have expressly made actions pending in state court as of the effective date

subject to the Act:

> When the Act was originally in the House, the removal provision applied both to
> cases "commenced" on or after the enactment date *and* to cases in which a class
> certification order is entered on or after the enactment date.  *See* H.R. 516, 109th
> Cong. § 7 (2005).  In contrast, neither the Senate version of the bill nor the final
> statute passed by both houses of Congress provided for removal of actions certified
> on or after the enactment date.  *See* S. 5, 109th Cong. § 9 (2005); § 9, 119 Stat. at 14.
> The Senate version and the final statute provided only for application of the Class
> Action Fairness Act to civil actions "commenced" on or after the date of the Act.
> S. 5; § 9, 110 Stat. at 14.  It is thus clear that Congress initially started out with
> broader language that could have included a number of then-pending lawsuits in
> state courts.  *By excising the House provision, Congress signaled an intent to narrow*
> *the removal provisions of the Act to exclude currently pending suits.*

*Pritchett* App. at *3 (footnotes omitted)(emphases added).   The Court also emphasized that

statements by sponsoring legislators were consistent with this construction of the word

"commenced:"

> . . . we note that the Congressional Record contains two statements from sponsoring
> legislators indicating that the bill was not designed to apply to currently pending
> lawsuits.  *See* 151 Cong. Rec. S1080 (daily ed. Feb. 8, 2005) (statement of Sen. Dodd)
> ("A case filed before the date of enactment will be unaffected by any provision of this
> legislation."); 151 Cong. Rec. H753 (daily ed. Feb. 17, 2005) (statement of Rep.
> Goodlatte) ("the legislation . . . would have absolutely no effect on the 75 class
> actions already filed against Merck in the wake of the Vioxx withdrawal.")

*Pritchett* App. at *3.  The District Court was even more forthcoming on this point:  "it is clear that

supporters and opponents of the bill in both houses understood that the Act would not apply to

7

pending cases." *Pritchett* DC at *3.    Finally, the Court of Appeals recognized significant public

policy reasons not to construe CAFA in the manner urged by Pfizer:

> Defendant's argument, if accepted, could have serious consequences for both
> the federal judiciary and our colleagues on the state bench.  Permitting the Act
> to apply to currently pending state suits would, in the words of the chairman of
> the Senate Judiciary Committee, "be extraordinarily disruptive of many State
> court proceedings."  151 Cong.Rec. S1225 (daily ed. Feb. 10, 2005)(statement
> of Sen. Specter). . . . The consequences of Defendant's argument are sufficiently
> dramatic that we are not eager to ascribe those motivations to Congress without
> a clearer expression than we find here.

*Pritchett* App. At *5.    *See,* also, *Pritchett* DC at *5 (defendant's reading of statute "would have

undesirable and unintended consequences.  It would permit the removal of nearly every presently-

pending class action in every state court, resulting in a sudden tidal wave of filings on an already

burdened federal judiciary").

Pfizer attempts in vain to discredit *Pritchett* and its rationale.  Pfizer first notes that a

decision from the Tenth Circuit is not controlling in this Court.  NOR, ¶ 22.  This is no doubt true,

but it cannot be denied that *Pritchett* constitutes persuasive authority since it addresses the issue in

great detail, is obviously well-reasoned, and there is no authority to the contrary.  Pfizer then tries to

distinguish *Pritchett* on the basis that removal there occurred more than 30 days after service and

after a class had been certified.  However, the Appeals Court clearly did not predicate its holding on

this factor, ruling explicitly that CAFA does not apply to *any* case filed in state court prior to

February 18, 2005.  *Pritchett* App. at *5.  Further, this distinction is undermined by the decisions in

*Hankins*, *Smith* and *Lott*, where the courts reached the same conclusion as in *Pritchett* even though

the state actions were removed within the 30-day period and no classes had been certified prior to

8

removal.  Reduced to grasping at straws, Pfizer next contends that *Pritchett* is at odds with the

overall purpose behind CAFA, i.e., the expansion of federal jurisdiction.  NOR ¶23.   However, the

Court of Appeals addressed this point directly and categorically rejected it:

> [w]e are mindful of the fact that Congress' goal in passing this legislation
> was to increase access to federal courts, and we also recognize that the Senate
> report instructs us to construe the bill's terms broadly.  But these general
> sentiments do not provide *carte blanche* for federal jurisdiction over a state
> class action any time the statute is ambiguous.  While it is clear the Congress
> wished to expand federal jurisdiction, **when** that expansion is made effective
> is what is at issue in this case, and that is an issue we approach cautiously.

