# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SHERRY KWAAK, on behalf of herself and all others similarly situated, )<br>)<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>PFIZER INC., )<br>a Delaware Corporation, )<br>)<br>Defendant. )<br>) | Civil Action No. 05-CV-10591-NMG |

## MEMORANDUM OF LAW OF DEFENDANT PFIZER INC.
## IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

William M. Cowan, Esq., BBO # 566940
Dora Kripapuri, Esq., BBO # 654236
MINTZ, LEVIN, COHN, FERRIS,
    GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA  02111
(617) 542-6000

Thomas A. Smart, Esq. (admitted pro hac vice)
Richard A. De Sevo, Esq. (admitted pro hac vice)
KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
(212) 836-8000

*Attorneys for Defendant Pfizer Inc.*

Dated:  May 6, 2005

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................... 1

I.    THIS COURT HAS JURISDICTION BECAUSE THIS ACTION WAS
      COMMENCED IN THIS COURT AFTER THE EFFECTIVE DATE OF
      CAFA ................................................................................................................... 3

      A.    Decisions Interpreting Amendments to Jurisdictional Statutes Hold that
            the Term "Commenced" Means the Date an Action Is Removed .......................... 3

      B.    Applying CAFA to Cases Commenced in Federal Court After CAFA's
            Date of Enactment Is Consistent with CAFA's Purpose and Legislative
            History ................................................................................................................ 8

      C.    The Decisions Plaintiff Relies on Are Distinguishable or Incorrectly
            Decided .............................................................................................................. 11

II.   THIS COURT ALSO HAS DIVERSITY JURISDICTION OVER THIS
      ACTION BECAUSE PLAINTIFF'S CLAIM FOR DISGORGEMENT OF
      PROFITS SATISFIES THE REQUISITE AMOUNT IN CONTROVERSY ................. 14

III.  PLAINTIFF'S REQUEST FOR AN AWARD OF COSTS IS MERITLESS ................. 19

CONCLUSION ............................................................................................................. 20

REQUEST FOR ORAL ARGUMENT .......................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Abernathy v. Consol. Cab Co.*,
    169 F. Supp. 831 (D. KN 1959)..................................................................... 3, 4

*Aetna Healthcare, Inc. v. Hoechstakiengesellschaft*,
    54 F. Supp.2d 1042 (D. Kan. 1999)............................................................... 18

*Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*,
    48 F. Supp.2d 37 (D.D.C. 1999) .................................................................. 16, 17

*Alexander v. A.P. Green Indus.*,
    44 F. Supp.2d 368 (D. Me. 1999) ................................................................ 19

*Asbury-Casto v. GlaxoSmithKline, Inc.*,
    352 F. Supp.2d 729 (N.D. Va. 2005) ........................................................... 14, 17

*Berman v. Narragansett Racing Assoc.*,
    414 F.2d 311 (1st Cir. 1969)........................................................................ 3, 15, 16,
                                                     17, 19

*Bishop v. Gen. Motors Corp.*,
    925 F. Supp. 294 (D. N.J. 1996) .................................................................. 18

*Campbell v. Gen. Motors Corp.*,
    19 F. Supp.2d 1260 (N.D. Ala. 1998)........................................................... 18

*Casteel v. Great S. Trucking Co.*,
    167 F. Supp. 435 (E.D. TN 1958)................................................................. 3, 5

*Cedillo v. Valcar Enters.*,
    773 F. Supp. 932 (N.D. TX 1991) ............................................................... 3, 5, 7

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994)..................................................................................... 20

*Ciardi v. F. Hoffman-LaRoche, Ltd.*,
    2000 WL 159320 (D. Mass. Feb. 7, 2000) .................................................. 18

*Coventry Sewage Assocs. v. Dworkin Realty Co.*,
    71 F.3d 1 (1st Cir. 1995)............................................................................... 14

*Dickinson v. Zurko*,
    527 U.S. 150 (1999)..................................................................................... 20

**Page(s)**

*Durant v. Servicemaster Co.*,
    147 F. Supp.2d 744 (E.D. Mich. 2001)........................................................... 15, 17

*Eldred v. Ashcroft*,
    537 U.S. 186 (2003)...................................................................................... 11

*Engel v. Trustees of Berwick Acad.*,
    807 F. Supp. 9 (D. Me. 1992) ....................................................................... 3

*Everett v. Verizon Wireless, Inc.*,
    2001 U.S. Dist. LEXIS 25426 (N.D. Ohio Feb. 26, 2001) ............................ 16

*Gabrielle v. Allegro Resorts Hotels*,
    210 F. Supp.2d 62 (D.R.I. 2002).................................................................... 14

*Garcia v. US*,
    469 U.S. 70 (1984)........................................................................................ 11

*Gasper v. Nat'l Tea Co.*,
    1990 U.S. Dist. LEXIS 639 (E.D. LA Jan. 25, 1990)................................... 3, 5

*Gattegno v. Sprint Corp.*,
    297 F. Supp. 372 (D. Mass. 2003) ............................................................... 18

*Gavriles v. Verizon Wireless*,
    194 F. Supp.2d 674 (E.D. Mich. 2002)......................................................... 16

*Gibson v. Chrysler Corp.*,
    1998 WL 646659 (N.D. Cal. 1998) .............................................................. 18

*Gilman v. BHC Sec., Inc.*,
    104 F.3d 1418 (2d Cir. 1997)........................................................................ 17, 18

*Hankins v. Pfizer Inc.*,
    CV 05-1997 ABC (C.D. Cal. March 25, 2005) ............................................ 11

*Hornbuckle v. State Farm Lloyds*,
    385 F.3d 538 (5th Cir. 2004) ........................................................................ 19

*Hughes Constr. Co. v. Rheem Mfg. Co.*,
    487 F. Supp. 345 (S.D. Miss. 1980).............................................................. 16

*Hunt v. Transp. Indem. Ins. Co.*,
    1990 U.S. Dist. LEXIS 16555 (D. Haw. July 30, 1990)................................ 3, 5

*In re Cardizem CD Antitrust Litig.*,
    90 F. Supp.2d 819 (E.D. Mich. 1999)........................................................... 16, 17

**Page(s)**

*In re Ciprofloxacin Hydrochloride Antitrust Litig.*
    166 F. Supp.2d 740 (E.D.N.Y. 2001) ............................................................ 18

*In re Microsoft Corp. Antitrust Litig.,*
    127 F. Supp.2d 702 (D. Md. 2001) ................................................................ 16

*In re Shell Co.,*
    970 F.2d 356 (7th Cir. 1992) ........................................................................ 14

