UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SHERRY KWAAK, on behalf of herself )
and all others similarly situated, )
 )
              Plaintiff, )
 )
   v. )   Civil Action No.: 05-10591-NMG
 )
PFIZER INC., )
 )
             Defendant. )
_____)

### **REPLY TO DEFENDANT'S OPPOSITION TO MOTION TO REMAND**

Plaintiff Sherry Kwaak ("Plaintiff") hereby replies to defendant Pfizer, Inc.'s opposition to her motion to remand this matter to the Middlesex Superior Court. For the following reasons, it is clear that the arguments and authorities set forth by defendant are completely unfounded and that the motion to remand should be allowed.

### **Introduction**

Plaintiff's memorandum of law demonstrated that defendants' two purported grounds for removing this case to federal court are utterly without foundation. Recognizing this reality, defendant has now stretched logic and reason to the breaking point in a desperate attempt to forestall the invevitable.

First, in taking the position that under the Class Action Fairness Act ("CAFA") an action is "commenced" on the date it is removed from state court to federal court, defendant argues that even though all the courts which have thus far addressed the issue have ruled to the contrary, these courts simply "got it wrong" and this Court should instead look for guidance to a line of cases addressing

amendments to completely different statutes.  Second, in contending that the individual claims of class members can be aggregated for purposes of satisfying the amount-in-controversy requirement of 28 U.S.C. §1332(a), defendant conveniently ignores the plain language of the First Amended Complaint ("FAC") and discounts a substantial, unambiguous body of case law that holds otherwise.  Accordingly, and as the ensuing discussion will further demonstrate, the motion to remand should be allowed and plaintiff awarded her costs and attorney's fees.

## Argument

### I. AS A MATTER OF LAW, THE PRESENT ACTION WAS "COMMENCED" PRIOR TO THE ENACTMENT OF CAFA.

In her memorandum of law, plaintiff noted that all of the courts which have thus far addressed the meaning of the term "commenced" in CAFA have ruled that it refers to the date when the action was originally filed in state court.  Plaintiff briefed 5 such decisions – one by the Tenth Circuit Court of Appeals, and four by various federal district courts.  Since that time another relevant decision has been issued.  In *Lander & Berkowitz, P.C. v. Transfirst Health Services, Inc.*, Case No. 4:05CV527 RWS (E.D.Mo. May 19, 2005), plaintiff filed her state-court complaint on February 17, 2005, one day prior to CAFA's enactment.  The court remanded, declaring: "[i]t is clear that this Court does not have jurisdiction to hear this case."  Exhibit A.   Plaintiff is still not aware of any case to date, at any level, which has held to the contrary.

Faced with this unanimity of opinion, Pfizer seeks refuge in a handful of much earlier decisions dealing with statutory amendments which enlarged the amount-in-controversy requirement for diversity jurisdiction.  This approach has been rejected by every court which has

thus far considered it, with the Tenth Circuit Court of Appeals and the United States District Court for the District of Colorado analyzing it in depth. *Pritchett v. Office Depot, Inc.* 404 F.3d 1232 (10th Cir. 2005)(designated herein as "Pritchett CA"): *Pritchett v. Office Depot, Inc.,* 360 F.Supp.2d 1176 (D.Colo. 2005)(designated herein as "Pritchett DC").

The court of appeals first noted the obvious - that the decisions in question "are relevant only by analogy" - and then proceeded to emphasize that "their persuasive value is diluted . . . by the presence of contemporaneous contrary authority from other federal courts." *Pritchett CA* at    It further noted that the reasoning in two of the cases cited by defendant here – *Lorraine Motors Inc. v. Aetna Casualty & Surety Co.,* 166 F.Supp. 319 (E.D.N.Y. 1958) and *Hunt v. Transp. Indem. Ins. Co.,* 487 F.Supp. 345 (S.D.Miss. 1980) – "actually supports plaintiff's interpretation of the term 'commenced.'" *Id.*

The district court's analysis is equally compelling. The court first noted that only a total of four cases even addressed the 1958 amendment increasing the jurisdictional amount-in-controversy, with "two District Court decisions pointing in each direction," and that when the amount was raised again in 1988, "once again, District Courts interpreting that statute came to conflicting conclusions." *Pritchett DC* at    (citations omitted). It then arrived at an inescapable realization - "the reasoning of that [entire] line of cases is not helpful in this circumstance" – explaining as follows:

> A central them underlying that line of reasoning is that the increase in the jurisdiction threshold represented a Congressional intent to successively restrict the scope of federal jurisdiction. Consequently, it was reasonable for these courts to interpret the term "commenced" in such a

3

> way as to give effect tot hat Congressional intent. Here,
> the rationale giving effect to a Congressional intent to
> *limit* federal jurisdiction is thus not applicable. Even if the
> Court were inclined to adopt the *Lorraine Motors* rationale,
> it would do so mindful of the conclusion reached in *Sayers:*
> that it "offends reason" to permit the removal of a case where
> the current requirements of diversity jurisdiction were not
> present at the time the case was first filed in state court.

The court thus determined that, giving "the most natural reading to the plain meaning of the term 'commenced,'" and in view of Congressional intent and public policy considerations, the term "commenced" in CAFA "does not apply to cases, such as this one, commenced [in state court] prior to February 18, 2005." *Id.* at

Defendant is unwilling to accept this reality because, in its view, the overall congressional purpose in passing CAFA was "to expand federal jurisdiction." Opposition, at 8. Indeed, defendant devotes an entire sub-section of its Opposition to this proposition (see pp. 8-11), one with which plaintiff does not disagree. However, defendant's approach completely glosses over the real issue before the Court, i.e., when and under what circumstances such expanded jurisdiction attaches. As the court of appeals explained in *Pritchett:*

> We are mindful of the fact that Congress' goal in passing this
> legislation was to increase access to federal courts, and we also
> recognize that the Senate report instructs us to construe the
> bill's terms broadly. But these general sentiments do not
> provide *carte blanche* for federal jurisdiction over a state
> class action any time the statute is ambiguous. While it is
> clear the Congress wished to expand federal jurisdiction,
> when that expansion is made effective is what at issue in
> this case, and that is an issue we approach cautiously.

4

*Pritchett CA,* at    .[1]   Moreover, for all of its emphasis on congressional intent, defendant has not referenced a single comment or statement by any legislator which supports its construction of the term "commenced." The reason for this omission is simple - none exist:

> . . . it is clear that supporters and opponents of the bill in both houses understood that the Act would not apply to pending cases. . . . . The Court has reviewed the entire reported Congressional colloquy concerning the Act and located no specific statement of contrary intent by any legislator evincing an intention that the Act permit removal of presently-pending cases.

*Pritchett DC* at    . The *Pritchett* district court thus came to the only possible conclusion under the circumstances: "the intent of Congress with regard to the specific question of whether the Act applies to cases then-pending in state court [is] to be answered in the negative." *Id.*

Accordingly, defendant has failed to carry its burden of demonstrating that federal jurisdiction over this action exists on the basis of CAFA.

---

[1] While plaintiff agrees with the court of appeal's conclusion, she does not accept that the term "commenced" as used in CAFA is "ambiguous." Indeed, the only conceivable basis for claiming ambiguity is the case law dealing with the term "commenced" in the context of statutes increasing the amount-in-controversy requirement for diversity jurisdiction. As shown, however, these cases are few in number, internally inconsistent, and in fact shed no light whatsoever on the meaning of the term "commenced" as used in CAFA.

## II. DIVERSITY JURISDICTION CANNOT BE PREDICATED ON PLAINTIFF'S DISGORGEMENT CLAIM; DEFENDANT'S ANALYSIS GROSSLY MIS-CHARACTERIZES THE RELIEF SOUGHT AND IS CONTRARY TO WELL-ESTABLISHED PRECEDENT.