(citations omitted)(emphasis added).  *See also Pritchett* DC at *7 ("although Congress generally

intended the Act to broaden federal jurisdiction, it also maintained a specific intention to apply the

Act only prospectively").

Pfizer then attempts to discredit *Hankins*, *Smith* and *Lott* on the basis that those courts

confused retroactivity with CAFA's provision that the Act applies to actions commenced on or after

its enactment date.  Defendant's Notice of Additional Authority, p. 3.  This criticism is misplaced,

since these courts clearly "reject[ed] [Pfizer's] argument that 'commenced' means the date the case

reached federal court (*i.e.*, the date a case was removed) rather than the date the complaint was

filed."  *Smith* at 9.  *See also Lott* at 4; *Hankins* at 3.  Further, notwithstanding any references to

retroactivity, these courts leave no doubt that the legislative intent behind CAFA was that it "would

not affect pending cases."  *Smith* at 10, *quoting* 151 Cong. Rec. H471 (Feb. 17, 2005)(remarks of

Rep. Udall).

Finally, the non-CAFA cases cited by Pfizer in its NOR[4] simply do not lend any support to its contention that CAFA applies to cases filed in state court before CAFA's effective date. First, none of these decisions – all from other circuits - are controlling here. Even though the same can be said of *Pritchett*, there is a fundamental difference between *Pritchett* and these other cases: *Pritchett* represents the first (and to date the only) circuit-level decision to address the exact issue raised by Pfizer's removal, whereas the cases cited by Pfizer are "relevant only by analogy" since they dealt with a completely different statutory provision and "their persuasive value is diluted . . . by the presence of contemporaneous contrary authority [*e.g.*, *Rhinehart*, *supra; Kieffer*, *supra; Lomax*, *supra*] from other federal district courts."[5]   *Pritchett* App. at *3-4.   Not surprisingly, Pfizer has barely addressed this contrary authority, relegating it to a footnote with little or no discussion. *See* NOR ¶23, n. 2.   And, second, the non-CAFA cases confirm the principle that removal statutes are to be strictly construed; they are, therefore, consistent with *Pritchett* and support the construction of CAFA which dictates remand of this case. As the *Pritchett* court concluded, both *Lorraine Motors* and *Hunt* "actually support [its] interpretation of the term 'commenced'" because these cases "rely heavily upon the principle that removal statutes are to be strictly construed, with all doubts resolved against removal." *Id*.   And, *see Abernathy*, 169 F. Supp. at 834 ("[t]he policy of

---

[4]   *Cedillo v. Valcar Enterprises*, 773 F. Supp. 932 (N.D. Tex. 1991); *Hunt*, *supra.*; *Abernathy v. Consol. Cab. Co.*, 169 F. Supp. 831 (D. Kan. 1959); *Casteel v. Great Southern Trucking Co.*, 167 F. Supp. 435 (E.D. Tenn. 1958); *Lorraine Motors*, *supra.   See* NOR ¶10.

[5]   *Citing Keiffer v. Travelers Fire Ins. Co.*, 167 F. Supp. 398, 402 (D. Md. 1958 ) (holding that action is "commenced" on initial filing date in state court and declining to impose higher amount-in-controversy requirement imposed prior to removal) and *Rhinehart v. Cincinnati, Inc.*, 716 F. Supp. 7, 8 (E.D. Mich. 1989)(same).   *See also Lomax v. Duchow*, 163 F. Supp. 873, 874 (D. Neb. 1958) (same).

the statute (conferring diversity jurisdiction upon the district courts) calls for its strict construction").

Nor does *Cedillo* support Pfizer's position here. The *Cedillo* court found that the Judicial Improvements Act of 1990, codified as 28 U.S.C. §1367, applied to a case that was filed in state court prior to the effective date of the statute but removed after the effective date. *Id.*, 773 F. Supp. at 939. However, the court reached this result without **any** discussion, much less any analysis, of the legislative history or purpose of §1367. In addition, its only mention of the issue, without any citation to supporting authority, was the following conclusory statement: "[t]he statute applies to the present case because the pertinent time for determining federal jurisdiction is the date on which such jurisdiction is invoked." *Id.*[6] Moreover, it is entirely possible that the court may have found federal jurisdiction over the plaintiff's state law claim under the prior governing principles of pendent jurisdiction. Indeed, the court expressly noted that §1367 "ratifies and incorporates the constitutional analysis [with regard to pendent jurisdiction] the Supreme Court made in the *Gibbs* case [*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966)]," *id.*, 773 F. Supp. at 939 (citation omitted), and when analyzing whether or not supplemental jurisdiction under §1367 was present, the court did so with reference to the standard enunciated in *Gibbs. See*, *e.g.*, *id.* at 940, 942.