*Ingerson v. Sharp,*
    423 F. Supp. 139 (D. Mass. 1976), *vacated without opinion*, 582 F.2d 1269 (1st Cir.
    1978) ............................................................................................................ 15

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,*
    523 U.S. 26 (1998) ...................................................................................... 20

*Lindsey v. Meisenheimer,*
    1997 U.S. Dist. LEXIS 17784 (D. Kan. Sept. 24, 1997) .............................. 2, 3, 7

*Lorillard v. Pons,*
    434 U.S. 575 (1978) ...................................................................................... 6

*Lorraine Motors, Inc. v. Aetna Cas. & Sur. Co.,*
    166 F. Supp. 319 (E.D.N.Y. 1958) .............................................................. 3, 4

*Lott v. Pfizer Inc.*, 05-cv-0230-MJR (S.D. Ill. Apr. 7, 2005) ................................... 11

*Martin v. Franklin Capital Corp.,*
    No. 04-1140 (U.S. 2005) .............................................................................. 19

*McCoy v. Erie Ins. Co.,*
    147 F. Supp.2d 481 (S.D. W. Va. 2001) ...................................................... 14

*Morrison v. Allstate Indemnity Co.,*
    228 F.3d 1255 (11th Cir. 2000) .................................................................... 18

*NLRB v. Fruit & Veg. Packers & Whsmen.,*
    377 U.S. 58 (1964) ........................................................................................ 11

*Natale v. Pfizer Inc.,*
    Civil Action No. 05-CV-10590-WGY ............................................................ 1

*Payne v. Goodyear Tire & Rubber Co.,*
    229 F. Supp.2d 43 (D. Mass. 2002) ............................................................ 19

*Pritchett v. Office Depot, Inc.,*
    2005 WL 827158 (10th Cir. Apr. 11, 2005) ................................................ 11, 12

**Page(s)**

*Roxbury Condom. Ass'n, Inc. v. Subick,*
    316 F.3d 224 (3d Cir. 2003) ........................................................................ 19

*Smith v. Pfizer Inc.,* 05-cv-0112-MJR (S.D. Ill. March 24, 2005) ........................... 11

*Snyder v. Harris,*
    394 U.S. 332 (1969) .................................................................................... 15

*St. Paul Mercury Indem. Co. v. Red Cab Co.,*
    303 U.S. 283 (1938) .................................................................................... 14

*United States v. Nippon Paper Indus. Co.,*
    109 F.3d 1 (1st Cir. 1997) ............................................................................. 6

*United States v. Southern Pacific Transp. Co.,*
    543 F.2d 676 (9th Cir. 1976) ....................................................................... 19

*Virgin Islands Housing Auth. v. Coastal Gen. Constr. Servs. Corp.,*
    27 F.3d 911 (3d Cir. 1994) .......................................................................... 19

*Weinberger v. Rossi,*
    456 U.S. 25 (1982) ...................................................................................... 11

*Zahn v. Int'l Paper Co.,*
    414 U.S. 291 (1973) .................................................................................... 15

*Zuber v. Allen,*
    396 U.S. 168 (1969) .................................................................................... 11

**Statutes**

28 U.S.C. § 1332(a) ............................................................................... 1, 2, 6, 7

28 U.S.C. § 1453 .............................................................................................. 1

28 U.S.C. § 1367 ....................................................................................... 4, 7, 9

28 U.S.C. § 1446(b) ................................................................................ 1, 11, 13

28 U.S.C. 1447(c) ........................................................................................... 19

Class Action Fairness Act of 2005, P.L. 109-2, 119 Stat. 4 ...................................... *passim*

P.L. 85-554, § 9 ............................................................................................... 4

P.L. 99-336, § 3(b), 100 Stat. 633 (June 19, 1986) ................................................. 5

**Page(s)**

P.L. 101-650, title III, § 310(c) ...................................................................... 4

**Other Authorities**

H.R. Rep. 108-44 ............................................................................................ 9, 10

S. Rep. 108-123 .............................................................................................. 9, 10

## PRELIMINARY STATEMENT

This action seeks certification of a class of Massachusetts consumers consisting of "[a]ll individuals who purchased Listerine for consumption and not resale in the Commonwealth of Massachusetts after June 1, 2004, up to and including the present." (First Amended Complaint ("FAC") ¶ 7). Plaintiff filed her original complaint on January 13, 2005, but never served it. It was not until March 2 that she filed her first amended complaint. Two days later, she served the summons and complaint. In short, for all practical purposes, this case did not exist until March.

In her first amended complaint, plaintiff asserts two claims for relief – unjust enrichment and alleged violation of Section 2(a) of the Massachusetts Consumer Protection Act, G.L.C. 93A § 2(a). In particular, plaintiff alleges that Pfizer's advertising was false and misleading in claiming that Listerine was "as effective as floss . . . against plaque and gingivitis between the teeth" – a claim that was approved by the American Dental Association. (FAC ¶¶ 22-50). On behalf of herself and the proposed class members, plaintiff seeks, *inter alia*: "disgorgement of the amount by which Pfizer has been unjustly enriched" – *i.e.*, "disgorgement of profits." (*Id*. ¶ 73, Ad Damnum Clause; Plaintiff's Memorandum in Support of Motion to Remand ("Pl. Mem.") p. 1).

On March 25, 2005, Pfizer removed this action to this Court, thus satisfying the requirement of 28 U.S.C. § 1446(b) that the notice of removal be filed within 30 days of the service of the complaint.[1] Pfizer removed the action on two separate and independent grounds. First, there is diversity jurisdiction over this putative class action pursuant to the provisions of the Class Action Fairness Act of 2005, P.L. 109-2, 119 Stat. 4 ("CAFA"or the "Act"), codified at

---

[1] On the same day, Pfizer also removed to this Court a related case, *Natale v. Pfizer Inc.*, Civil Action No. 05-CV-10590-WGY, which makes allegations similar to those asserted in this action and is pending before Chief Judge Young. On April 12, Pfizer filed a motion to reassign *Kwaak* to Judge Young.

28 U.S.C. §§ 1332(d), 1453.  Second, there is diversity jurisdiction pursuant to 28 U.S.C.

§ 1332(a) because: (1) there is complete diversity of citizenship between the named plaintiff and

Pfizer, the only defendant; and (2) plaintiff's request for relief in the form of disgorgement is a

"common and undivided interest" in excess of $75,000, exclusive of interest and costs.