Defendant contends that the nature of plaintiff's unjust enrichment/disgorgement claim is such that all class members are asserting a "single right in a common and undivided fund," thus allowing their individual claims to be aggregated for purposes of satisfying the amount-in-controversy requirement of 28 U.S.C. §1332 (a).  At the heart of defendant's analysis is its repeated yet erroneous contention that plaintiff seeks to recover *all* profits resulting from Listerine sales during the class period:  (i) "plaintiff asserts [a] claim for disgorgement of *all* of Pfizer's profits . . . "  Opposition, at 3;  (ii) "[h]ere, plaintiff seeks disgorgement of *all* of Pfizer's profits. . . . "  Opposition, at 18; (iii) plaintiff "seek[s] *all* of defendant's profits, unhinged from the individual claims of the class members*.*"  Opposition, at 18  (emphases added).  Simply put, these statements are gross mischaracterizations of plaintiff's claim.

The factual allegations on which plaintiff's unjust enrichment claim is premised are as follows:

(i) "Pfizer has sold millions of dollars in Listerine which it would not have otherwise sold had it made the proper disclosures, and it has been unjustly enriched at the expense of *Plaintiff and the class members*."  FAC, ¶3 (emphases added)

(ii)     "*Plaintiff and the Class members* have conferred a benefit on Pfizer, and Pfizer has knowledge of this benefit and has voluntarily accepted and retained the benefit conferred on it."  FAC, ¶71 (emphases added)

6

>  (iii) "Pfizer will be unjustly enriched if it is allowed to retain *such funds* [the "benefit" conferred by class members] and the Class is entitled to disgorgement of the amount by which Pfizer has been unjustly enriched." FAC, ¶73 (emphases added).

On its face, therefore, plaintiff's unjust enrichment claim is clearly limited to the "benefit" which "plantiff and class members" have conferred on defendant as a result of its illegal conduct. Thus, contrary to defendant's posturing, it is apparent that plaintiff is not seeking disgorgement of *all profits* resulting from defendant's unlawful conduct, rather only those which are directly attributable to transactions engaged in by plaintiff and class members. Consequently, in no sense whatsoever is the relief sought by plaintiff "unhinged from the individual claims of the class members." Opposition, at 18. In no sense whatsoever is plaintiff attempting to establish a "common" or other fund from which they can receive monies unrelated to their individual purchases of Listerine.

Failing to perceive (or choosing not to acknowledge) this obvious fact, defendant finds itself seeking support from decisions which actually confirm the merit of plaintiff's position. In *Durant v. Servicemaster Co.,* 147 F.Supp.2d 744, 749-51 (E.D.Mich. 2001), the plaintiff class brought suit due to alleged fuel overcharges on their lawn care bills. In the complaint, plaintiff requested an award of compensatory and punitive damages, as well as disgorgement of profits. The disgorgement claim sought the recovery of "all profits which [defendants] have unjustly obtained as a result of the fraudulent scheme and the collection of the surcharge," and prayed for the establishment of a "common fund" to hold them. *Id.* at 747. *See*, also, *id.* at 749-50 ("plaintiff's complaint sought "every penny that [defendants] allegedly received" from the unlawful conduct).

7

The court therefore ruled that aggregation was appropriate. *Id.* By contrast, in the present case it has been shown beyond doubt that the FAC does not request disgorgement of *all* defendant's gains resulting from its illegal conduct, only those gains directly attributable to the purchases of plaintiff and class members. *See* FAC, ¶¶3, 71, 73 and discussion at pp. 6-7, *supra.* Accordingly, *Durant* provides no help to defendant and is, in fact, consistent with plaintiff's position.

All of the remaining cases cited by defendant are similarly compatible with plaintiff's position. For example, in *Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft,* 48 F.Supp.2d 37 (D.D.C. 1999), the plaintiff health care corporation filed a class action claiming that the original manufacturers of Cardizem CD (the "Hoechst defendants") and the drug's first generic manufacturer ("Andrx") entered into an illegal agreement to delay introducing the generic, thus having the effect of indefinitely delaying generic competition in the marketplace. The complaint sought to disgorge both the artificially-inflated prices that it and other health care plans were forced to pay for Cardizem, as well as the proceeds of the Hoechst-Andrx agreement. Thus, the disgorgement claim asserted was similar to that in *Durant:* it sought recovery of funds – in this case, the annual payments to Andrx – having no connection to the allegedly unlawful gains resulting from the plaintiff's transactions, i.e., the overpayments for Cardizem. As the court emphasized: "[p]laintiff's allegation of disgorgement against Andrx . . . does not depend, rely upon, or arise out of the vindication of individual rights of the putative class members." *Id.* at 43. Aggregation was therefore deemed proper. *Id.* And, in *In re Microsoft Corp. Antitrust Litigation,* 127 F.Supp.2d 702 (D. Md. 2001), plaintiffs asserted a claim for disgorgement of "unlawfully obtained profits"