Accordingly, it should be clear that CAFA does not confer this Court with diversity jurisdiction over this action or provide a basis for defendant's removal of same from state court.

---

[6] This stands in sharp contrast to the extremely thoughtful and thorough discussion of the legislative history and purpose of CAFA by both the District Court and the Court of Appeals in *Pritchett*. *See Pritchett* DC at *3; *Pritchett* App. at *3.

**III.    THERE IS NO DIVERSITY JURISDICTION ON THE BASIS OF 28 U.S.C. §1332(a).**

In its NOR, defendant does not argue that the individual damages sustained by the plaintiff

or any individual class member exceeds $75,000.[7]  Rather, Pfizer contends that the amount in

controversy for purposes of diversity jurisdiction is satisfied because the individual claims of class

members can be "aggregated," as a result of which plaintiff's disgorgement claim represents "a

'common and undivided interest' in excess of $75,000, exclusive of interest and costs."  NOR, ¶2,

30.

The Supreme Court has made crystal-clear that in class actions the claims of individual class

members cannot be aggregated for the purpose of satisfying the  "amount-in-controversy" required

for diversity jurisdiction, i.e., the requirement must be met by each individual member of the

plaintiff class.  *Snyder v. Harris*, 394 U.S. 332, 336-337 (1969); *Zahn v. International Paper Co.*,

414 U.S. 291, 300-301 (1973).  *See also Ciardi v. F.Hoffman-LaRoche Ltd.,,* 2000 WL 159320 at

\*2 (D.Mass.) (Massachusetts law does not permit defendants to evade the anti-aggregation rule);

*Hairston v. Home Loan and Investment Bank*, 814 F. Supp. 180, 181 & n.1 (D.Mass. 1993) (claims

of each class member must be greater than $50,000).  However, a narrow exception to the anti-

---

[7]  Indeed, such an argument would be absurd, since class members are only seeking damages arising from their individual purchases of bottles of mouthrinse over a brief  (i.e., approximately 7-month) period of time: the FAC alleges that defendant's unlawful marketing/advertising of the product began on June 1, 2004, and on January 7, 2005, the United States District Court for the Southern District of New York enjoined defendant from continuing the practices complained of.  *See McNeil-PPC, Inc. v. Pfizer, Inc.,* 351 F.Supp.2d 226 (S.D.N.Y. 2005).  Although the injunction issued in *McNeil* is on appeal, it has not been stayed.  Thus, it should be patently clear that the claim of each individual class member is "relatively small," *Gilman,* 104 F.3d at 1421, far less than $75,000.   Moreover, the FAC makes clear that plaintiff is not seeking in her individual capacity the disgorgement of monies paid by class members, but only in her capacity as class representative.  However, so there is absolutely no doubt as to this point, plaintiff hereby disavows any individual claim for disgorgement of monies resulting from, or having anything to do with, purchases of

aggregation rule has been carved out where the members of a proposed class assert "a single title or

right, in which they have a common and undivided interest." *Zahn,* 414 U.S. at 294.   Such a

situation "is rather uncommon, existing only when the defendant owes an obligation to the group of

plaintiffs as a group and not to the individuals severally." *Morrison,* 228 F. 3d at  1262.  In other

words, "'[i]f the claims are derived from rights that [class members] hold in group status, then the

claims are common and undivided.  If not, the claims are separate and distinct,'" even if success by

the plaintiff class would result in creation of a common fund.  *Id.,* quoting *National Organization

for Women v. Mutual of Omaha Ins. Co.,* 612 F. Supp. 100, 107 (D.D.C. 1985).  Obviously, many

class actions result in the creation of some type of common fund:

> It is of course commonplace to collect class action damages
> wholesale, put the proceeds in a single fund, and distribute the
> proceeds retail upon a showing of specific entitlement in accordance
> with the judgment.