 With respect to Pfizer's removal under CAFA, plaintiff does not dispute that each of the

Act's requirements is satisfied.[2]  Rather, plaintiff asserts the case should be remanded because,

she claims, CAFA only applies to actions that were filed in state court on or after February 18,

2005, the "date of enactment" of CAFA.  CAFA § 9.  Section 9 of CAFA provides that "[t]he

amendments made by this Act shall apply to any civil action commenced on or after the date of

enactment of this Act."  Plaintiff asserts that it is "crystal-clear" (Pl. Mem. 6) that an action is

"commenced" under CAFA when it is filed in state court.  However, in interpreting similar pro-

visions in jurisdictional statutes in which Congress either narrowed *or* expanded federal jurisdic-

tion, "a *clear majority* of courts [have] held that a court must look to the date of removal, not the

date that the plaintiff filed his original petition."  *Lindsey v. Meisenheimer*, 1997 U.S. Dist.

LEXIS 17784, *3 (D. Kan. Sept. 24, 1997) (emphasis added).

 As demonstrated below, interpreting "commenced" in CAFA to refer to the date on

which the action was commenced by removal to federal court is not only supported by the case

law, but would best effectuate the express "purpose" of CAFA – to "restore the intent of the

framers of the United States Constitution by providing for Federal court consideration of inter-

state cases of national importance under diversity jurisdiction."  CAFA § 2(b)(2).  Construing

---

[2] (1) The putative class action consists of at least 100 proposed class members; (2) the citi-
zenship of at least one proposed class member is different from that of Pfizer, the only
defendant; and (3) the matter in controversy, after aggregating the claims of the proposed
class members, exceeds $5 million, exclusive of interest and costs.  CAFA § 4(a).

"commenced" in jurisdictional statutes to refer to the date of removal, regardless of whether the statutes expand or limit federal jurisdiction, is consistent with Congressional intent to expand or limit federal jurisdiction as the case may be.  Simply put, plaintiff's position – that the word "commenced" should be interpreted one way when Congress restricts federal jurisdiction and in directly the opposite way when Congress expands jurisdiction – is untenable and illogical.

In response to the second, and independent, ground for removal, plaintiff asserts that her claim for disgorgement of all of Pfizer's profits is separate and distinct for each class member. To the contrary, under the First Circuit's decision in *Berman v. Narragansett Racing Assoc.*, 414 F.2d 311, 315 (1st Cir. 1969), and as numerous courts have held, a claim for all of a defendant's profits is, in fact, a common and undivided interest unhinged from the number of class members.

**I.    THIS COURT HAS JURISDICTION BECAUSE THIS ACTION WAS <u>COMMENCED IN THIS COURT AFTER THE EFFECTIVE DATE OF CAFA</u>**

**A.    Decisions Interpreting Amendments to Jurisdictional Statutes Hold <u>that the Term "Commenced" Means the Date an Action Is Removed</u>**

"[A] clear majority of courts [have] held that a court must look to the date of removal, not the date that the plaintiff filed his original petition, to determine the requisite jurisdictional amount." *Lindsey v. Meisenheimer*, 1997 U.S. Dist. LEXIS 17784, *3 (D. Kan. Sept. 24, 1997). In particular, the courts have held that a jurisdictional statute, applicable only to actions "commenced on or after" the effective date, applies to actions removed to federal court after the effective date, even though the action was filed in state court before the effective date.[3]

---

[3]    *E.g., Cedillo v. Valcar Enters.*, 773 F. Supp. 932 (N.D. TX 1991); *Lorraine Motors, Inc. v. Aetna Cas. & Sur. Co.*, 166 F. Supp. 319 (E.D.N.Y. 1958); *Abernathy v. Consol. Cab Co.*, 169 F. Supp. 831 (D. KN 1959); *Casteel v. Great S. Trucking Co.*, 167 F. Supp. 435 (E.D. TN 1958); *Hunt v. Transp. Indem. Ins. Co.*, 1990 U.S. Dist. LEXIS 16555 (D. Haw. July 30, 1990); *Gasper v. Nat'l Tea Co.*, 1990 U.S. Dist. LEXIS 639, *2-3 (E.D. LA Jan. 25, 1990); *cf. Engel v. Trustees of Berwick Acad.*, 807 F. Supp. 9, 10 n.2 (D. Me. 1992).

In *Cedillo*, the court held that the term "commenced" should be read as commenced in federal court – rather than state court – "because the pertinent time for determining federal jurisdiction is the date on which such jurisdiction is invoked." 773 F. Supp. at 939. The court there expressly addressed an issue virtually identical to the one this removal presents; namely, whether a statute expanding federal jurisdiction – the Supplemental Jurisdiction statute (28 U.S.C. § 1367) – applies to an action filed in state court before the statute's effective date, but removed after the effective date. As here, § 1367 provided that it applied only to "actions *commenced* on or after" the effective date. P.L. 101-650, title III, § 310(c) (emphasis added). In denying remand, the *Cedillo* court held that the new statute was "fully applicable" to the removed action because the date on which federal jurisdiction was first "invoked" was after the effective date of the statute, and, thus, the action was "commenced" after the effective date. 773 F. Supp. at 939.

Similarly, in *Lorraine Motors*, the court expressly considered whether an amendment to the federal jurisdiction statute (increasing the minimum jurisdictional amount from $3,000 to $10,000) – which, as here, applied only to "actions *commenced* on or after the date of the enactment" (P.L. 85-554, § 9; emphasis added) – applied to an action filed in state court before the effective date and removed to federal court after the effective date. The court held that the term "commenced" means "actions commenced in the [federal] District Court whether by original jurisdiction or by removal" on or after the effective date, and thus the new jurisdictional provision applied to the action. 166 F. Supp. at 323.

In *Abernathy*, the court considered the identical question. Citing *Lorraine Motors* with approval, the court held that it "must rule" that an action removed to federal court after the date of enactment of an amendment to the jurisdictional statute was "'commenced' after the date of the enactment," and the new provisions thus applied to the removed action. 169 F. Supp. at 834.

The court in *Casteel* also considered the same question. Holding that "commenced" "means 'commenced in the federal court,'" the court stated, relying on the principle set forth in a leading treatise, that "the law in effect at the time of the application to remove controls." 167 F. Supp. at 436 (citing 76 C.J.S. Removal of Causes § 2); *accord*, *Hunt*, 1990 U.S. Dist. LEXIS 16555, *14 (action "commenced" when removed to federal court and new minimum amount in controversy requirement applied); *Gasper*, 1990 U.S. Dist. LEXIS 639, *2-3 (same).