not tied, in any sense, to the specific transactions or damage claims of plaintiff and class members. *Id.* at 720. Since, as in *Durant* and *Aetna,* the complaint could entitle "an individual plaintiff, regardless of the particular damages he has suffered, [to] recover the entire unjust benefit obtained by the defendant," the claim was held properly removed. *Id.* As shown, however, the FAC cannot be so read.

It is therefore patently clear that the thrust of the entire body of case law – including the decisions cited by defendant – is that each unjust enrichment/disgorgement claim must be analyzed on the basis of its own particular allegations, and that there is nothing inherent in the nature of such a claim which automatically compels aggregation, as defendant essentially urges. The cases yield a simple, unifying principle: where an unjust enrichment/disgorgement claim seeks to recover ill-gotten gains beyond those directly attributable to the specific transactions engaged in by class members - as in *Durant, Aetna,* and *Microsoft* - aggregation may be appropriate, but where such a claim is in fact limited to gains resulting from those transactions – as in *Gattegno v. Sprint Corp.,* 297 F.Supp.2d 372 (D. Mass. 2003), *Pierson v. Source Perrier,* 848 F.Supp. 1186 (E.D. Pa. 1994), and *Gilman v. BHC Securities, Inc.,* 104 F.3d 1418 (2d.Cir. 1997) – the traditional anti-aggregation rule controls.[2]

---

[2] As it did in its Notice of Removal, defendant also attempts to find solace in the case of *Berman v. Narragansett Racing Association,* 414 F.2d 311, 315 (1st Cir. 1969), but it is difficult to understand why. In *Berman,* plaintiff sought damages resulting from the alleged breach of a contractual obligation owed by defendant to a "*group* of owners whose horses win purses." *Id.* at 313 (emphases added). In view of this obligation to *a discrete group,* and in the complete absence of any contractual relationship "between defendants and individual pursewinners," the court was clearly on solid ground in holding that the horse owners were attempting to vindicate an "integrated right" and that their interests in the potential recovery was "common and undivided." *Id.* at 315. The case at bar – a true class action essentially joining the

9

*In re Ford Motor Co.,* 264 F.3d 952 (9th Cir. 2001), a class action challenge to Ford's cancellation of a credit card rebate program, highlights the error of defendant's ways. The complaint asserted claims for both compensatory damages and unjust enrichment/disgorgement. The monies which the complaint sought to recover were defendant's profits "collected as a result of the billions of dollars *class members, including plaintiffs,* charged on their Ford Citibank Cards" and the "expiration of billions of dollars in rebates *earned by plaintiffs and class members.*" *Id.* at 962 (emphases added). With the relief thus limited to harm resulting from the transactions of plaintiff and class members, the court had little difficulty holding that aggregation would have been improper and that the case had been properly remanded. The relief sought by plaintiff here is similarly circumscribed and remand is therefore required. *See,* also, *Campbell v. General Motors Corp.,* 19 F.Supp.2d 1260, 1268 (N.D. Ala. 1998)(remanding complaint to state court because plaintiff's unjust enrichment/ disgorgement claim simply asserted that "each plaintiff is entitled to the defendants' profits which resulted from the wrongdoing to that particular plaintiff").

As defendant notes correctly, "the plaintiff's 'claim, whether well or ill founded in fact, fixes the right of the defendant to remove.'" Opposition, at 14 n. 6, quoting *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 294 (1938). The foregoing discussion demonstrates beyond any doubt that the FAC does not attempt to reach defendant's profits beyond those

---

separate and distinct legal claims of numerous individuals - does not remotely resemble *Berman*.