*Gilman v. BHC Securities, Inc.*, 104 F. 3d 1418, 1427-1428 (2d Cir. 1997).   However,

establishment of a common fund "has nothing necessarily to do with whether the plaintiffs shared a

pre-existing (pre-litigation) interest in the subject of the litigation." *Id.*  In sum, "it is the nature of

the right asserted, not that of the relief requested, that determines whether the claims of multiple

plaintiffs may be aggregated." *Morrison,* 228 F.3d at 1264.

Aggregation is therefore inappropriate in disgorgement cases where the claims of the class

members arise from their individual transactions with defendant, such that they would be able to

assert individual claims for relief.  In *Gilman, supra,* an investor sued various brokers and other

---

Listerine mouthrinse made by any other class member.

13

parties on behalf of a class of persons to recover "order flow payments" (essentially kickbacks) paid in connection with their securities transactions. The court rejected defendants' argument that class members' claims should be aggregated for jurisdictional purposes because plaintiff's disgorgement claim, as here, was designed to recover "payments received in respect of their individual transactions, as accurately as that amount can be determined." *Id.* at 1427.

In *Gattegno*, a class consisting of Massachusetts wireless telephone customers alleged they had been fraudulently overcharged. Defendants advanced the identical argument asserted in this case, i.e., that because the plaintiff's unjust enrichment claim sought the disgorgement of profits, the entire amount of the potential common fund (and not the amount of each prospective class member's share) should determine the amount in controversy. Judge Keeton soundly rejected this approach: "The focus should not be on the type of relief requested, but rather on the nature and value of the right asserted. . . . the issue turns not on whether the plaintiffs seek a 'common fund,' but on whether plaintiffs bring the case based in individual claims or in an indivisible, common claim." *Id.* at 378, citing *In re Ford Motor Co.,* 264 F.3d 952, 960 (9th Cir. 2001) and *Pierson v. Source Perrier,* 848 F.Supp. 1186, 1188 (E.D.Pa. 1994). Because each class member's claim was "based in individual contractual relationships with defendant," their separate claims were not "indivisible" and could not therefore be aggregated to meet the required amount-in-controversy. *Id.*

In *In re Ford Motor Co./Citibank (South Dakota), N.A,* the plaintiff class brought an unjust enrichment claim seeking "disgorgement of 'billions of dollars' of 'ill-gotten benefits' arising from defendants' cancellation of a credit card rebate program. The court distilled the central question

14

concerning aggregation to the following simple premise: "whether 'the plaintiffs' claims are consistent with a demand for damages based on their individual transactions with [the defendants].'" *Id.* at 961, quoting *Gilman,* 104 F.3d at 1425 n. 8. The Court found the answer to this question "not difficult," holding that class members' claims should not be aggregated because "[each] charged purchases and accrued rebates individually, not as a group," and "[e]ach cardholder could have brought a separate and individual action to recover the alleged benefits." *Id.* at 962.

Similarly, in *Pierson, supra,* the plaintiff class sought disgorgement of profits resulting from defendant's alleged misrepresentations of one of its bottled water products. Recognizing that the proper focus should be "upon the nature and value of the rights that [plaintiffs] have asserted," the court ruled that the disgorgement claim was simply "a means of obtaining money damages" which was not subject to aggregation. And, in *Morrison,* a class of Florida motor vehicle owners sued a number of insurers for failing to pay benefits for the diminished value of their damaged but repaired vehicles. The Court of Appeals held that the district court improperly aggregated the class members' individual claims and thus lacked subject matter jurisdiction over the action. Even though the plaintiff class characterized its claim as "unjust enrichment," the individual claims could not be aggregated for jurisdictional purposes because they resulted "from the defendants' alleged breach of individual insurance policies." *Id.* at 1264. *Accord: McCoy v. Erie Insurance Company,* 147 F.Supp.2d 481, 490-492 (S.D.W.Va. 2001)(following *Morrison). See Campbell-Hubbard v. Abbott Laboratories, Inc.,* 2001 WL 969034 (N.D.Cal.)(class action seeking to disgorge profits due to artificially-inflated drug prices; remand ordered because plaintiffs' claims were "separate and

distinct" and could not be aggregated); *Gibson v. Chrysler Corporation,* 1998 WL 646659 (N.D.Cal.)(class action to establish "paint correction fund" for remedying latent paint defects in vehicles; aggregation of individual claims not warranted since "each plaintiff suffered a distinct injury and each plaintiff could individually bring an action against Chrysler").