As in *Cedillo*, *Lorraine Motors*, *Abernathy*, *Casteel*, *Hunt* and *Gasper*, in determining when the instant action was "commenced" for purposes of the applicability of CAFA (expanding the scope of federal jurisdiction), the relevant date is the first time federal "jurisdiction is invoked." *Cedillo*, 773 F. Supp. at 939. CAFA is "fully applicable," *id.*, to this action because federal jurisdiction was first invoked on March 25, and thus the action was "commenced" in federal court after the effective date of the Act, February 18.

Confirming that "commenced" means the date on which an action is removed to federal court is that when Congress has intended that a removal statute apply only to cases "commenced" in state court after the statute's effective date, it has explicitly said so. Thus, in 1986, when Congress amended the removal statute to permit removal of an entire action that contains state law claims and a separate and independent federal law claim, Congress provided that the amendment would "apply with respect to claims in civil actions commenced *in State courts* on or after the date of the enactment." P.L. 99-336, § 3(b), 100 Stat. 633 (June 19, 1986) (emphasis added). Because Congress did not expressly include the limiting language "in State courts" in CAFA, CAFA applies to actions filed in state court prior to the effective date, but removed to (and thus "commenced" in) federal court on or after the effective date.

That Congress intended "commenced" to mean the date of removal is further confirmed

by the Commentary in the United States Code Annotated to the 1988 amendment to 28 U.S.C. § 1332, which raised the jurisdictional minimum to $50,000. The Commentary explicitly states – citing *Lorraine Motors* – that the "sounder" view is that "the moment that counts in removal situations is the moment of removal to federal court, not commencement in state court." It is a black letter rule of statutory construction that "Congress is presumed to be aware of . . . judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Lorillard v. Pons*, 434 U.S. 575, 580 (1978). By a parity of reasoning, it must be presumed that Congress was aware that a clear majority of courts had interpreted "commenced" with respect to several amendments of jurisdictional statutes to mean the date the action was commenced in federal court upon the filing of the notice of removal when Congress used virtually identical language in CAFA. Surely, if Congress had meant for "commenced" to mean something different in CAFA, it would have said so. *Cf. United States v. Nippon Paper Indus. Co.*, 109 F.3d 1, 4-5 (1st Cir. 1997) (It is a "'basic cannon of statutory construction" that "identical words or terms used in different parts of the same act are intended to have the same meaning.").

Unable to distinguish this overwhelming body of case law and commentary, plaintiff for the most part ignores it or presents distinctions without any legal or logical significance. Thus, plaintiff asserts that *Lorraine Motors* and *Hunt* are distinguishable because "they dealt with a completely different statutory provision." (Pl. Mem. 10). But both CAFA and the statutes at issue in *Lorraine Motors* and *Hunt* contained the identical key operative language – "commenced on or after the date of enactment." Plaintiff also argues, citing two cases, that the "persuasive value" of *Lorraine Motors* and *Hunt* is "diluted" because there was "contemporaneous contrary authority." The fact remains, however, that *Lorraine Motors* and *Hunt* are consistent with the "clear majority" of courts that have addressed the issue and, according to the Commen-

tary in U.S.C.A., are the "sounder" view. *Lindsey*, 1997 U.S. Dist. LEXIS 17784, at *3; Commentary in U.S.C.A. to 1988 amendment to 28 U.S.C. § 1332.

Turning to *Cedillo*, plaintiff asserts that the decision is somehow faulty because it states without citation that "[t]he statute applies to the present case because the pertinent time for determining federal jurisdiction is the date on which such jurisdiction is invoked." (Pl. Mem. 11). It is, however, hardly a ground for criticism that a court makes a statement of law that is consistent with the "clear majority" of courts that have addressed the issue and that the U.S.C.A. Commentary states is the "sounder" view. Plaintiff also speculates that it is "possible" that the *Cedillo* court "may have found federal jurisdiction . . . under the prior governing principles of pendent jurisdiction" and analyzed the jurisdictional issue under these principles and not under § 1367. *Id.* However, the *Cedillo* court expressly stated that it was "[a]nalyzing the removal question in terms of § 1367," so plaintiff's speculation is simply wrong. 773 F. Supp. at 939.

That the term "commenced" means the date on which the action is commenced in federal court rather than in state court is confirmed by the fact that this interpretation effectuates Congress' intent – whether that intent is to narrow or expand jurisdiction – a point that Pfizer made previously and that plaintiff pointedly ignores. (*See* Notice of Removal ("NR") ¶¶ 17-19, 23, Notice of Additional Authority ("NAA") p. 4). Thus, when – as in *Lorraine Motors*, *Abernathy*, *Casteel*, *Hunt* and *Gasper* – Congress enacts a statute *narrowing* federal jurisdiction, determining the right to remove as of the time the action is commenced in federal court through removal would result in *fewer* cases being eligible for removal to federal court, just as Congress intended. Similarly, when – as in *Cedillo* (interpreting "commencement" as applied to 28 U.S.C. § 1367's expansion of jurisdiction) and CAFA – Congress enacts a statute *expanding* federal jurisdiction, determining the right to remove as of the time the action is commenced in federal court through

removal would result in *more* cases being eligible for removal to federal court, just as Congress intended.  By contrast, construing the term "commenced" for removed cases to refer to the date of filing in state court would result in *more* cases being eligible for removal when Congress *limits* federal jurisdiction, and *fewer* cases being eligible for removal when Congress *expands* federal jurisdiction.  Congress could not have intended such a paradoxical result.

For example, if Congress narrows federal jurisdiction by increasing the amount in controversy and the term "commenced" were interpreted to mean the date of filing in state court, then a case that was filed in state court before enactment of the statute could be removed even though on the date of removal the action did not satisfy the newly increased amount in controversy.  This would be directly contrary to Congress' intent to narrow federal jurisdiction.  By the same token, if Congress expands federal jurisdiction by lowering jurisdictional requirements and the term "commenced" were interpreted to mean the date of filing in state court, the action could not be removed then even though at the time of removal the case satisfied the newly enacted jurisdictional requirements.  Interpreting "commenced" in this manner would be contrary to Congress' intent to expand federal jurisdiction.

**B.** **Applying CAFA to Cases Commenced in Federal Court After CAFA's Date of Enactment Is Consistent with CAFA's Purpose and Legislative History**

Applying CAFA to cases in which federal jurisdiction is invoked on or after the Act's date of enactment is consistent with the Act's express "purpose":  to "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction."  CAFA § 2(b)(2).  Numerous CAFA provisions indicate an intent by Congress to expand federal jurisdiction and to encourage removal.  For example, (i) removal is permitted even though there is only minimal diversity, whereas before complete diversity was required (*id.* § 4(a)); (ii) removal is permitted even if

only one defendant removes, whereas before all defendants had to consent to removal (*id.* § 5(a)); (iii) the requisite amount in controversy can be satisfied by aggregating the claims of plaintiffs and putative class members, even though before aggregation was not permitted (*id.* § 4(a)); and (iv) an order remanding an action for lack of jurisdiction may be appealed, whereas before it could not (*id.* § 5(a)).