It is equally hard to understand why defendant cites Judge Skinner's decision in *Ingerson v. Sharp,* 423 F.Supp. 139, 142 n. 2 (D.Mass. 1976), *vacated without opinion,* 582 F.2d 1269 (1st Cir. 1978). The "'trust fund' theory of aggregation" which the judge attributes to *Berman* requires that there be an "integrated right against the defendant," a right clearly not present here. Moreover, defendant fails to point out that Judge Skinner went on to state that *Berman's* only apparent extension beyond its particular facts – to suits challenging welfare programs – was "unwarranted." *Id.*

attributable to the specific transactions engaged in by plaintiff and class members. Accordingly, as a matter of law the court may not aggregate their individual claims, and defendant has failed to carry its burden of showing that diversity jurisdiction exists on the basis of 28 U.S.C. §1332(a).

## Conclusion

For the above reasons, as well as those set forth in plaintiff's primary memorandum, the motion to remand should be granted and plaintiff awarded her costs and reasonable attorney's fees.

Respectfully submitted,

/s/Kenneth D. Quat
BBO 408640
9 Damonmill Square, Suite 4A-4
Concord MA 01742
978-369-0848


Of Counsel:

Lance A. Harke, P.A.
HARKE & CLASBY LLP
155 South Miami Ave., Suite 600
Miami, Florida 33130
 (305) 536-8220

Ben Barnow
BARNOW AND ASSOCIATES, P.C.
One North LaSalle Street, Suite 4600
Chicago, Illinois  60602
312-621-2000

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LANDER AND BERKOWITZ, P.C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:05CV527 RWS |
| ) | |
| TRANSFIRST HEALTH ) | |
| SERVICES, INC., et. al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion to Remand. It is clear that this Court does not have jurisdiction to hear this case. As a result, the motion to remand will be granted.

Defendants argue that this Court has jurisdiction over this case based on the new Class Action Fairness Act, 28 U.S.C. § 1332(d) (the "Act"). This case was filed in state court on February 17, 2005. The Act was passed by Congress on February 17, 2005. President Bush signed the Act into law on February 18, 2005. Section 9 of the Act states that, "[t]he amendments made by this Act shall apply to any civil action commenced *on or after the date of enactment of this Act*." (Emphasis added.)

Defendants argue that it is Congress that enacts a law, not the President.

Plaintiff responds that enactment is the process of making an act into a law, which can occur when the President signs an act into law or when Congress enacts a law over a presidential veto. Plaintiff is correct.

The issue before me is what is the date of enactment for the Class Action Fairness Act. I find that the date of enactment of the Act is February 18, 2005, the day when it was signed into law by the President. The United States Court of Appeals for the Tenth Circuit reached the same conclusion in Pritchett v. Office Depot, Inc., 404 F.3d 1232 (10th Cir. 2005) ("The date of enactment of the [Class Action Fairness] Act is February 18, 2005.").[1]

Plaintiff is seeking attorneys' fees to cover the cost of Defendants improper removal. Under 28 U.S.C. § 1447(c), an order remanding a case "may require payment of just costs and any actual expenses, including attorney's fees, incurred as a result of the removal." "In making this determination, the key factor is the propriety of the defendant's removal." Lytle v. Lytle, 982 F. Supp. 671, 674 (E.D. Mo. 1997) (citing Excell, Inc. v. Sterling Boiler & Mechanical, Inc., 106 F.3d 318,

---

[1]Although it is certainly not binding precedent, the parties may recall a popular episode of the television series Schoolhouse Rock" titled *I'm Just a Bill*. In that episode, Bill sang, "I'm just a bill/Yes, I'm only a bill/And if they vote for me on Capitol Hill/Well, then I'm off to the White House/Where I'll wait in a line/With a lot of other bills/For the president to sign/And if he signs me, then I'll be a law/How I hope and pray that he will/*But today I am still just a bill*." (Emphasis added.)

322 (10th Cir. 1997)). After reviewing the case, it is my determination that an award of attorneys' fees is not warranted.

Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that this case is **REMANDED** to the Circuit Court for the City of St. Louis, State of Missouri.

**IT IS FURTHER ORDERED** that Plaintiff's request for an award of attorneys' fees is **DENIED**.


Dated this <u>19th</u> Day of May, 2005.

```
                                        _____
                                        RODNEY W. SIPPEL
                                        UNITED STATES DISTRICT JUDGE
```