Consistent with the foregoing cases, the unjust enrichment claim asserted in the present action derives from, and is founded on, the separate and distinct claims of individual class members. The plaintiff and individual class members were not defrauded as a group and did not overpay as a group.   Moreover, they do not seek disgorgement of any specific, identifiable fund.  Instead, like the class members in *Gattegno,* each member engaged in separate, distinct and individual purchases of a consumer product, each was entitled to sue defendant separately, and each can only recover to the extent of his or her loss.   As the Ninth Circuit Court of Appeals has recognized: "despite its cloak of collectiveness, the plaintiff's disgorgement claim was not aggregable for jurisdictional purposes because 'the claim remains one on behalf of separate individuals for damage suffered by each due to the alleged conduct of defendant.'" *In re Ford Motor Co.,* 264 F.3d at 961, quoting *Gilman*, 104 F.3d at 1427.  *Accord: McCoy,*147 F.Supp.2d at 490 (defendant's difficulty in opposing remand is "that each class member's claim arises from his or her own separate contractual relationship with [defendant]"); *Campbell v. General Motors Corp.*; 19 F. Supp.2d. 1260, 1268 (N.D.Ala. 1998)("unjust enrichment remedies do not provide a generalized recovery of a fixed fund for the class; [e]ach plaintiff is entitled to defendants' profits which resulted from the wrongdoing to that particular plaintiff").

16

Defendant relies primarily if not exclusively, on the *Berman* case.  However, this decision is hardly apposite to the case at bar.  *Berman* involved claims brought by a group of horse owners against various racetracks for payment of monies allegedly due under "purse agreements."  These particular contracts provided for compensation to be paid annually, in the aggregate, "to the *group* of owners whose horses win purses." I*d.* at 313 (emphases added).  Thus, "[n]o contractual rights [were] created between the defendants and individual pursewinners."  *Id.* at 315.   Indeed, even though the case was filed as a purported class action, the court found it to be "analogous to a shareholder's derivative action or a suit against a trustee in which the sum, if recovered, would be paid into a corporate treasury or trust estate for later proportional distribution." *Id.  Berman* therefore bears little, if any, resemblance to the facts of the case at bar, where the rights sought to be vindicated belong to individual class members, not a discrete group or entity.  *See Gattegno,* 297 F.Supp.2d at 378 (distinguishing *Berman*); *Gilman,* 104 F.3d at 1427 (same); *Bishop v. General Motors Corp.*, 925 F. Supp. 294, 298 (D.N.J. 1996) (noting that the "paradigm cases" allowing aggregation of claims "are those  which involve a single individual res, such as an estate, a piece of property (the classic example) or an insurance policy . . . [t]hese are matters that cannot be adjudicated without implicating the rights of everyone involved with the res").

Nor is defendant helped by the cases set forth in paragraph 31 of its NOR.   Both *Aetna U.S. Healthcare, Inc. v. Aktiengesellschaft*, 48 F. Supp.2d 37 (D.D.C. 1999) and *In re Cardizem CD Antitrust Litigation,* 90 F.Supp.2d 819, 828-29 (E.D.Mich. 1999) are distinguishable because the plaintiffs there sought disgorgement of a specific, identifiable fund.  Moreover, a contemporaneous

17

decision of the United States District Court for the District of Kansas which involved an identical

claim - *Aetna U.S. Healthcare, Inc. v. Aktiengesellschaft*, 54 F. Supp. 2d 1042 (D. Kan. 1999) -

expressly rejected the rationale of these cases.   The  Kansas court held that because the

disgorgement cause of action was based on individual overpayment claims, and not upon a

collective claim, damages could not be aggregated for purposes of satisfying the jurisdictional

amount, reasoning as follows:

> The court respectfully declines to follow those holdings which have
> found that plaintiffs assert a common and undivided interest.  The fact
> that plaintiffs seek  disgorgement of the entire fund is not dispositive
> of the issue.  The proper focus should not be upon the type of relief
> that plaintiffs seek, but rather upon the nature and value of the rights
> that they have asserted.' (citations omitted)