The Act's legislative history also reflects that the purpose of the Act was to "*encourage* the exercise of federal jurisdiction over class actions." S. Rep. 108-123 at 45 (emphasis added). Thus, for example, both the House and Senate Judiciary Committees stated that it was their "intention with regard to each . . . exception[]" in CAFA "that the party opposing federal jurisdiction shall have the burden of demonstrating the applicability of an exemption." (*Id.* at 45; H.R. Rep. 108-144 at 38). Similarly, the Committees stated that the requirement of an *aggregate* amount in controversy of $5 million was "intended to expand substantially federal court jurisdiction over class actions," that this "provision[] should be read broadly, with a strong preference that interstate class actions be heard in a federal court," and that "the definition of 'class action' is to be interpreted liberally." (S. Rep. 108-123 at 44, 48; H.R. Rep. 108-144 at 37). In addition, the Committees stated that "any factual assessments underlying the district court's jurisdictional determination" should be reviewed "de novo" on any appeal. (S. Rep. 108-123 at 50; H.R. Rep. 108-144 at 43). The Senate Report also rejected the notion that there should be "a presumption that a plaintiff chooses his or her own court." (S. Rep. 108-123 at 57). Rather, "the whole purpose of diversity jurisdiction is to preclude any such presumption by allowing state-law based claims to be removed from local courts to federal courts, so as to ensure that all parties can litigate on a level playing field and thereby protect interstate commerce interests." *Id.* In short, as both Committees explained, "the real harm to federalism is the status quo – leaving the bulk of

class action cases in state court."  (S. Rep. 108-123 at 59; H.R. Rep. 108-144 at 26).

Given this overwhelming legislative history, plaintiff's reliance on cases stating that removal statutes should "be strictly construed and that any doubts about the propriety of removal are to be resolved against the removal of an action" (Pl. Mem. 5) is totally misplaced and directly contrary to the "primary purpose of the bill – to allow the removal of more interstate class actions to federal courts, where they are more appropriately heard."  (S. Rep. 108-123 at 64; *see* H.R. Rep. 108-144 at 47).  The assertions by the Committees' dissenters that CAFA "represents a radical revision of . . . diversity jurisdiction requirements" and a "dramatic intrusion into state court prerogatives" (S. Rep. 108-123 at 73, 75; H.R. Rep. 108-144 at 78) are, although somewhat hyperbolic, a persuasive acknowledgment that Congress meant CAFA to be a distinct break with the past – not, as plaintiff would have it, an affirmation of the anti-removal and anti-diversity jurisdiction views espoused in prior case law.

Ignoring all of this legislative history and the express purpose of CAFA to expand diversity jurisdiction, plaintiff points to the fact that Congress eliminated a provision in earlier versions of CAFA that would have permitted the application of CAFA to *all* state court actions in which a class certification order had been entered on or after the date of the statute's enactment. (Pl. Mem. 7).  But all that means is that Congress did not want CAFA to apply to actions that had been pending in state court for months – or years.  It says nothing about what the term "commenced" means with respect to the effective date of the Act.  As for the scattered comments during floor debates to which plaintiff refers, not only do the comments not address the meaning of "commenced," but the law is clear that such statements – particularly those of Congressmen

opposed to the legislation – are entitled to little, if any, weight.[4]

In short, to construe "commenced" as anything other than "commenced in federal court" so as to preclude federal jurisdiction over this action would be contrary to Congress' intent to expand the number of cases (and, in particular, class actions) subject to federal jurisdiction.

### C.    The Decisions Plaintiff Relies on Are Distinguishable or Incorrectly Decided

The decisions on which plaintiff relies are distinguishable or, as we explained earlier (NR ¶¶ 21-23,  NAA pp. 1-4), incorrectly decided.[5]  Thus, the Court's decision in *Pritchett* is not controlling and is easily distinguishable on its facts.  To begin with, in contravention of 28 U.S.C. § 1446(b)'s requirement that an action be removed within 30 days of service of the complaint, the defendant removed the action almost *two years* after service, and, indeed, after the June 2004 certification of a class in the state court and just one month before trial.  2005 WL 827158, at *1. That is, the defendant attempted to apply CAFA retroactively to revive a right to remove that had expired years earlier.  By contrast, here, the Act is only being applied prospectively to an action commenced in federal court after the effective date *and* which Pfizer *timely* removed within 30 days of service of the complaint, as required by 28 U.S.C. § 1446(b).  Accordingly, there is no

---

[4]    *See Garcia v. US*, 469 U.S. 70, 76 (1984) ("'In surveying legislative history, we have repeatedly stated that the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill,'" and have "eschewed reliance on the passing comments of one Member, and casual statements from the floor debates") (quoting *Zuber v. Allen*, 396 U.S. 168, 186 (1969); citing *Weinberger v. Rossi*, 456 U.S. 25, 35 (1982)); *Eldred v. Ashcroft*, 537 U.S. 186, 210 n.16 (2003).  *See also NLRB v. Fruit & Veg. Packers & Whsmen.*, 377 U.S. 58, 66 (1964) ("we have often cautioned against the danger, when interpreting a statute, of reliance upon the views of its legislative opponents").

[5]    *See Pritchett v. Office Depot, Inc.*, 2005 WL 827158 (10th Cir. Apr. 11, 2005) (NAA Ex. D); *Hankins v. Pfizer Inc.*, CV 05-1797 ABC (C.D. Cal. March 25, 2005) (NAA Ex. A); *Smith v. Pfizer Inc.*, 05-cv-0112-MJR (S.D. Ill. March 24, 2005) (NAA Ex. B), *Lott v. Pfizer Inc.*, 05-cv-0230-MJR (S.D. Ill. Apr. 7, 2005) (NAA Ex. C).  *Smith* and *Lott* were decided by the same judge.

risk of disrupting cases where a class has already been certified or is about to go to trial. For example, here, there has been no activity other than plaintiff's filing of the complaint and Pfizer's removal of this action to federal court.