*Id.* at 1049.   In *Microsoft Corp. Antitrust Litigation,* 127 F.Supp.2d 702, 720-21 (D.Md. 2001), the

court ruled that some of the "disgorgement" cases before it were properly removed only because the

disgorgement claims were "in addition to [plaintiffs'] claims for damages, and [plaintiffs] have not

disavowed their entitlement to that remedy under the substantive state laws giving rise to their

causes of action."  127 F.Supp.2d at 720-21.  Here, by contrast, plaintiff's unjust enrichment claim

is in fact a damage claim, and plaintiff has disavowed any right in her individual capacity to

disgorgement of monies on behalf of individual class members.  And, in *Hughes Construction Co.*

*v. Rheem Manufacturing Co.,* 487 F.Supp. 345, 350-351 (S.D.Miss. 1980), the court denied

plaintiff's motion to remand because plaintiff was proceeding on the basis of a particular section of

the Mississippi code which expressly authorized the recovery of "a fund for the common benefit."

487 F.Supp. at 350.  *Hughes* is thus not unlike *Berman* in standing only for the proposition, not

harmful to plaintiff, that aggregation may be appropriate where a true *group* interest is involved.

Accordingly, it has been demonstrated that this Court does not have diversity jurisdiction over this action on the basis of 28 U.S.C. §1332(a).

## IV.    PURSUANT TO 28 U.S.C. §1447( c), PFIZER SHOULD BE ORDERED TO PAY PLAINTIFFS' COSTS AND ATTORNEYS' FEES

When a case is remanded to state court, 28 U.S.C. § 1447(c) allows a district court to order the payment of "just costs and any actual expenses, including attorney fees incurred as a result of the removal." Whether to award fees on a remand is a "matter for the exercise of the sound discretion of the court." *Gray v. New York Life Ins. Co.*, 906 F. Supp. 628, 631 (N.D. Ala. 1995). *See also Kanter v. Warner-Lambert Co.*, 52 F. Supp. 2d 1126, 1132 (N.D. Cal. 1999). "A significant number of district courts have since 1988 routinely awarded attorneys' fees under §1447(c)." *Gray*, 906 F. Supp. at 631-632 (listing eight cases). "The purpose of such an award is not to punish defendants, but rather to reimburse plaintiffs for unnecessary litigation costs." *Kanter*, 52 F. Supp. 2d at 1132, *citing Moore v. Permanente Medical Group, Inc.*, 981 F. 2d 443, 447 (9th Cir. 1992). *See Garbie v. Daimler Chrysler Corp.*, 211 F.3d 407, 409-411 (7th Cir. 2000)(section 1447(c) "is not a sanctions rule; it is a fee shifting statute, entitling the district court to make whole the victorious party"). Consequently, an award of costs and fees is never contingent on a showing of bad faith on the part of the removing party. *Fardella v. Downey Savings & Loan Assn.*, 2001 WL 492442, at *4 (N.D. Cal. 2001), citing *Moore*, 981 F. 2d at 446-447.

In exercising the court's discretion under §1447(c), "the presumption is in favor of awarding attorneys fees in the event the removal is found to have been improvident and/or the fatal defect in

19

the removal is not of the waivable variety." *Gray*, 906 F. Supp. at 632-633.  That is certainly the case here, where it has been shown that Pfizer's removal of this case was wholly without merit, i.e., contrary to the plain meaning of CAFA and unequivocal case law construing same (including 3 cases in which Pfizer itself was the removing party), and contrary to clear and long-established precedent against the aggregation of individual claims of the type asserted here.  Therefore, plaintiff should not be forced to foot the bill for Pfizer's baseless and irresponsible removal of this case.  The Court should exercise its discretion and require Pfizer to pay plaintiff's costs and attorney fees incurred as a result of this improper removal.

## Conclusion

For all of the reasons set forth herein, plaintiffs' Motion to Remand should be granted and this action remanded forthwith to the Middlesex Superior Court.  The Court should also exercise its discretion under §1447(c) by ordering Pfizer to pay plaintiff's costs and attorney's fees associated with the instant motion.


Dated: April 22, 2005

                                Respectfully submitted,

                                /s/Kenneth D. Quat
                                BBO 408640
                                9 Damonmill Square, Suite 4A-4
                                Concord MA 01742
                                978-369-0848

                                Of Counsel:

20

Lance A. Harke, P.A.
HARKE & CLASBY LLP
155 South Miami Ave., Suite 600
Miami, Florida 33130
 (305) 536-8220

Ben Barnow
BARNOW AND ASSOCIATES, P.C.
One North LaSalle Street, Suite 4600
Chicago, Illinois  60602
312-621-2000