In short, the *Pritchett* court's concern that "[d]efendant's argument, if accepted, could have serious consequences for both the federal judiciary and our colleagues on the state bench" is inapplicable. 2005 WL 827158, *4. Unlike the defendant in *Pritchett*, Pfizer is arguing – consistent with § 1446(b) and the majority of courts that have addressed the issue in connection with similar statutory amendments – that CAFA permits the removal of *only* those actions that are removed to (and hence commenced in) federal court (i) after CAFA's effective date *and* (ii) within 30 days of service of the complaint. This is a very narrow group of cases whose removal will not have the dire consequences that the *Pritchett* court predicted if CAFA permitted all pending actions, regardless of when the complaint was served, to be removed.

The court in *Pritchett* also was mistaken in ignoring the significance of Congress' intent in CAFA, as was the case in *Cedillo*, to *expand* federal jurisdiction. Holding that CAFA applies to actions filed in federal court *provided* that the 30-day rule of § 1446(b) is satisfied, will effectuate Congress' intent to expand federal jurisdiction. In relying on the presumption that "statutes conferring jurisdiction upon the federal courts, and particularly removal statutes, are to be narrowly construed" (2005 WL 827158, at *3), the court in *Pritchett* acted directly contrary to Congress' stated intent to *expand* federal jurisdiction in order to "restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction." CAFA § 2(b)(2). (*See* pp. 5-8, *supra*).

Turning to *Hankins*, in remanding the case the court opined that CAFA applied only to actions that were commenced in state court before the date of CAFA's enactment. Without

addressing any of the other cases Pfizer cited in its notice of removal, the court distinguished *Hunt* "because of the Ninth Circuit's clear preference for construction of removal statutes against removal." (NAA Ex. A p. 2). The court went on to say that it "would construe CAFA against removal such that the date of filing in state court controls, given the strong presumption against removal." *Id*. at 3. This was clear error because, as noted above, Congress' intent in enacting CAFA was "to *encourage* the exercise of federal jurisdiction over class actions." S. Rep. 108-123 at 45 (emphasis added). Thus, Congress' intent here is directly contrary to its intent in enacting the statute at issue in *Hunt*, which *restricted* federal jurisdiction by *increasing* the minimum amount in controversy necessary for federal jurisdiction.

The decision in *Smith* (and *Lott* and *Pritchett*) suffers from similar defects. As in *Hankins*, the court concluded – correctly – that CAFA was "never intended to apply retroactively." (NAA Ex. B p. 10). However, it then reasoned that this necessarily meant that CAFA's provision that the Act applies to actions "commenced on or after the date of enactment of this Act" means that CAFA does not apply to actions removed to federal court after the Act's enactment even though they were removed within 30 days of the complaint's service. That is, the court treated the issue as an all or nothing choice – either all cases filed in state court prior to CAFA's enactment could be removed or none of them could be removed. But, as noted earlier, CAFA has two separate requirements for timely removal: (1) that the action was filed in federal court – *i.e.*, "commenced" – "on or after the date of enactment" of CAFA and (2) that the action was removed within 30 days of service of the complaint, as required by 28 U.S.C. § 1446(b). Removal of actions after CAFA's enactment but within 30 days of the complaint's service, is a prospective application of CAFA to that narrow category of actions whose time for removal had not yet expired as of CAFA's effective date.

Here, as required by §1446(b), Pfizer timely removed this action from state court within 30 days of the complaint's service, and it did so after enactment of CAFA, as required by § 9 of the Act. Accordingly, this Court has subject matter jurisdiction over this action under CAFA.

## II.    THIS COURT ALSO HAS DIVERSITY JURISDICTION OVER THIS ACTION BECAUSE PLAINTIFF'S CLAIM FOR DISGORGEMENT OF PROFITS SATISFIES THE REQUISITE AMOUNT IN CONTROVERSY

Plaintiff alleges that the proposed class is entitled to "disgorgement of the amount by which Pfizer has been unjustly enriched," and that Pfizer "sold millions of dollars" of Listerine. (FAC ¶¶ 3, 73).[6] Plaintiff does not dispute that the disgorgement she seeks exceeds $75,000, exclusive of interest and costs. Nevertheless, she argues, the requisite amount in controversy is not satisfied because, she contends, her disgorgement request is not a claim for a common and undivided interest in Pfizer's profits. The case law in this and other circuits is to the contrary.[7]

---

[6]    Pfizer does not agree that Massachusetts law provides for disgorgement of all of its profits under any theory of unjust enrichment and, thus, does not concede that the named plaintiff or any putative class member can obtain disgorgement of the full amount sought here under any theory, or that plaintiff has stated a valid claim for relief for disgorgement of any amount. However, the plaintiff's "claim, whether well or ill founded in fact, fixes the right of the defendant to remove." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938).

[7]    Plaintiff's attorneys confirm the common and undivided interest nature of the disgorgement sought here by stating that plaintiff is seeking "disgorgement of monies paid by class members . . . only in her capacity as class representative." (Pl. Mem. 12 n.7). They further state that she "disavows any individual claim for disgorgement of monies resulting from . . . purchases . . . by any other class member." (*Id.*). Significantly, however, plaintiff does *not* disavow that, on behalf of the class, she seeks *all* of Pfizer's profits regardless of how many class members bother to file claims; nor has she filed – in the words of one of the cases on which she relies – a "formal, truly binding, pre-removal stipulation signed by counsel and his client explicitly limiting recovery." *McCoy v. Erie Ins. Co.*, 147 F. Supp.2d 481, 485-86 (S.D. W. Va. 2001). *Accord, e.g., St. Paul*, 303 U.S. at 292; *Coventry Sewage Assocs. v. Dworkin Realty Co.*, 71 F.3d 1, 5 (1st Cir. 1995); *Gabrielle v. Allegro Resorts Hotels*, 210 F. Supp.2d 62, 66 (D.R.I. 2002); *In re Shell Co.*, 970 F. 2d 356, 356 (7th Cir. 1992); *Asbury-Casto v. GlaxoSmithKline, Inc.*, 352 F. Supp.2d 729, 733 (N.D. Va. 2005).

It is well settled that where, based on the plaintiff's allegations, putative class members

"'unite to enforce a single title or right, in which they have a common and undivided interest, it

is enough if their interests collectively equal the jurisdictional amount.'" *Zahn v. Int'l Paper

Co.*, 414 U.S. 291, 294 (1973). *Accord, Snyder v. Harris*, 394 U.S. 332, 335 (1969).

In *Berman v. Narragansett Racing Assoc.*, 414 F.2d 311, 315 (1st Cir. 1969), the First

Circuit held that jurisdiction existed because the entire amount of the "common and undivided"

interest asserted by a putative class is considered in determining whether the jurisdictional mini-

mum is satisfied. At issue were claims brought by purse winners at race tracks who claimed they

were entitled as a group to 44.7% of the money wagered at the track. Because each plaintiff was

not asserting a claim to any specific percentage of the sum wagered at the tracks, but, rather, an

"integrated right against the defendant" such that by "any formula that is finally adopted, defen-

dant['s] liability is the same," the plaintiffs had a "common and undivided interest" in the relief

sought. *Id*. at 315-16. As Judge Skinner, citing *Berman*, later explained:

> The First Circuit has adopted a "trust fund" theory of aggregation,
> under which several plaintiffs need not hold their claims jointly so
> long as they assert "an integrated right against the defendant." An
> important element of the approach is that the defendants' total lia-
> bility remain the same no matter how the 'fund' is apportioned.
> (*Ingerson v. Sharp*, 423 F. Supp. 139, 142 n.2 (D. Mass. 1976,
> *vacated without opinion*, 582 F.2d 1269 (1st Cir. 1978)).

Other precedents confirm that a claim for disgorgement of profits in excess of the juris-

dictional amount in a putative class action satisfies the requisite amount in controversy. In *Dur-

ant v. Servicemaster Co.*, 147 F. Supp.2d 744, 749-51 (E.D. Mich. 2001), the court denied

remand in a putative class action asserting an unjust enrichment claim for disgorgement of

amounts collected from an allegedly wrongful surcharge imposed on customers. "It seems from

the face of the complaint . . . that, unless all [putative class members] join in the action, once all

class Plaintiffs have recovered compensatory damages, there would still be monies left in the unjust-enrichment fund." *Id*. at 749. Thus, under "any formula . . . defendant['s] liability is the same," which is the test the First Circuit's test set forth in *Berman* for a "common and undivided interest." 414 F. 2d at 316. Similarly, the court in *Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft*, 48 F. Supp.2d 37, 41 (D.D.C. 1999), denied remand where the class sought disgorgement of defendants' "profits derived from their illegal . . . activities."

Acknowledging that "cases that include a claim for disgorgement have been properly removed," the court in *In re Microsoft Corp. Antitrust Litig.*, 127 F. Supp.2d 702, 720-21 (D. Md. 2001), denied remand in a putative class action seeking disgorgement of allegedly wrongfully obtained amounts from customers. The court explained that the remedy of restitution "'measures the remedy by the defendants' gains and seeks to force disgorgement of that gain [and] differs in its goal or principle from damages, which measures the remedy by the plaintiff's loss and seeks to provide compensation for that loss.'" *Id*. at 720. *Accord*, *In re Cardizem CD Antitrust Litig*., 90 F. Supp.2d 819, 828-29 (E.D. Mich. 1999) (denying remand in putative class actions seeking disgorgement and restitution); *Hughes Constr. Co. v. Rheem Mfg. Co.,* 487 F. Supp. 345, 350-351 (S.D. Miss. 1980) (same); *Everett v. Verizon Wireless, Inc.*, 2001 U.S. Dist. LEXIS 25426, *9-11 (N.D. Ohio Feb. 26, 2001) (same).

Also instructive is *Gavriles v. Verizon Wireless*, 194 F. Supp.2d 674 (E.D. Mich. 2002). In remanding the case because "there is *no* allegation of unjust enrichment or restitution or disgorgement," the court explained why a disgorgement claim is a claim of a common and undivided interest in the defendant's profits:

> Disgorgement is an equitable remedy to force defendant to give up the amount equal to the defendant's unjust enrichment. . . . A claim for disgorgement, if successful, results in a pool of money available for the plaintiffs. The proceeds from disgorgement are not

directly related to each plaintiff's actual damages and would be
distributed to plaintiffs who remained a party to the action. (*Id*. at
681-82).

Each of the cases cited above cites *Zahn* and relies on the principle as stated in *Zahn* that
where the putative class members share a "common and undivided interest" in the relief sought,
the requisite amount in controversy is satisfied. Here, too, the putative class members share a
"common and undivided interest" in the "disgorgement of the amount by which Pfizer has been
unjustly enriched." (FAC ¶ 73). As in *Durant*, all putative class members have a "common and
undivided interest" in Pfizer's profits because "one [class member's] failure to collect his share
would result in a larger share for each remaining [class member]." 147 F. Supp.2d at 750. Thus,
as in *Aetna*, "[i]f any given plaintiff does not collect his, her, or its share, then it does not change
the amount of profits of which defendants must be disgorged," which is an "identifying charac-
teristic of a common and undivided interest." 48 F. Supp.2d at 41. And, as in *Cardizem*, plain-
tiff's claim "is an integrated one," "seeking, on behalf of the putative class as a whole to dis-
gorge" the profits Pfizer earned on Listerine. 90 F. Supp.2d at 825-26. Accordingly, the requi-
site amount in controversy for federal diversity jurisdiction is satisfied.[8]

Plaintiff relies on the Second Circuit's decision in *Gilman v. BHC Sec., Inc*., 104 F.3d
1418 (2d Cir. 1997). (Pl. Mem. 13). In *Durant*, the court distinguished *Gilman* on the ground
that the disgorgement claim in *Gilman* was simply "a means of obtaining money damages spe-
cific to each plaintiff." 147 F. Supp.2d at 750. Similarly, in *Aetna*, the court distinguished *Gil-
man* on the ground that the claim in *Aetna* did not "depend, rely upon, or arise out of the vindica-
tion of individual rights of the putative class members." 48 F. Supp.2d at 42. *Gilman* involved a

---

[8]     *See also Asbury-Casto*, 352 F. Supp.2d at 734 (disgorgement claim supports jurisdiction
      since it "would result in a pecuniary loss to the defendant of greater than $75,000").

disgorgement claim arising from individual "order flow payments" to brokers. Unlike here, the "language" of the complaint expressly alleged that the disgorgement claim was based on an aggregation of each individual "customer's order." *Gilman*, 104 F. 3d at 1426 n.10. Here, plaintiff seeks disgorgement of all of Pfizer's profits, all of which, if plaintiff succeeds, would be distributed among the class members who submit claims or otherwise used for the class's benefit.

Each of the other cases involving disgorgement on which plaintiff relies is equally distinguishable.[9] In none of them – including Judge Young's decision in *Gattegno v. Sprint Corp.*, 297 F. Supp.2d 372 (D. Mass. 2003) – did the plaintiff, as here, seek all of the defendant's profits, unhinged from the individual claims of the class members.[10] Thus, here, if plaintiff succeeds, once Pfizer pays all of its profits, regardless of how many class members submit claims, none of the profits will be returned to Pfizer. That is, even if – as is usually the case – only a small percentage of class members submit claims, *all* the profits will be divided among those few who submit claims or will otherwise be used to benefit the class. Since no funds will be returned to Pfizer, in the First Circuit's words in *Berman*, under "any formula . . . [Pfizer's] liability is the

---

[9]     *Compare, e.g., In re Ciprofloxacin Hydrochloride Antitrust Litig.*, 166 F. Supp.2d 740, 753 (E.D.N.Y. 2001) ("[p]laintiffs' complaints, on their faces, are consistent with requests for relief for the harm plaintiffs suffered as individuals"); *Aetna Healthcare, Inc. v. Hoechst Akiengesellschaft*, 54 F. Supp.2d 1042, 1051 (D. Kan. 1999) ("because members only have the right to recover their own overpayments, one plaintiff's share is not increased if another plaintiff cannot or does not bring suit"); *Campbell v. Gen. Motors Corp.*, 19 F. Supp.2d 1260, 1268 (N.D. Ala. 1998) ("each plaintiff is entitled to the defendants' profits which resulted from the wrongdoing to that particular plaintiff").

[10]    Other cases plaintiff cites did not even involve claims for disgorgement of profits. *See Ciardi v. F. Hoffman-LaRoche, Ltd.*, 2000 WL 159320 (D. Mass. Feb. 7, 2000) (attorneys' fees); *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255 (11th Cir. 2000) (return of insurance premiums, punitive damages, attorneys' fees, injunctive relief requiring compensation of class members for future damages) *Gibson v. Chrysler Corp.*, 1998 WL 646659 (N.D. Cal. Jul. 20, 1998) (actual and punitive damages; attorneys' fees); *Bishop v. Gen. Motors Corp.*, 925 F. Supp. 294 (D. N.J. 1996) (same).

same" and, therefore, the profits are a "common and undivided interest." 414 F. 2d at 316.[11]

Accordingly, plaintiff's request for relief in the form of disgorgement, which admittedly exceeds $75,000 (exclusive of interest and costs), satisfies the requisite amount in controversy for federal diversity jurisdiction.

## III.  PLAINTIFF'S REQUEST FOR AN AWARD OF COSTS IS MERITLESS

Plaintiff asserts that it should be awarded fees and costs because Pfizer's removal was "wholly without merit" and "contrary to plain meaning of CAFA." (Pl. Mem. 20). As a threshold matter, as explained above, Pfizer's position is correct and this Court does, in fact, have jurisdiction both under CAFA and based on the disgorgement claim.

But even if the Court were to conclude otherwise, costs and fees are not properly awarded under § 1447(c) where the law providing the basis for removal "has been less than clear." *Alexander v. A.P. Green Indus.*, 44 F. Supp.2d 368, 374 (D. Me. 1999).[12] Here, as noted above, Pfizer's position with respect to CAFA is consistent with the "clear majority" of courts that have

---

[11]    Also noteworthy is that several of the cases plaintiff relies on are from the Ninth Circuit or rely on cases from that Circuit. That circuit has rejected the First Circuit's "less technical approach," expressly citing *Berman*. *U.S. v. S. Pacific Transp. Co.*, 543 F.2d 676, 683 (9th Cir. 1976). *See Payne v. Goodyear Tire & Rubber Co.*, 229 F. Supp.2d 43, 48 n.4 (D. Mass. 2002) ("the First Circuit has shown a willingness to view federal jurisdiction expansively for policy reasons").

[12]    Plaintiff ignores *Alexander* and relies on decisions from other circuits. *Compare Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 546 (5th Cir. 2004) (district court abused its discretion in awarding costs where defendants had "objectively reasonable grounds" for removing); *Roxbury Condo. Ass'n, Inc. v. Subick*, 316 F.3d 224, 228 (3d Cir. 2003) (district court abused its discretion in awarding costs where defendant had a "colorable removal claim in an area of unsettled law"); *Virgin Islands Housing Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 917 (3d Cir. 1994) (denying costs where defendant had "a colorable claim of jurisdiction"). On April 25, 2005, the Supreme Court granted certiorari to determine the "legal standard [that] governs [a] court's decision to award or deny attorneys' fees and expenses under 28 U.S.C. 1447(c)." *Martin v. Franklin Capital Corp.*, No. 04-1140 (U.S. 2005).

addressed the issue; is, according to the U.S.C.A. Commentary, the "sounder" view; is consistent

with Congress' intent as expressed in both CAFA itself and the Act's legislative history; and,

unlike plaintiff's view, would provide a consistent interpretation to identical statutory language

regardless of whether Congress intends to expand or contract jurisdiction.  As for *Pritchett* and

the other cases that in the past month have interpreted CAFA, the case books are filled with deci-

sions in which the early trend of the cases is contrary to the law as finally settled by the Supreme

Court or other appellate court.[13]  If plaintiff's view were accepted, the winning party in these

cases would have been sanctioned for questioning the prevailing view even though its contrary

view was, in fact, ultimately adopted.  Finally, Pfizer's position with respect to disgorgement is

supported by First Circuit and other authorities.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand should be denied in its entirety.


## REQUEST FOR ORAL ARGUMENT

Pfizer respectfully requests oral argument.


Dated:  May 6, 2005

---

[13]    *See*, *e.g.*, *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998)
(Rule of Judicial Panel of Multidistrict Litigation and uniform view of Courts of Appeal
unanimously rejected); *Central Bank of Denver, N.A. v. First Interstate Bank of Denver,
N.A.*, 511 U.S. 164 (1994), and *id.* at 192 (Stevens, J., dissenting) (overturning rule of law
that SEC and "all eleven Courts of Appeals to have considered the question" had adopt-
ed).  *See also Dickinson v. Zurko*, 527 U.S. 150, 155 (1999) (Federal Circuit's and patent
bar's interpretation of 89 prior decisions as to proper standard or review rejected).

Respectfully submitted,

PFIZER INC.
By its attorneys,


_/s/William M. Cowan_____
William M. Cowan, Esq., BBO # 566940
Dora Kripapuri, Esq., BBO # 654236
MINTZ, LEVIN, COHN, FERRIS,
  GLOVSKY AND POPEO, P.C.
One Financial Center
Boston, MA  02111
(617) 542-6000

Thomas A. Smart, Esq. (admitted pro hac vice)
Richard A. De Sevo, Esq. (admitted pro hac vice)
KAYE SCHOLER LLP
425 Park Avenue
New York, NY  10022
(212) 836-8000